**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

Courtless Rampey and Bridget Cunningham,
individually and as representatives of a class
of participants and beneficiaries on behalf of          **No. 1:19-cv-00220-JB-B**
the West Corporation Employee 401(k)
Retirement Plan,

            Plaintiffs,

   v.

West Corporation and Retirement Committee of
West Corporation Employee 401(k) Retirement Plan,

            Defendants.

_____

**DECLARATION OF ARTHUR STOCK IN SUPPORT OF MEMORANDUM OF
LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

     I, Arthur Stock, am an attorney at Milberg Bryson Coleman Phillips Grossman

PLLC, Counsel for Plaintiffs in this Action. I have participated in all aspects of this

litigation, and I have been admitted to appear before this Court *pro hac.* I submit this

Declaration in support of plaintiff's Motion for Class Certification and for Preliminary

Approval of Settlement in this Action based on my personal knowledge. I hereby declare:

1

1.     The Settlement Agreement for this action is attached to this Declaration as Exhibit A.

2.     The administrative procedure set forth in the Plan required that any appeal of a denial of benefits be filed with, and decided by, the Plan Administrator.  Appeals of denials of claims are also decoded by the Plan Administrator.  ECF No. 36-1 at 39. Documents produced in discovery demonstrated that The Plan Administrator is the West Corporation Employee 401(k) Retirement Committee, which is also a defendant in this Action.

3.     On February 27, 2020, plaintiffs submitted a comprehensive 10-item document request to the Plan. The request included such items as 1) documents generated by the Retirement Plan Committee in connection with its monitoring of Plan investment, and 2) documents demonstrating the authority through which the Plan Administrator is vested with the authority to resolve claims by payment from West Corporation.

4.     Thereafter, the parties exchanged correspondence concerning the breadth of the document requests. The parties also negotiated a confidentiality agreement.

5.     On April 17, 2020, and on July 1, 2020, defendants, through counsel, provided documents to plaintiffs' counsel in response to the document requests. These documents totaled 760 pages.  The parties agreed to treat some categories of documents as confidential.

2

6.      On October 6, 2020, plaintiffs filed an Administrative Claim, including an expert report, with the West Corporation 401(k) Plan Administrator.

7.      Discovery had enabled plaintiffs to plead with greater specificity the Administrative Claim theories of liability and damages.  As to liability, plaintiffs alleged that defendants had breached their fiduciary duties by relying heavily on one outside company, Wells Fargo, whose corporate affiliates served as recordkeeper, investment advisor, and sponsor of some Plan Funds.   Wells Fargo had also provided services to West Corporation outside of the Plan, created additional conflicts.  Plaintiffs alleged that the defendants' failure to supervise Wells Fargo led to the Plan being charged excessive fees; that the Plan imprudently selected unreasonably high cost investments funds; that the Plan imprudently selected certain Target Date Mutual Funds rather than substantively identical but lower cost Target Date Collective Investment Trusts; and that the Plan breached its fiduciary duties by including actively managed higher cost actively managed funds, rather than exclusively passively managed funds, in its offerings to plan participants.

8.      On April 4, 2021, the Retirement Committee denied plaintiffs' Claim, concluding that the defendants had not breached any fiduciary duties.  The Denial Letter is attached hereto as Exhibit H.   The Retirement Committee's denial was based in large part on an extensive expert report, which was produced to planitffs.  The expert report in turn was based on West Corp. internal documents, most of which had not previously been produced to plaintiffs.  In addition to concluding that defendants had

not breached any fiduciary duties, the defendant's report concluded that most of the claims asserted by planitffs did not cause any monetary loss to the Plan or its participants.

9.      Subsequently, at plaintiffs' request the Retirement Committee produced an additional 2,114 pages of internal documents that had not previously been produced, which had been relied upon by defendants' expert.  Plaintiffs worked with their experts on analysis of the newly produced documents and a rebuttal to defendants' expert report, and filed an Appeal, with a second plaintiffs' expert report, with the Retirement Committee on June 1, 2021.

10.     In August 2021, before the Retirement Committee ruled on the appeal, the parties jointly agreed to a temporary stay of the administrative proceeding, pending settlement discussions.

11.     The mediation of this action before Bob Meyer of JAMS/ADR via teleconference on December 9, 2021.

12.     Plaintiff's expert witness Chris Tobe completed a damage estimate for purposes of mediation, which was shared with defense counsel and can be provided to the Court upon request.  The Report concluded that if plaintiffs' class certification motion were granted, and Plaintiffs prevailed on their principal claims, potential damages would be $7.4 million based on an "excessive fee" model, and $2.7 million based on the difference between fees charged by Target Date Investment Funds and substantially identical T. Rowe Price Target Date Collective Investment Trusts.

13.    Plaintiff's expert also created a third analysis, calculating damages if plaintiffs were successful in their argument that the defendants breached their fiduciary duty by making more expensive actively managed mutual funds, rather than only passively managed or "index" mutual funds available to Plan Participants, which would have potentially led to higher damages.  However, the theory of fiduciary breach has been rejected by numerous courts and was unlikely to lead to a victory at trial, or provide a basis for settlement.

14.    The essential terms of the settlement were negotiated during and after the mediation.  The parties signed a Memorandum of Understanding on May 2, 2022.

15.    Plaintiffs' counsel invited proposals from several firms that had significant experience providing settlement administration services in class action litigation. Plaintiffs' counsel determined that A.B. Data, Ltd.'s track record and proposal was superior to those of competitors.

16.    Exhibit B attached hereto is a firm resume of A.B. Data, Ltd.

17.    The defendants have records containing the names and addresses of all Class Members. They are creating a spreadsheet providing names and addresses of all participants in the 401(k) Plan with active balances between and the present. It has determined that there are approximately 14,200 Class Members.

18.    Exhibit C attached hereto is the firm resume of Briskman & Binion, P.C.

19.    Exhibit D attached hereto is the firm resume of Crueger Dickinson LLC.

20.    Exhibit E attached hereto is the Declaration of Jordan Lewis, Esq.

5

21.     Exhibit F attached hereto is the firm resume of Milberg Bryson Coleman Phillips Grossman PLLC.

22.      Exhibit G attached hereto is the firm resume of Wexler Boley & Elgersma PLLC.

23.     The parties have conferred regarding this motion, and agree that this Motion is unopposed.

I declare under penalty of perjury of the laws of the State of Alabama that the foregoing is true and correct.

Executed on this 28 day of June, 2022, at Clarksboro, New Jersey,

By: /s/ Arthur Stock_____
    Arthur Stock, Esq.

# EXHIBIT A

# CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement ("Settlement Agreement") is entered into between and among Courtless Rampey and Bridget Cunningham ("Plaintiffs" or "Class Representatives"), all Class Members, West Corporation ("West Corp."), and the Retirement Plan Committee of the West Corporation Employee 401(k) Retirement Plan (the "Committee") (collectively, the "Settling Parties").

**1.    Article 1 – Recitals**

1.1    On May 6, 2019, Plaintiffs filed a Class Action Complaint in the United States District Court for the Southern District of Alabama (Case No. 1:19-cv-00220-JB-B) on behalf of themselves and all the participants in the West Corporation Employee 401(k) Retirement Plan ("the Plan"). The operative complaint is the Amended Class Action Complaint filed on August 16, 2019 (the "Class Action Complaint"). The Class Action Complaint asserts claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") based on Defendants' management, operation, and administration of the Plan.

1.2    On February 14, 2020, the Court stayed the lawsuit pending Plaintiffs' exhaustion of administrative remedies under the Plan.

1.3    In April and July, 2020, Defendants produced documents requested by Plaintiffs in connection with their administrative claim.

1.4    On October 6, 2020, Plaintiffs submitted an administrative claim with the plan administrator, including an expert report in connection with their claim.

1.5    The plan administrator engaged an expert and legal counsel to assist the plan administrator in connection with the administrative claim. The plan administrator denied Plaintiffs' administrative claim on April 1, 2021. The plan administrator also produced to Plaintiffs the administrative record of documents that the plan administrator considered in connection with the administrative claim.

1.6    On December 9, 2021, the Settling Parties held a private mediation with Bob Meyer of JAMS. The Settling Parties reached agreement on the monetary terms of a potential settlement during the mediation. Thereafter, the Settling Parties continued negotiations regarding the terms of the Settlement Agreement. The entirety of the agreement reached by the Settling Parties is memorialized in the Settlement Agreement.

1.7    The Class Representatives and Class Counsel consider it desirable and in the Plan's and Class Members' best interests that the claims against West Corp. and the Committee be settled upon the terms set forth below. The Class Representatives and Class Counsel have concluded that such terms are fair,

reasonable, and adequate and that this settlement will result in benefits to the Plan and the Settlement Class.

1.8    West Corp. and the Committee deny all allegations of wrongdoing and deny all liability for the allegations and claims made in the Lawsuit. West Corp. and the Committee maintain that they are without fault or liability. West Corp. and the Committee contend that the Plan has been managed, operated and administered at all relevant times in compliance with ERISA and applicable regulations, including the fiduciary and prohibited transaction provisions of ERISA. The Settlement Agreement, and the discussions between the Settling Parties preceding it, shall in no event constitute, be construed as, or be deemed evidence of, an admission or concession of any wrongdoing, fault, or liability of any kind by West Corp. and the Committee.

1.9    The Settling Parties have concluded that it is desirable that the Lawsuit be finally settled upon the terms and conditions set forth in the Settlement Agreement.

1.10    Therefore, the Settling Parties, in consideration of the promises, covenants, and agreements herein described, acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows.

2.    **Article 2 – Definitions**

As used in the Settlement Agreement and the exhibits hereto, unless otherwise defined, the following terms have the meanings specified below:

2.1    "Administrative Expenses" means expenses incurred in the administration of the Settlement Agreement, including (a) all fees, expenses, and costs associated with providing the Settlement Notices to the Settlement Class, including but not limited to the reasonable fees of the Plan's recordkeeper to identify the names and addresses of Class Members; (b) related tax expenses (including taxes and tax expenses as described in Paragraph 5.3); (c) all expenses and costs associated with the distribution of funds under the Plan of Allocation borne by the Settlement Administrator; (d) all fees and expenses associated with the services provided by the Independent Fiduciary, Settlement Administrator, and Escrow Agent in connection with the Settlement; and (e) all expenses associated with providing CAFA notice. Excluded from Administrative Expenses are internal expenses by the Settling Parties, and the Settling Parties' respective legal expenses. Administrative Expenses shall be paid from the Gross Settlement Amount.

2.2    "Alternate Payee" means a person other than a participant or Beneficiary in the Plan who is entitled to a benefit under the Plan as a result of a Qualified Domestic Relations Order.

**2.3** "Attorneys' Fees and Costs" means the amount awarded by the Court as compensation for the services provided by Class Counsel in connection with the Lawsuit. The amount of attorneys' fees for Class Counsel shall not exceed an amount of 33.3% (or $290,000 (two-hundred and ninety thousand dollars)) of the Gross Settlement Amount, which shall be paid from the Gross Settlement Amount. Class Counsel also will seek reimbursement for all costs and expenses advanced and carried by Class Counsel in this litigation, not to exceed $50,000 (fifty thousand dollars), which also shall be paid from the Gross Settlement Amount.

**2.4** "Beneficiary" means a person who currently is entitled to receive a benefit under the Plan due to the death of a Plan participant. A Beneficiary includes, but is not limited to, a surviving spouse, domestic partner, or child of a Plan participant who currently is entitled to a benefit.

**2.5** "Class Action Complaint" means the Amended Class Action Complaint filed in the Lawsuit on August 16, 2019.

**2.6** "Class Counsel" means Jordan Lewis, P.A., Crueger Dickinson LLC, Milberg Coleman Bryson Phillps Grossman, PLLC, Wexler Boley & Elgersma LLP, and Briskman & Binion, P.C.

**2.7** "Class Members" means all individuals in the Settlement Class.

**2.8** "Class Period" means the period from May 7, 2013 through the date of the Preliminary Order.

**2.9** "Class Representatives" mean Courtless Rampey and Bridget Cunningham.

**2.10** "Class Representatives' Compensation" means an amount to be determined by the Court, but not to exceed $5,000 (five thousand dollars) for each Class Representative, which shall be paid from the Gross Settlement Amount directly to the Class Representatives.

**2.11** "Court" means the United States District Court for the Southern District of Alabama.

**2.12** "Defendants" means West Corp. and the Committee.

**2.13** "Defense Counsel" means counsel for Defendants, including Groom Law Group, Chartered and Maynard Cooper and Gale.

**2.14** "Escrow Agent" means A.B. Data, Ltd.

**2.15** "Fairness Hearing" means the hearing scheduled by the Court to consider (a) any objections from Class Members to the Settlement Agreement, (b) Class Counsel's petition for Attorneys' Fees and Costs and Class Representatives' Compensation, and (c) whether to finally approve the Settlement Agreement under Fed. R. Civ. P. 23.

**2.16** "Final Order" means the order and final judgment approving the Settlement Agreement, implementing the terms of the Settlement Agreement, and dismissing the Lawsuit with prejudice, to be proposed by the Settling Parties for approval by the Court, in substantially the form attached as Exhibit 3 hereto.

**2.17** "Final" means with respect to any judicial ruling, order, or judgment that the period for any motions for reconsideration, motions for rehearing, appeals, petitions for certiorari, or the like ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that it has been fully and finally resolved, either by court action or by voluntary action of any Settling Party, without any possibility of a reversal, vacatur, or modification of any judicial ruling, order, or judgment, including the exhaustion of all proceedings in any remand or subsequent appeal and remand. The Settling Parties agree that absent an appeal or other attempted Review Proceeding, the period after which the Final Order becomes Final is fourteen (14) calendar days after the time for appeal expires. If any person appeals, the Final Order shall become Final fourteen (14) calendar days after the appeal is resolved and the time for all further appeal expires.

**2.18** "Gross Settlement Amount" means the sum of eight hundred seventy five thousand dollars ($875,000), paid to the Qualified Settlement Fund in accordance with Article 5. The Gross Settlement Amount shall be the full and sole monetary payment to the Settlement Class, Plaintiffs, and Class Counsel made on behalf of Defendants in connection with the Settlement effectuated through the Settlement Agreement.

**2.19** "Independent Fiduciary" means Prudent Fiduciary Services, LLC.

**2.20** "Lawsuit" means the action styled *Rampey et al. v. West Corp. Inc. et al.* Case No. 1:19-cv-00220-JB-B, and venued in the United States District Court for the Southern District of Alabama.

**2.21** "Net Settlement Amount" means the Gross Settlement Amount minus: (a) all Attorneys' Fees and Costs paid to Class Counsel; (b) Class Representatives' Compensation as authorized by the Court; (c) all Administrative Expenses; and (d) a contingency reserve not to exceed an amount to be mutually agreed upon by the Settling Parties that is set aside by the Settlement Administrator for: (1) Administrative Expenses incurred before the Settlement Effective Date but not yet paid, (2) Administrative Expenses estimated to be incurred after the

4

Settlement Effective Date, and (3) an amount estimated for adjustments of data or calculation errors.

**2.22** "Plan" means the West Corporation Employee 401(k) Retirement Plan.

**2.23** "Plan of Allocation" means the methodology for allocating and distributing the Net Settlement Amount in accordance with Article 6 herein.

**2.24** "Preliminary Order" means the order proposed by the Settling Parties and approved by the Court in connection with the Motion for Entry of the Preliminary Order to be filed by Class Representatives through Class Counsel, as described in Paragraph 3.2 and in substantially the form attached hereto as Exhibit 1.

**2.25** "Qualified Settlement Fund" or "Settlement Fund" means the interest-bearing, settlement fund account to be established and maintained by the Escrow Agent in accordance with Article 5 herein and referred to as the Qualified Settlement Fund (within the meaning of Treas. Reg. § 1.468B-1).

**2.26** "Released Claims" means any and all actual or potential claims, actions, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses, costs, and causes of action, whether arising under local, state, or federal law, whether by statute, contract, common law, equity, or otherwise, whether brought in an individual, representative, or any other capacity, whether involving legal equitable, injunctive, declarative, or any other type of relief (including, without limitation, indemnification or contribution), whether, known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, that have been, could have been, or could be asserted by or on behalf of all or any member of the Settlement Class or the Plan at any point prior to the Court's Final approval of the Settlement. Released Claims also include: claims that were asserted in the Lawsuit; claims that might have been asserted in the Lawsuit under any legal or equitable basis related in any way to the Plan; claims that relate in any way to the selection, retention, use, monitoring, oversight, compensation, fees or performance of the Plan's investment options or service providers; claims that relate in any way to fees, costs, or expenses charged to, paid, or reimbursed by the Plan or any Class Member; claims that assert a claim for breach of fiduciary duty against any Plan fiduciary; claims that relate to the compensation or services of any Plan service provider; claims that relate to or arise out of the defense or settlement of the Lawsuit, including any claim that the Settlement Agreement or any aspect of its implementation violates any applicable law or right of any Class Member; claims that would have been barred by the doctrine of res judicata or claim preclusion had the Lawsuit been fully litigated to a final judgment; and claims that relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Qualified Settlement Fund to the Plan or any Class Member in accordance with the Plan of Allocation.

**2.27**  Released Claims specifically exclude (1) claims of individual denial of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) that do not fall within any of the categories identified in 2.26 above; (2) wages, labor or employment claims unrelated to the Plan, including by way of example only, claims, arising under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Equal Pay Act, 42 U.S.C. § 1981, the Fair Labor Standards Act, the Family and Medical Leave Act, the National Labor Relations Act, the Sarbanes Oxley Act, the Dodd-Frank Wall Street Reform and Protection Act, state anti-discrimination and wage-payment laws, claims for wrongful termination under state common law and other state law claims of a similar nature to those set forth in this subpart (2); and (3) claims arising exclusively from conduct outside the Class Period.

**2.28**  "Released Settling Parties" means (i) West Corp. and its current and former parent companies, subsidiaries and affiliates, (ii) the Plan, (iii) the Committee and every person who served on the Committee, (iv) every person who was a shareholder, director, officer, governor, management committee member, in-house counsel, employee, or agent of Defendants and any of their current or former parent companies, subsidiaries, and affiliates, (v) any trustee or fiduciary (including *de facto* fiduciaries) for the Plan, (vi) the Plan's recordkeeper and any consultant, administrator, accountant, auditor, attorney, investment advisor, investment underwriter and other service provider who provided services related to the Plan, and (vii) with respect to (i) through (vi) above, their present or former insurers and reinsurers,their past, present and future members of their respective boards of directors, managers, partners, agents, members, shareholders (in their capacity as such), officers, employees, independent contractors, representatives, attorneys, administrators, fiduciaries, accountants, auditors, advisors, consultants, personal representatives, spouses, heirs, executors, and administrators and all persons acting under, by, through, or in concert with any of them (with the exception of the Independent Fiduciary).

**2.29**  "Settlement" refers to the agreement embodied in this Settlement Agreement and its exhibits.

**2.30**  "Settlement Administrator" means A.B. Data Ltd., an independent contractor, retained by Class Counsel.

**2.31**  "Settlement Agreement Execution Date" means that date on which the final signature is affixed to the Settlement Agreement.

**2.32**  "Settlement Class" means all persons who participated in the Plan during the Class Period, including any Beneficiary of a deceased person who participated in the Plan at any time during the Class Period, and/or Alternate Payee, in the case of a person subject to a Qualified Domestic Relations Order who participated in

the Plan at any time during the Class Period, except for past and present members of the Committee.

2.33    "Settlement Effective Date" means the date on which the Final Order is Final, provided that by such date the Settlement has not been terminated in accordance with Article 11.

2.34    "Settlement Notice" means the Notice of Class Action Settlement and Fairness Hearing to be provided to Class Members identified by the Plan's recordkeeper, in substantially the form attached hereto as Exhibit 2, following the Court's issuance of the Preliminary Order. The Settlement Notice will also be available on the Settlement Website. The Settlement Notice also shall inform Class Members of a Fairness Hearing to be held before the Court, on a date to be determined by the Court, at which any Class Member satisfying the conditions set forth in the Preliminary Order and the Settlement Notice may be heard regarding: (a) the terms of the Settlement Agreement; (b) the petition of Class Counsel for award of Attorneys' Fees and Costs; (c) payment of and reserve for Administrative Expenses; and (d) Class Representatives' Compensation.

2.35    "Settlement Website" means the internet website established in accordance with Paragraph 12.2 and called: www.RampeyCunninghamLitigation.com.

2.36    "Settling Parties" or "Settling Party" means Defendants and/or the Class Representatives, on behalf of themselves, the Plan, and each of the Class Members.

**3.    Article 3 – Review and Approval by Independent Fiduciary, Preliminary Settlement Approval, and Notice to the Class**

3.1    The Independent Fiduciary shall have the following responsibilities, including whether to approve and authorize the settlement of Released Claims on behalf of the Plan.

    3.1.1    The Independent Fiduciary shall comply with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39") in making its determination, for the purpose of Defendants' reliance on PTE 2003-39.

    3.1.2    The Independent Fiduciary shall notify West Corp. directly of its determination in writing, which notification shall be delivered no later than thirty (30) calendar days before the Fairness Hearing.  Within five (5) business days of receipt of the Independent Fiduciary's written

determination, West Corp. will provide a copy of the written determination to Class Counsel.

**3.1.3** All fees and expenses associated with the Independent Fiduciary's determination and performance of its other obligations in connection with the Settlement will constitute Administrative Expenses to be deducted from the Gross Settlement Amount.

**3.1.4** West Corp., Defense Counsel, Class Representatives and Class Counsel shall respond to reasonable requests by the Independent Fiduciary for information so that the Independent Fiduciary can review and evaluate the Settlement Agreement.

**3.1.5** Within fifteen (15) calendar days of receipt of the written determination by the Independent Fiduciary, West Corp. shall (a) review the determination by the Independent Fiduciary, (b) conclude whether the Independent Fiduciary has made the determinations required by PTE 2003-39, and (c) notify Class Counsel in writing of its conclusion in that regard.

**3.2** Class Representative, through Class Counsel, shall file with the Court motions seeking preliminary approval of the Settlement Agreement, certification of the Settlement Class, and for entry of the Preliminary Order in substantially the form attached hereto as Exhibit 1. The Preliminary Order to be presented to the Court shall, among other things:

**3.2.1** Grant the motion to certify the Settlement Class as a mandatory, non-opt-out Settlement Class pursuant to Fed. R. Civ. P. 23(b)(1);

**3.2.2** Approve the text of the Settlement Notice for mailing to Class Members identified by the Settlement Administrator to notify them (1) of the Fairness Hearing and (2) that notice of changes to the Settlement Agreement, future orders regarding the Settlement, modifications to the Class Notice, changes in the date or timing of the Fairness Hearing, or other modifications to the Settlement, including the Plan of Allocation, may be provided to the Settlement Class through the Settlement Website without requiring additional mailed notice;

**3.2.3** Determine that under Rule 23(c)(2)(A) of the Federal Rules of Civil Procedure, the Settlement Notice constitutes appropriate notice under the circumstances, provides due and sufficient notice of the Fairness Hearing and of the rights of all Class Members, and complies fully with the requirements of Fed. R. Civ. P. 23, the Constitution of the United States, and any other applicable law;

**3.2.4**     Cause the Settlement Administrator to send the Settlement Notice by mail to each Class Member identified by the Settlement Administrator based upon the information provided by the Plan or its recordkeeper;

**3.2.5**     Provide that, pending final determination of whether the Settlement Agreement should be approved, every Class Member is prohibited and enjoined from directly, through representatives, or in any other capacity, commencing any action or proceeding in any court or tribunal asserting any of the Released Claims against any Released Settling Party or the Plan;

**3.2.6**     Set the Fairness Hearing for no sooner than one hundred twenty (120) calendar days after the Preliminary Order is entered, in order to determine whether (i) the Court should approve the Settlement as fair, reasonable, and adequate, (ii) the Court should enter the Final Order, and (iii) the Court should approve the application for Attorneys' Fees and Costs, Class Representative's Compensation, Administrative Expenses incurred to date, and a reserve for anticipated future Administrative Expenses;

**3.2.7**     Provide that any objections to any aspect of the Settlement Agreement shall be heard, and any papers submitted in support of said objections shall be considered, by the Court at the Fairness Hearing if they have been filed validly with the Clerk of the Court and copies provided to Class Counsel and Defense Counsel. To be filed validly, the objection and any notice of intent to appear or supporting documents must be filed at least thirty (30) calendar days prior to the scheduled Fairness Hearing. Any person wishing to speak at the Fairness Hearing shall file and serve a notice of intent to appear within the time limitation set forth above;

**3.2.8**     Provide that any Settling Party may file a response to an objection by a Class Member;

**3.2.9**     Provide that the Fairness Hearing may, without further direct notice to the Class Members, other than by notice to Class Counsel, be adjourned or continued by order of the Court; and

**3.2.10**    Approve the Form of CAFA Notices attached as Exhibit 4 and order that upon mailing of the CAFA notices, Defendants shall have fulfilled its obligations under CAFA

**3.2.11**    Determine that the information to be provided to the Settlement Administrator in connection with the administration of the settlement shall be considered confidential information and protected by Court Order from public disclosure.

**3.3**    Defendants and Defense Counsel shall use reasonable efforts to respond timely to written requests, including by e-mail, from the Settlement Administrator for readily accessible data that are reasonably necessary to determine the feasibility of administering the Plan of Allocation or to implement the Plan of Allocation. The actual and reasonable expenses of the Plan's recordkeeper, that are necessary to perform such work shall constitute an Administrative Expense to be deducted from the Gross Settlement Amount.

    **3.3.1**    The Settlement Administrator shall not disclose the data provided by Defendants and the Plan's recordkeeper to any person other than Defendants and Defense Counsel and such data shall solely be for the purpose of meeting its obligations as Settlement Administrator, and for no other purpose.

    **3.3.2**    The Settling Parties shall have the right to approve a written protocol to be provided by the Settlement Administrator concerning how the Settlement Administrator will maintain and store information provided to it in order to ensure that reasonable and necessary precautions are taken to safeguard the confidentiality, privacy and security of such information.

**3.4**    By the date and in the manner set by the Court in the Preliminary Order, and unless otherwise set forth below, the Settlement Administrator shall:

    **3.4.1**    Cause to be provided to each Class Member identified by the Settlement Administrator a Settlement Notice in the form and manner to be approved by the Court, which shall be in substantially the form attached hereto as Exhibit 2 or a form subsequently agreed to by the Settling Parties and approved by the Court. The Settlement Notice shall be sent to the last known address of each Class Member provided by the Plan's recordkeeper (or its designee, unless an updated address is obtained by the Settlement Administrator through its efforts to verify the last known addresses provided by the Plan's recordkeeper (or its designee)). The Settlement Administrator also shall post a copy of the Settlement Notice on the Settlement Website. The Settlement Administrator shall use commercially reasonable efforts to locate any Class Member whose Settlement Notice is returned and re-send such documents one additional time.

**4.**    **Article 4 – Final Settlement Approval**

**4.1**    No later than ten (10) business days before the Fairness Hearing, Class Counsel shall submit to the Court a mutually agreed upon motion for entry of the Final Order (Exhibit 3) in the form approved by Class Counsel and Defense Counsel, which shall request approval by the Court of the terms of the Settlement

Agreement and entry of the Final Order in accordance with the Settlement Agreement. The Final Order as proposed shall provide for the following, among other things, as is necessary to carry out the Settlement consistent with applicable law and governing Plan documents:

**4.1.1**    Approval of the Settlement of the Released Claims covered by the Settlement Agreement adjudging the terms of the Settlement Agreement to be fair, reasonable, and adequate to the Plan and the Class Members and directing the Settling Parties to take the necessary steps to effectuate the terms of the Settlement Agreement;

**4.1.2**    A determination under Rule 23(c)(2)(A) of the Federal Rules of Civil Procedure that the Settlement Notice constitutes appropriate notice under the circumstances and that due and sufficient notice of the Fairness Hearing and the rights of all Class Members has been provided;

**4.1.3**    Dismissal with prejudice of the Lawsuit and all Released Claims asserted therein whether asserted by Class Representative on his own behalf or on behalf of the Class Members, or derivatively to secure relief for the Plan, without costs to any of the Settling Parties other than as provided for in the Settlement Agreement.

**4.1.4**    That each Class Member (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns) shall be (i) conclusively deemed to have, and by operation of the Final Order to have, fully, finally, and forever settled, released, relinquished, waived, and discharged the Released Settling Parties and the Plan from all Released Claims, and (ii) barred and enjoined from suing the Released Settling Parties or the Plan in any action or proceeding alleging any of the Released Claims, even if any Class Member may thereafter discover facts in addition to or different from those which the Class Members or Class Counsel now know or believe to be true with respect to the Lawsuit and the Released Claims, whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Cost and whether or not the objection or claims for distribution of such Class Members have been approved or allowed;

**4.1.5**    That the Plan and each Class Member (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns) on behalf of the Plan shall be (i) conclusively deemed to have, and by operation of the Final Order shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged the

Released Settling Parties from all Released Claims, and (ii) barred and enjoined from suing the Released Settling Parties in any action or proceeding alleging any of the Released Claims, even if the Plan or any Class Member on behalf of the Plan may thereafter discover facts in addition to or different from those which the Plan or any Class Member now knows or believes to be true with respect to the Lawsuit and the Released Claims whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Cost and whether or not the objection or claims for distribution of such Class Members have been approved or allowed;

4.1.6   That each Class Member shall release the Released Settling Parties, Defense Counsel, Class Counsel, and the Plan for any claims, liabilities, and attorneys' fees and expenses arising from the allocation of the Gross Settlement Amount or Net Settlement Amount and for all tax liability and associated penalties and interest as well as related attorneys' fees and expenses;

4.1.7   That all applicable CAFA requirements have been satisfied;

4.1.8   That the Settlement Administrator shall have final authority to determine the share of the Net Settlement Amount to be allocated to each Class Member in accordance with the Plan of Allocation approved by the Court and the Settling Parties;

4.1.9   That within twenty-one (21) calendar days following the issuance of all settlement payments to Class Members as provided by the Plan of Allocation approved by the Court, the Settlement Administrator shall prepare and provide to Class Counsel and Defense Counsel a list of each person who received a settlement payment or contribution from the Qualified Settlement Fund and the amount of such payment or contribution.

4.2   The Final Order and judgment entered by the Court approving the Settlement Agreement shall provide that upon its entry all Settling Parties, the Settlement Class, and the Plan shall be bound by the Settlement Agreement and by the Final Order.

5.   **Article 5 – Establishment of Qualified Settlement Fund**

5.1   No later than five (5) business days after entry of the Preliminary Order, the Escrow Agent shall establish an escrow account. The Settling Parties agree that the escrow account is intended to be, and will be, an interest-bearing Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1. In addition, the

Escrow Agent timely shall make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to prepare and deliver, in a timely and proper manner, the necessary documentation for signature by all necessary Settling Parties, and thereafter to cause the appropriate filing to occur.

5.2     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent, or the Settlement Administrator on its behalf, shall timely and properly cause to be filed all informational and other tax returns necessary or advisable with respect to the Gross Settlement Amount (including without limitation applying for a Taxpayer Identification Number for the Fund and filing the returns described in Treas. Reg. § 1.468B-2(k)). Such returns as well as the election described in Paragraph 5.1 shall be consistent with this Article 5 and, in all events, shall reflect that all taxes (as defined in Paragraph 5.3 below) (including any estimated taxes, interest, or penalties) on the income earned by the Gross Settlement Amount shall be deducted and paid from the Gross Settlement Amount as provided in Paragraph 5.3.

5.3     Taxes and tax expenses are Administrative Expenses to be deducted and paid from the Gross Settlement Amount, including but not limited to: (1) all taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Gross Settlement Amount, including any taxes or tax detriments that may be imposed upon Defendants or Defense Counsel with respect to any income earned by the Gross Settlement Amount for any period during which the Gross Settlement Amount does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (2) all tax expenses and costs incurred in connection with the operation and implementation of this Article 5 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Article 5). Such taxes and tax expenses shall be Administrative Expenses and shall be paid timely by the Escrow Agent out of the Gross Settlement Amount without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any Class Member any funds necessary to pay such amounts, including the establishment of adequate reserves for any taxes and tax expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)); neither the Released Settling Parties, Defense Counsel, nor Class Counsel are responsible nor shall they have any liability therefor. The Settling Parties agree to cooperate with the Escrow Agent, each

other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Article 5.

5.4    Within thirty (30) calendar days after the Preliminary Order is entered, West Corp. or its agents or insurers, will deposit by check $400,000 (four-hundred thousand dollars) into the Qualified Settlement Fund, provided, however, that the obligation to deposit these funds applies only if the Escrow Agent shall have furnished to Defendants in writing the escrow account name, IRS W-9 Form, and all necessary instructions for delivery of a check within three (3) business days after the entry of the Preliminary Order and West Corp. shall have received a copy of the signed Preliminary Order.

5.5    Within thirty (30) calendar days after the Final Order becomes Final, West Corp. or its agents or insurers, will deposit by check $475,000 (four-hundred seventy five thousand dollars) into the Qualified Settlement Fund.

5.6    The Escrow Agent, at the written direction of Class Counsel, shall invest the Qualified Settlement Fund in short-term United States Agency or Treasury Securities or other instruments backed by the Full Faith and Credit of the United States Government or an Agency thereof if feasible, or else in an account fully insured by the United States Government or an Agency thereof, and shall reinvest the proceeds of these investments as they mature in similar instruments at their then-current market rates.

5.7    The Escrow Agent shall not disburse the Qualified Settlement Fund or any portion except as provided in the Settlement Agreement, in an order of the Court, or in a subsequent written stipulation between Class Counsel and Defense Counsel. Subject to the orders of the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Settlement Agreement.

5.8    Prior to the Settlement Effective Date, the Escrow Agent shall disburse up to $50,000 (fifty thousand dollars) to the Settlement Administrator for costs actually incurred in connection with distribution of the Notice.

5.9    After the Settlement Effective Date, the Gross Settlement Amount will be distributed from the Qualified Settlement Fund as follows: (a) first, all Attorneys' Fees and costs shall be paid to Class Counsel no later than eight (8) calendar days after the Settlement Effective Date; (b) second, all Administrative Expenses not paid previously shall be paid no later than eight (8) calendar days after the Settlement Effective Date; (c) third, any Class Representative Compensation ordered by the Court shall be paid no later eight (8) calendar days after the Settlement Effective Date; (d) fourth, a contingency reserve not to exceed an amount to be mutually agreed upon by the Settling Parties shall be set aside by the Settlement Administrator for: (1) Administrative Expenses incurred before the Settlement Effective Date but not yet paid, (2) Administrative Expenses estimated

to be incurred after the Settlement Effective Date, and (3) an amount estimated for adjustments of data or calculation errors; and (e) fifth, no earlier than 14 business days after the expiration period for all appeals from the Court's Final approval of the Settlement, the Net Settlement Amount will be distributed in accordance with the Plan of Allocation; and (f) sixth, any funds from the Net Settlement Amount that remain uncashed or otherwise undistributed, after efforts to locate Class Members have been exhausted by the Settlement Administrator in the manner set forth in Section 3.41, will be transferred to the Plan's trust and thereafter used by the Plan to pay Plan administrative expenses. Pending final distribution of the Net Settlement Amount in accordance with the Plan of Allocation, the Escrow Agent will maintain the Qualified Settlement Fund.

**5.10**  The Escrow Agent, or the Settlement Administrator on its behalf, shall be responsible for making provision for the payment from the Qualified Settlement Fund of all taxes and tax expenses, if any, owed with respect to the Qualified Settlement Fund and for all tax reporting, remittance, and/or withholding obligations, if any, for amounts distributed from it.  Released Settling Parties, Defense Counsel, and Class Counsel have no responsibility or any liability for any taxes or tax expenses owed by, or any tax reporting or withholding obligations, if any, of the Qualified Settlement Fund.

**6.    Article 6 – Plan of Allocation**

**6.1**  After the Settlement Effective Date, the Settlement Administrator shall cause the Net Settlement Amount (as defined in § 2.22) to be allocated and distributed in accordance with the Plan of Allocation set forth in this Article 6 and as ordered by the Court.

**6.2    Calculation of Settlement Payments**

**6.2.1**  Upon determining the Net Settlement Amount in accordance with the preceeding sections, the Settlement Administrator shall divide the Net Settlement Amount into equal Quarterly Settlement Allocations beginning with June 30, 2013 and ending with last day of the calendar quarter immediately preceding the entry of the Preliminary Order.

**6.2.2**  Each Quarterly Settlement Allocation will be allocated proportionally based on each Class Member's account balance at the close of each quarter of the Class Period (that Class Member's "Quarterly Balance").

**6.2.3**  For each quarter of the Class Period, the settlement administrator shall, calculate the total of all Quarterly Balances for that quarter. For each Class Member who had a balance in a given quarter, the Settlement Administrator shall divide that Class Member's Quarterly Balance for such quarter by the total Quarterly Balances for such quarter where (i.e.

the numerator is the Class Member's Quarterly Balance for a given quarter and the denominator is the sum of all Class Members' Quarterly Balances for that quarter). This is each Class Member's Quarterly Proportion.

**6.2.4**   The Settlement Administrator shall then multiply each Class Member's Quarterly Proportion for a given quarter by the Quarterly Settlement Allocation for that quarter, resulting in a Class Member's Quarterly Payment.

**6.2.5**   The Settlement Administrator shall then add all the Quarterly Payments for each respective Class Member, resulting in the Class Member Total Payment. Class Members other than Class Representatives who no longer have an account in the Plan and who have a Class Member Total Payment of less than $10 (ten dollars) (the "De Minimis Amount") shall receive no allocation from the Net Settlement Amount. The Settlement Administrator shall then, taking into account the Class Members who will receive nothing because they do not satisfy the De Minimis Amount, recalculate the amount to distribute to Class Members to arrive at the amount to be paid to each remaining Class Member. The amounts paid to each individual Class Member is referred to as the Payment. The sum of the Payments must equal the Net Settlement Amount.

**6.3   Payments To Participants With Plan Accounts**

**6.3.1**   For Class Members with a Plan account with a balance of more than $0 at the time of distribution, their Payment will be allocated into their Plan account. In order for this allocation to occur, after the Effective Date, the Settlement Administrator shall wire to the Plan recordkeeper funds that total the sum of the Payments to be deposited into accounts of Class Members along with the information and/or data needed to determine the Payment due to each of these Class Members. The Recordkeeper will then allocate each Payment into the account of each Class Member with a Plan account. The Recordkeeper shall allocate the Payment pursuant to the Class Member 's investment elections on file for new contributions. If the Class Member has no election on file, the Payment shall be invested in any default investment option(s) designated by the Plan. All such allocations shall be treated for administrative and reporting purposes as investment earnings.

**6.4   Payments to Former Participants**

**6.4.1**   Class Members who no longer have a Plan account with a balance of more than $0 ("Former Participants") shall be paid directly by the Settlement Administrator by check. All such payments are intended by

the Settlement Class to be "restorative payments" in accordance with Internal Revenue Service Revenue Ruling 2002-45.

**6.4.2**   Checks issued to Former Participants pursuant to this paragraph shall be valid for 180 days from the date of issue. All checks that are undelivered or are not cashed before their expiration date shall revert to the Qualified Settlement Fund.

**6.5**   The Settlement Administrator shall utilize the calculations required to be performed herein for making the Payments, less any required tax withholdings or penalties, to each Class Member. In the event that the Settlement Administrator determines that the Plan of Allocation would otherwise require payments exceeding the Net Settlement Fund, the Settlement Administrator is authorized to make such changes as are necessary to the Plan of Allocation such that said totals do not exceed the Net Settlement Fund. The Settlement Administrator shall be solely responsible for performing any calculations required by this Plan of Allocation.

**6.6**   If the Settlement Administrator concludes that it is impracticable to implement any provision of this Plan of Allocation, the Parties will modify promptly the terms of this Plan of Allocation and present such modified terms, first, to the Independent Fiduciary for its review and approval and, second, to the Court for its approval. Direct mailed notice to Class Members of such proposed modification of the Plan of Allocation shall not be required. However, Class Counsel shall post notice of such proposed modification on the Settlement Website within five (5) business days of the date that the proposed modification is submitted to the Court for its approval. If the proposed modification is implemented, Class Counsel shall post notice of such modification on the Settlement Website within five (5) business days of the date that the modification was implemented.

**6.7**   Within ten (10) business days of completing the distribution of all Payments, the Settlement Administrator shall send to Class Counsel and Defense Counsel  one or more affidavits stating the following: (a) the name of each Class Member to whom the Settlement Administrator made a distribution from the Net Settlement Amount, together with the amount of the distribution, the name of the payee, the date of distribution, the amount of tax withholdings, if applicable, and the date of remittance of tax withholdings to the appropriate tax authority, if applicable; (b) the date(s) upon which such distribution was made; (c) the name of each Class Member whose distribution was returned as undeliverable; and (d) the efforts made by the Settlement Administrator to find the correct address and to mail the distribution for such Class Member.  These affidavits and the accompanying information shall be considered Confidential and protected from disclosure by Court order.

**6.8** The Settling Parties acknowledge that any payments to Class Members or their attorneys may be subject to applicable tax laws. Defendants, Defense Counsel, Class Counsel, and Class Representatives will provide no tax advice to the Class Members and make no representation regarding the tax consequences of any of the settlement payments described in this Settlement Agreement. To the extent that any portion of any settlement payment is subject to income or other tax, the recipient of the payment shall be responsible for payment of such tax. Deductions will be made, and reporting will be performed by the Settlement Administrator, as required by law in respect of all payments made under the Settlement Agreement. Payments from the Qualified Settlement Fund shall not be treated as wages by the Parties.

**6.9** Each Class Member who receives a payment under this Settlement Agreement shall be fully and ultimately responsible for payment of any and all federal, state, or local taxes resulting from or attributable to the payment received by such person. Each Class Member shall hold the Released Parties, Defense Counsel, Class Counsel, and the Settlement Administrator harmless from any tax liability, including penalties and interest, related in any way to payments under the Settlement Agreement, and shall hold the Released Parties, Defense Counsel, Class Counsel, and the Settlement Administrator harmless from the costs (including, for example, attorneys' fees and disbursements) of any proceedings (including, for example, investigation and suit), related to such tax liability.

**7.** **Article 7 – Attorneys' Fees and Costs**

**7.1** Class Counsel intends to seek an award of attorneys' fees not to exceed $290,000 two-hundred and ninety thousand dollars) and litigation costs and expenses advanced and carried by Class Counsel for the duration of this litigation, not to exceed $50,000 (fifty thousand dollars), both of which shall be paid (if at all) only from the Gross Settlement Amount.

**7.2** Class Counsel also intends to seek Class Representatives' Compensation, in an amount not to exceed $5,000 (five thousand dollars), which shall be paid from the Gross Settlement Amount.

**7.3** Class Counsel will file a motion for Final Approval of Settlement and for awards of Attorneys' Fees and Costs and Class Representatives' Compnesation at least forty-five (45) calendar days before the Fairness Hearing, which may be supplemented thereafter.

**8.** **Article 8 – Release and Covenant Not to Sue**

**8.1** As of the Settlement Effective Date, the Plan (subject to Independent Fiduciary approval as required by Paragraph 3.1) the Class Representatives and the Class Members (and their respective heirs, beneficiaries, executors, administrators,

estates, successors, assigns, agents, and attorneys), on their own behalves and on behalf of the Plan, shall be deemed to have fully, finally, and forever settled, released, relinquished, waived, and discharged all Released Settling Parties from the Released Claims whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs.

8.2     As of the Settlement Effective Date, the Class Representatives, the Class Members, and the Plan (subject to Independent Fiduciary approval as required by Paragraph 3.1), expressly agree that they, acting individually or together, or in combination with others, shall not sue or seek to institute, maintain, prosecute, argue, or assert in any action or proceeding (including but not limited to an IRS determination letter proceeding, a Department of Labor proceeding, an arbitration or a proceeding before any state insurance or other department or commission), any cause of action, demand, or claim on the basis of, connected with, or arising out of any of the Released Claims. Nothing herein shall preclude any action to enforce the terms of the Settlement Agreement in accordance with the procedures set forth in the Settlement Agreement.

8.3     Class Counsel, the Class Representatives, Class Members, or the Plan, may hereafter discover facts in addition to or different from those that they know or believe to be true with respect to the Released Claims. Such facts, if known by them, might have affected the decision to settle with the Released Settling Parties and the Plan, or the decision to release, relinquish, waive, and discharge the Released Claims, or the decision of a Class Member not to object to the Settlement. Notwithstanding the foregoing, the Class Representatives, Class Member and the Plan shall expressly, upon the entry of the Final Order, be deemed to have, and, by operation of the Final Order, shall have fully, finally, and forever settled, released, relinquished, waived, and discharged any and all Released Claims. The Class Representatives, Class Members, and the Plan acknowledge and shall be deemed by operation of the Final Order to have acknowledged that the foregoing waiver was bargained for separately and is a key element of the Settlement embodied in the Settlement Agreement of which this release is a part.

8.4     Class Representatives, Class Members, and the Plan hereby stipulate and agree with respect to any and all Released Claims that, upon entry of the Final Order, each of them shall be conclusively deemed to, and by operation of the Final Order shall settle, release, relinquish, waive and discharge any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown claims, including but not limited to Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

**8.5** Also, the Class Representatives and Class Members, shall upon entry of the Final Order with respect to the Released Claims, waive any and all provisions, rights and benefits conferred by any law or of any State or territory within the United States or any foreign country, or any principle of common law, which is similar, comparable or equivalent in substance to Section 1542 of the California Civil Code.

**9.      Article 9 – Representations and Warranties**

**9.1** The Settling Parties represent:

**9.1.1** That they are voluntarily entering into the Settlement Agreement as a result of arm's length negotiations among their counsel, and that in executing the Settlement Agreement they are relying solely upon their own judgment, belief, and knowledge, and upon the advice and recommendations of their own independently selected counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof;

**9.1.2** That they assume the risk of mistake as to facts or law;

**9.1.3** That they recognize that additional evidence may have come to light, but that they nevertheless desire to avoid the expense and uncertainty of litigation by entering into the Settlement;

**9.1.4** That they have read carefully the contents of the Settlement Agreement, and the Settlement Agreement is signed freely by each individual executing the Settlement Agreement on behalf of each of the Settling Parties; and

**9.1.5** That they have made such investigation of the facts pertaining to the Settlement and all matters pertaining thereto, as they deem necessary.

**9.2** Each individual executing the Settlement Agreement on behalf of a Settling Party does hereby personally represent and warrant to the other Settling Parties that he/she has the authority to execute the Settlement Agreement on behalf of, and fully bind, each principal that each such individual represents or purports to represent.

**10.    Article 10 – Additional Terms**

10.1    No Settling Party or their counsel will issue a press release or other statement to the media, including on social media, regarding the Lawsuit or the Settlement Agreement.

**11.    Article 11 – Termination, Conditions of Settlement, and Effect of Disapproval, Cancellation, or Termination**

11.1    The Settlement Agreement shall automatically terminate, and thereby become null and void with no further force or effect if:

   11.1.1    Under Paragraph 3.1, (1) either the Independent Fiduciary does not approve the Settlement Agreement, or disapproves the Settlement Agreement for any reason whatsoever or West Corp. reasonably concludes that the Independent Fiduciary's approval does not include the determinations required by PTE 2003-39; and (2) the Settling Parties do not mutually agree to modify the terms of the Settlement Agreement to facilitate an approval by the Independent Fiduciary or the Independent Fiduciary's determinations required by PTE 2003-39;

   11.1.2    The Preliminary Order or the Final Order are not entered by the Court substantially in the form submitted by the Settling Parties or in a form which is otherwise agreed to by the Settling Parties;

   11.1.3    The Settlement Class is not certified as defined herein or in a form which is otherwise agreed to by the Parties.

   11.1.4    The Settlement Agreement is disapproved by the Court or fails to become effective for any reason whatsoever; or

   11.1.5    The Preliminary Order or Final Order is finally reversed on appeal, or is materially modified on appeal, and the Settling Parties do not mutually agree to any such modifications.

11.2    If the Settlement Agreement is terminated, deemed null and void, or has no further force or effect, the Lawsuit and the Released Claims asserted by Class Representatives shall for all purposes with respect to the Settling Parties revert to their status immediately prior to December 9, 2021 as though the Settling Parties never executed the Settlement Agreement. All funds deposited in the Qualified Settlement Fund, and any interest earned thereon, except for any amounts already distributed to the Claims Administrator for Notice expenses at the time of the termination, shall be returned to West Corp.'s insurer within thirty (30) calendar days after the Settlement Agreement is finally terminated or deemed null and void, except as provided for in Paragraph 11.4.

**11.3**   It shall not be deemed a failure to approve the Settlement Agreement if the Court denies, in whole or in part, Class Counsel's request for Attorneys' Fees and Costs, Class Representatives' Compensation, and/or modifies any of the proposed orders insofar as they relate to Attorneys' Fees and Costs and/or the Class Representatives' Compensation.

**11.4**   In the event that the Settlement Agreement is terminated, Administrative Expenses incurred prior to the termination shall be paid first from the interest earned, if any, on the Qualified Settlement Fund. Administrative Expenses in excess of the interest earned on the Qualified Settlement Fund shall be split evenly and paid by Class Counsel, on the one hand, and West Corp. or its insurer, on the other hand.

**12.    Article 12 – Confidentiality of Settlement Negotiations**

**12.1**   Except as set forth explicitly below, the Settling Parties and Class Counsel agree to keep confidential all statements, positions, and offers made during settlement negotiations relating to the Lawsuit and the Settlement Agreement. Accordingly, neither the negotiations, nor any agreement between the Settling Parties may be disclosed, except: (i) insofar as may be necessary to obtain court approval of the Settlement; (ii) to management employees of West Corp. and other employees of West Corp as necessary to implement the Settlement, service providers to the Plan as necessary to implement the Settlement, and to Defendants' affiliates provided they agree to maintain confidentiality; (iii) to any insurer of Defendants that will be paying any part of the Gross Settlement Amount; (iv) as may be necessary for Defendants to meet any federal, state or local reporting obligations; (v) to enforce its terms; (vi) to Class Members, the Independent Fiduciary, and the Settling Parties' tax, legal, and regulatory advisors, or insurers, or (vii) as otherwise required by law. Provided however, that any such person or entity to whom information is disclosed must promise in writing: (a) that such information shall not be further disclosed, and (b) to comply with this Article 12 in all other respects. The limitations in this paragraph will also apply to the Settlement Agreement, until such time at it is filed with the Court.

**12.2**   Class Counsel will establish a Settlement Website on which it will post the following documents or links to the following documents on or following the date of the Preliminary Order: the operative Class Action Complaint; Settlement Agreement and its exhibits; Settlement Notice; Class Representatives' Motions for Preliminary and Final Approval of the Settlement, Attorneys' Fees and Costs and Award of Compensation to Class Representatives, with any accompanying briefs and exhibits; any Court orders related to the Settlement; any amendments or revisions to these documents; and any other documents or information mutually agreed upon by the Settling Parties ("Settlement Website Information"). No other information or documents will be posted on the Settlement Website unless agreed

to in advance by the Settling Parties in writing. Class Counsel will take down the Settlement Website ninety (90) calendar days after the Settlement Administrator certifies that distribution of the Qualified Settlement Fund is complete.

**12.3**    Within thirty (30) calendar days of the filing of the motion for preliminary approval of the Settlement, Defendants may issue a communication to Plan participants and beneficiaires explaining the terms of the Settlement and Plan of Allocation. Defendants shall provide a draft of the communication to Class Counsel in advance of the dissemination of the communication.

**13.**    **Article 13 – General Provisions**

**13.1**    The Settling Parties, agree to cooperate fully with each other in seeking Court approvals of the Preliminary Order and the Final Order, and to do all things as may reasonably be required to effectuate preliminary and final approval and the implementation of the Settlement Agreement according to its terms. The Settling Parties agree to provide each other with copies of any filings necessary to effectuate this Settlement at least three (3) business days in advance of filing.

**13.2**    Within sixty (60) calendar days of the Settlement Effective Date, the Settling Parties shall either return to the producing Settling Parties or destroy, all documents produced in discovery, including but not limited to documents produced under a claim of privilege or confidentiality. Each Settling Party shall serve a written notice to each producing party certifying that the Settling Party has carried out the obligations imposed by this Paragraph 13.2. After the Settlement Effective Date, Class Counsel agree that any documents retained as part of their legal files for this case shall not be accessed except to respond to formal inquiries about the Lawsuit made by or on behalf of Class Members.

**13.3**    The Settlement Agreement, whether or not consummated, and any negotiations or proceedings hereunder are not, and shall not be construed as, deemed to be, or offered or received as evidence of an admission by or on the part of any Released Settling Party of any wrongdoing, fault, or liability whatsoever by any Released Settling Party, or give rise to any inference of any wrongdoing, fault, or liability or admission of any wrongdoing, fault, or liability in the Lawsuit or any other proceeding, and Defendants admits no wrongdoing, fault or liability with respect to any of the allegations or claims in the Lawsuit. The Settlement Agreement, whether or not consummated, and any negotiations or proceedings hereunder, shall not constitute admissions of any liability of any kind, whether legal or factual.

**13.4**    Neither the Settling Parties, Class Counsel, nor Defense Counsel shall have any responsibility for or liability whatsoever with respect to: (i) any act, omission, or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Gross Settlement

Amount or otherwise; (ii) the determination of the Independent Fiduciary; (iii) the management, investment, or distribution of the Qualified Settlement Fund; (iv) the Plan of Allocation as approved by the Court; (v) the determination, administration, calculation, or payment of any claims asserted against the Qualified Settlement Fund; (vi) any losses suffered by, or fluctuations in the value of, the Qualified Settlement Fund; or (vii) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Qualified Settlement Fund or tax reporting, or the filing of any returns. Further, neither Defendants nor Defense Counsel shall have any responsibility for, or liability whatsoever with respect to, any act, omission, or determination of Class Counsel in connection with the administration of the Gross Settlement Amount or otherwise.

**13.5**   Only Class Counsel shall have standing to seek enforcement of the Settlement Agreement on behalf of Class Representatives and Class Members. Any individual concerned about Defendants' compliance with the Settlement Agreement may so notify Class Counsel and direct any requests for enforcement to Class Counsel. Class Counsel shall have the full and sole discretion to take whatever action they deem appropriate, or to refrain from taking any action, in response to such request. Any action by Class Counsel to monitor or enforce the Settlement Agreement shall be done without additional fee or reimbursement of expenses beyond the Attorneys' Fees and Costs determined by the Court.

**13.6**   The Settlement Agreement shall be interpreted, construed, and enforced in accordance with applicable federal law and, to the extent that federal law does not govern, by Colorado law.

**13.7**   The Parties agree that any and all disputes concerning compliance with the Settlement Agreement, with the exception of any and all disputes concerning compliance with Article 8, shall first follow the process below:

   **13.7.1**   If a Party has reason to believe that a legitimate dispute exists concerning the Settlement Agreement, other than any and all disputes concerning compliance with Article 8, the Party raising the dispute shall first promptly give written notice under the Settlement Agreement to the other Parties including in such notice: (a) a reference to all specific provisions of the Settlement Agreement that are involved; (b) a statement of the alleged non-compliance; (c) a statement of the remedial action sought; and (d) a brief statement of the specific facts, circumstances, and any other arguments supporting the position of the Party raising the dispute.

   **13.7.2**   Within twenty (20) calendar days after receiving the notice described in Paragraph 13.7.1, the receiving Parties shall respond in writing with their

position and the facts and arguments they rely on in support of their position.

13.7.3   For a period of not more than twenty (20) calendar days following mailing of the response described in Paragraph 13.7.2, the Parties shall undertake good-faith negotiations, which may include meeting in person or conferring by telephone, to attempt to resolve the dispute.

13.7.4   If the dispute is not resolved during the period described in Paragraph 13.7.3, the Parties shall conduct a mediation of the dispute with Mediator on the earliest reasonably practicable date; provided, however, that the scope of such mediation shall be expressly limited to the dispute.

13.7.5   In any mediation under this Paragraph 13.7, each Party shall bear its own fees and costs.

13.7.6   If the dispute is not resolved through mediation, either Party may request that the Court resolve the dispute.

13.8   The Settling Parties agree that the Court has personal jurisdiction over the Settlement Class and Defendants and shall maintain that jurisdiction for purposes of resolving any disputes between the Settling Parties concerning compliance with the Settlement Agreement that are not resolved under Paragraph 13.7. Any motion or action to enforce the Settlement Agreement—including by way of injunction—may be filed in the U.S. District Court for the Southern District of Alabama, or asserted by way of an affirmative defense or counterclaim in response to any action asserting a violation of the Settlement Agreement.

13.9   The Settlement Agreement may be executed by exchange of executed signature pages, and any signature transmitted by facsimile or e-mail attachment of scanned signature pages for the purpose of executing the Settlement Agreement shall be deemed an original signature for purposes of the Settlement Agreement. The Settlement Agreement may be executed in any number of counterparts, and each of such counterparts shall for all purposes be deemed an original, and all such counterparts shall together constitute the same instrument. The Settlement Agreement may be executed via an electronic signature using the Docusign service.

13.10   Each Settling Party to the Settlement Agreement hereby acknowledges that he, she, or it has consulted with and obtained the advice of counsel prior to executing the Settlement Agreement and that the Settlement Agreement has been explained to that party by his, her, or its counsel.

13.11   Any headings included in the Settlement Agreement are for convenience only and do not in any way limit, alter, or affect the matters contained in the Settlement

Agreement or the Articles or Paragraphs they caption. References to a person are also to the person's permitted successors and assigns, except as otherwise provided herein. Whenever the words "include," "includes" or "including" are used in the Settlement Agreement, they shall not be limiting but shall be deemed to be followed by the words "without limitation."

13.12    Before entry of the Preliminary Approval Order and approval of the Independent Fiduciary, the Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Settling Parties. Following approval by the Independent Fiduciary, the Settlement Agreement may be modified or amended only if such modification or amendment is set forth in a written agreement signed by or on behalf of all Settling Parties and only if the Independent Fiduciary approved such modification or amendment in writing. Following entry of the Preliminary Approval Order, the Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Settling Parties, and only if the modification or amendment is approved by the Independent Fiduciary in writing and approved by the Court.

13.13    The Settlement Agreement and the exhibits attached hereto constitute the entire agreement among the Settling Parties and no representations, warranties, or inducements have been made to any Settling Party concerning the Settlement other than those contained in the Settlement Agreement and the exhibits thereto.

13.14    The provisions of the Settlement Agreement may be waived only by an instrument in writing executed by the waiving party and specifically waiving such provisions. The waiver of any breach of the Settlement Agreement by any Settling Party shall not be deemed to be or construed as a waiver of any other breach or waiver by any other Settling Party, whether prior, subsequent, or contemporaneous, of the Settlement Agreement.

13.15    Each of the Settling Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that it will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter of the Settlement Agreement.

13.16    The provisions of the Settlement Agreement are not severable.

13.17    All of the covenants, representations, and warranties, express or implied, oral or written, concerning the subject matter of the Settlement Agreement are contained in the Settlement Agreement. No Settling Party is relying on any oral representations or oral agreements. All such covenants, representations, and warranties set forth in the Settlement Agreement shall be deemed continuing and shall survive the Effective Date of Settlement.

**13.18**  All of the exhibits attached hereto are incorporated by reference as though fully set forth herein. The exhibits shall be: Exhibit 1 – Preliminary Order; Exhibit 2 – Notice of Class Action Settlement and Fairness Hearing; Exhibit 3 – Final Order; Exhibit 4- Form of CAFA Notice.

**13.19**  No provision of the Settlement Agreement or of the exhibits attached hereto shall be construed against or interpreted to the disadvantage of any Settling Party to the Settlement Agreement because that Settling Party is deemed to have prepared, structured, drafted, or requested the provision.

**13.20**  Any notice, demand, or other communication under the Settlement Agreement (other than the Settlement Notice, or other notices given at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail postage prepaid, or delivered by reputable express overnight courier;

IF TO THE CLASS REPRESENTATIVES:

> Mark J. Tamblyn (mjt@wbe-llp.com)
> WEXLER BOLEY & ELGERSMA LLP
> 333 University Avenue, Suite 200
> Sacramento, California 95825
> Tel: (916) 565-7692
> Fax: (916) 346-0022

IF TO DEFENDANTS:

> Michael J. Prame (mjp@groom.com)
> Samual Levin (slevin@groom.com)
> GROOM LAW GROUP, CHARTERED
> 1701 Pennsylvania Ave. NW
> Suite 1200
> Washington, DC 20006
> Tel: (202) 857-0620
> Fax: (202) 659-4503

> William B. Wahlheim, Jr. (wwahlheim@maynardcooper.com)
> MAYNARD COOPER & GALE
> 1901 Sixth Avenue North
> Birmingham, AL  35203
> Tel: (205) 254-1088
> Fax: (205) 254-1999

On Behalf of Plaintiffs Individually and as Class Representatives:

Dated: 5/3/2022 _____

*Courtless Rampey*

Courtless Rampey
Plaintiff and Class Representative

Dated: _____

_____
Bridget Cunningham
Plaintiff and Class Representative

Dated: _____

_____
Gregory Coleman
Arthur Stock
Ryan P. McMillan
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
800 South Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
F: (865) 522-0049
gcoleman@milbnerg.com
astock@milberg.com
rmcmillan@milberg.com

Dated: _____

_____
Charles J. Potts
BRISKMAN & BINION, P.C.
P.O. Box 43
Mobile, AL 36601
Tel: (251) 433-7600
Fax: (251) 433-4485
cpotts@briskman-binion.com

Dated: _____

_____
Charles Crueger
Benjamin Kaplan
CRUEGER DICKINSON LLC
4532 North Oakland Avenue

On Behalf of Plaintiffs Individually and as Class Representatives:

Dated: _____

Courtless Rampey
Plaintiff and Class Representative

Dated: _5/4/22_

Bridget Cunningham
Plaintiff and Class Representative

Dated: _____

Gregory Coleman
Arthur Stock
Ryan P. McMillan
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
800 South Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
F: (865) 522-0049
gcoleman@milbnerg.com
astock@milberg.com
rmcmillan@milberg.com

Dated: _____

Charles J. Potts
BRISKMAN & BINION, P.C.
P.O. Box 43
Mobile, AL 36601
Tel: (251) 433-7600
Fax: (251) 433-4485
cpotts@briskman-binion.com

Dated: _____

Charles Crueger
Benjamin Kaplan
CRUEGER DICKINSON LLC
4532 North Oakland Avenue

On Behalf of Plaintiffs Individually and as Class Representatives:

Dated: _____

_____
Courtless Rampey
Plaintiff and Class Representative

Dated: _____

_____
Bridget Cunningham
Plaintiff and Class Representative

Dated: ___5/2/2022___

_~signature~_

Gregory Coleman
Arthur Stock
Ryan P. McMillan
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN. PLLC
800 South Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
F: (865) 522-0049
gcoleman@milbnerg.com
astock@milberg.com
rmcmillan@milberg.com

Dated: _____

Charles J. Potts
BRISKMAN & BINION, P.C.
P.O. Box 43
Mobile, AL 36601
Tel: (251) 433-7600
Fax: (251) 433-4485
cpotts@briskman-binion.com

Dated: _____

Charles Crueger
Benjamin Kaplan
CRUEGER DICKINSON LLC
4532 North Oakland Avenue

On Behalf of Plaintiffs Individually and as Class Representatives:

Dated: _____

_____
Courtless Rampey
Plaintiff and Class Representative

Dated: _____

_____
Bridget Cunningham
Plaintiff and Class Representative

Dated: _____

_____
Gregory Coleman
Arthur Stock
Ryan P. McMillan
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
800 South Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
F: (865) 522-0049
gcoleman@milbnerg.com
astock@milberg.com
rmcmillan@milberg.com

Dated: 5/2/22

_____
Charles J. Potts
BRISKMAN & BINION, P.C.
P.O. Box 43
Mobile, AL 36601
Tel: (251) 433-7600
Fax: (251) 433-4485
cpotts@briskman-binion.com

Dated: _____

_____
Charles Crueger
Benjamin Kaplan
CRUEGER DICKINSON LLC
4532 North Oakland Avenue

On Behalf of Plaintiffs Individually and as Class Representatives:

Dated: _____

_____
Courtless Rampey
Plaintiff and Class Representative

Dated: _____

_____
Bridget Cunningham
Plaintiff and Class Representative

Dated: _____

_____
Gregory Coleman
Arthur Stock
Ryan P. McMillan
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
800 South Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
F: (865) 522-0049
gcoleman@milbnerg.com
astock@milberg.com
rmcmillan@milberg.com

Dated: _____

_____
Charles J. Potts
BRISKMAN & BINION, P.C.
P.O. Box 43
Mobile, AL 36601
Tel: (251) 433-7600
Fax: (251) 433-4485
cpotts@briskman-binion.com

Dated: 2 May 2022

_____
Charles Crueger
Benjamin Kaplan
CRUEGER DICKINSON LLC
4532 North Oakland Avenue

28

Whitefish Bay, WI 53211
Tel: (414) 210-3868
cjc@cruegerdickinson.com
bak@cruegerdickinson.com

Dated: _5/3/2022_

_____
Jordan Lewis
JORDAN LEWIS, P.A.
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Tel: (954) 616-8995
Fax: (954) 206-0374
jordan@jml-lawfirm.com

Dated: _____

_____
Mark J. Tamblyn
WEXLER BOLEY & ELGERSMA LLP
333 University Avenue, Suite 200
Sacramento, CA 95825
Tel: (916) 565-7692
Fax: (312) 346-0022
mjt@wbe-llp.com

Attorneys for Plaintiffs and Class
Representatives

29

Whitefish Bay, WI 53211
Tel: (414) 210-3868
cjc@cruegerdickinson.com
bak@cruegerdickinson.com

Dated: _____

_____

Jordan Lewis
JORDAN LEWIS, P.A.
4473 N.E. 11th Avenue
Fort Lauderdale, FL 33334
Tel: (954) 616-8995
Fax: (954) 206-0374
jordan@jml-lawfirm.com

Dated: 24 June 2022

Mark J. Tamblyn
WEXLER BOLEY & ELGERSMA LLP
333 University Avenue, Suite 200
Sacramento, CA 95825
Tel: (916) 565-7692
Fax: (312) 346-0022
mjt@wbe-llp.com

Attorneys for Plaintiffs and Class
Representatives

ON BEHALF OF DEFENDANTS:

Dated: May 2, 2022

*Sean Ward*

West Corp. on behalf of its
susbsidiaries, affiliates and its and
their, officers and directors

Dated: May 2, 2022

Michael J. Prame (mjp@groom.com)
Samual Levin (slevin@groom.com)
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave. NW
Suite 1200
Washington, DC 20006
Tel: (202) 857-0620
Fax: (202) 659-4503

William B. Wahlheim, Jr.
(wwahlheim@maynardcooper.com)
MAYNARD COOPER & GALE
1901 Sixth Avenue North
Birmingham, AL 35203
Tel: (205) 254-1088
Fax: (205) 254-1999

Attorneys for Defendants

Rampey v. West Corp. 401k Settlement Agreement

Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| Courtless Rampey and Bridget Cunningham, individually and as representatives of a Class of Participants and Beneficiaries on Behalf of the West Corporation 401(k) Retirement Plan; | Case No. 1:19-CV-00220-JB-B |
| Plaintiffs, | |
| v. | |
| West Corporation and Retirement Committee of West Corporation 401(k) Retirement Plan. | |
| Defendants. | |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

This litigation arose out of claims of alleged breaches of fiduciary duty in violation of the Employee Retirement Income Security Act of 1974 ("ERISA") with respect to the West Corporation Employee 401(k) Retirement Plan (the "Plan"). Presented to the Court for preliminary approval is a settlement of the litigation. The terms of the settlement are set out in a Class Action Settlement Agreement dated April ___, 2022 (the "Settlement Agreement" or "Settlement"). Except as otherwise defined herein, all capitalized terms used herein shall have the same meaning as ascribed to them in the Settlement Agreement.

Upon reviewing the Settlement Agreement and the motion papers submitted in connection with the motion for preliminary approval, and good cause appearing therefore, it is hereby ORDERED as follows:

1.    **Preliminary Findings Regarding the Proposed Settlement:** The Court preliminarily finds that:

    A.    The Settlement was negotiated at arm's length with the assistance of a nationally recognized private mediator after Class Counsel had received pertinent information and documents from Defendants;

    B.    Class Counsel and the Class Representatives have adequately represented the proposed Settlement Class, have submitted declarations in support of the Settlement, and have concluded that the Settlement is fair, reasonable and adequate; and

    C.    The Settlement is sufficiently fair, reasonable, and adequate to warrant sending notice of the Settlement to the Settlement Class.

2.    **Fairness Hearing**: A hearing (the "Fairness Hearing") will be held United States District Court for the Southern District of Alabama, Chief U.S. District Court Judge Jeffrey U. Beaverstock presiding, at ___ a.m/p.m., to determine, among other issues:

    A.    Whether the Court should approve the Settlement as fair, reasonable, and adequate;

    B.    Whether the Court should certify the Settlement Class;

    C.    Whether the Court should enter the Final Approval Order; and

    D.    Whether the Court should approve any motion for Attorneys' Fees and Costs, Administrative Expenses, and Class Representatives' Compensation.

3.    **Preliminary Certification of Settlement Class:** The following Settlement Class is preliminarily certified for settlement purposes pursuant to Fed. R. Civ. P. 23(b)(1):

> All persons who participated in the West Corporation Employee 401(k) Retirement Plan at any time between May 7, 2013 through [Date of Preliminary Order] ("Class Period"). including any Beneficiary of a deceased person who participated in the Plan at any time during the Class Period, and/or Alternate Payee, in the case of a person subject to a Qualified Domestic Relations Order who participated in the Plan at any time during the Class Period, except for past and present members of the Retirement Plan Committee of the West Corporation Employee 401(k) Retirement Plan.

The Court appoints Jordan Lewis of Jordan Lewis, P.A., Charles Crueger of Crueger Dickinson LLC, Arthur Stock of Milberg Coleman Bryson Phillips Grossman, PLLC, Mark J. Tamblyn of Wexler Boley & Elgersma LLP, and Charles J. Potts of Briskman & Binion, P.C. as counsel for the Settlement Class.  Further, the Court appoints Courtless Rampey and Bridget Cunningham as Class Representatives for the Settlement Class.

4.    **Class Notice**: The Settling Parties have presented to the Court a proposed form of notice regarding the Settlement for distribution to Settlement Class Members ("Settlement Notice").

A.    The Court finds that the Settlement Notice fairly and adequately:

i.    Summarizes the claims asserted;

ii.    Describes the terms and effect of the Settlement;

iii.    Notifies the Settlement Class that Class Counsel will seek disbursements from the Qualified Settlement Fund for Attorneys' Fees and Costs, Administrative Expenses, and Class Representatives' Compensation;

iv.    Gives notice to the Settlement Class of the time and place of the Fairness Hearing, and Class Members' right to appear; and

v.    Describes how the recipients of the Class Notice may object to the Settlement, or any requested Attorneys' Fees and Costs, Administrative Expenses, or Class Representatives' Compensation.

B.    The Settlement Administrator shall send by first class mail the appropriate Settlement Notice to each Class Member based on data provided by the Plan's recordkeeper.

C.    On or before the date that notice is sent to the Settlement Class, the Settlement Administrator shall establish a Settlement Website and telephone support line as provided by the Settlement Agreement.

D.    Pursuant to Rules 23(c)(2) and (e) of the Federal Rules of Civil Procedure, the contents of the Settlement Notice and plan for distribution of the Settlement Notice constitutes appropriate notice, provides due and sufficient notice of the Fairness Hearing and of the rights of all Class Members, and complies fully with the requirements of Federal Rule of Civil Procedure 23 and due process.

5.    **Preliminary Injunction:** Each Class Member and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns, are preliminarily enjoined from suing Defendants, the Plan, and the Released Settling Parties in any action or proceeding alleging any of the Released Claims.  Pending final determination of whether the Settlement Agreement should be approved, no Class Member may directly, through representatives, or in any other capacity, commence any

4

action or proceeding in any court or tribunal asserting any of the Released Claims against the Defendants, the Released Settling Parties, or the Plan.

6.      **Settlement Administrator:** The Court approves and orders that A.B. Data Ltd. shall be the Settlement Administrator who is responsible for carrying out the responsibilities of the Settlement Administrator that are set forth in the Settlement Agreement. The status and powers of the Settlement Administrator are as defined by this Order and as approved in the Settlement Agreement. The Settlement Administrator may make disbursements out of the Settlement Fund only in accordance with this Order or any additional Orders issued by the Court.

The Settlement Administrator shall have all the necessary powers, and take all necessary ministerial steps, to effectuate the terms of the Settlement Agreement, including the payment of all distributions. Such powers include receiving and processing information from participants pertaining to their claims and investing, allocating and distributing the Settlement Fund, and in general supervising the administration of the Settlement Agreement in accordance with its terms and this Order.

The Settlement Administrator shall keep detailed and accurate accounts of all investments, receipts, disbursements and other transactions of the Settlement Fund. All accounts, books and records relating to the Settlement Fund shall be open for reasonable inspection by such persons or entities as the Court orders. Included in the Settlement Administrator's records shall be complete information regarding actions taken with respect to the award of any payments to any person; the nature and status of any payment from the Settlement Fund and other information which the Settlement Administrator considers relevant to showing

5

that the Settlement Fund is being administered, and awards are being made, in accordance with the purposes of the Settlement Agreement, this Order, and any future orders that the Court may find it necessary to issue.

The Court and the Settlement Administrator recognize that there will be tax payments, withholding and reporting requirements in connection with the administration of the Settlement Fund. The Settlement Administrator shall, pursuant to the Settlement Agreement, determine, withhold, and pay over to the appropriate taxing authorities any taxes due with respect to any distribution from the Settlement Fund and shall make and file with the appropriate taxing authorities any reports or returns due with respect to any distributions from the Settlement Fund. The Settlement Administrator also shall determine and pay any income taxes owing with respect to the income earned by the Settlement Fund. Additionally, the Settlement Administrator shall file returns and reports with the appropriate taxing authorities with respect to the payment and withholding of taxes. Reserves may be established for taxes on the Settlement Fund income or on distributions.

The Settlement Administrator may establish protective conditions concerning the disclosure of information maintained by the Settlement Administrator if publication of such information would violate any law, including rights to privacy. Any person entitled to such information and who is denied access to the Settlement Fund's records may submit a request to the Court for such information. However, the Settlement Administrator shall supply such information to any claimant as may be reasonably necessary to allow him or her to accurately

determine his or her federal, state and local tax liabilities. Such information shall be supplied in the form and manner prescribed by relevant law.

This Order will bind any successor Settlement Administrator.

7. **Motions for Final Approval of the Settlement and for Attorneys' Fees and Other Costs:** Plaintiffs shall file Motions for Final Approval of the Settlement, and for an Award of for Attorneys' Fees and Costs, Administrative Expenses, and Class Representatives' Compensation no later than forty-five (45) calendar days before the scheduled Fairness Hearing.

8. **Objections to Settlement:** Any objections to the fairness, reasonableness or adequacy of the Settlement, to any term of the Settlement Agreement, or to the proposed for Attorneys' Fees and Costs, Administrative Expenses, and Class Representatives' Compensation shall be considered by the Court at the Fairness Hearing, if they have been timely filed with the Clerk of the Court and sent to Class Counsel and Defendants' Counsel. To be timely, the objection and any supporting documents must be sent to Class Counsel and Defendants' Counsel and filed with the Clerk of Court at least thirty (30) calendar days prior to the scheduled Fairness Hearing. Any member of the Settlement Class or other Person who does not timely file and serve a written objection complying with the terms of this Order shall be deemed to have waived, and shall be foreclosed from raising, any objection to the Settlement, and any untimely objection shall be barred.

9. **Responses to Objections and Final Approval Motion:** Any party may file a response to an objection by a Class Member at least fourteen (14) calendar days before the Fairness Hearing.

10.     **Continuance of Fairness Hearing**: The Court may adjourn, modify, or continue the Fairness Hearing without further direct notice to the Class Members, other than by notice to Class Counsel.  In such event, notice of the same shall be provided through the Settlement Website.

11.     **Confidentiality:** All information provided to the Settlement Administrator in connection with the administration of the settlement constitutes Confidential Information protected from public disclosure by the Confidentiality Order.

12.     **Termination of Settlement:** This Order shall become null and void, and shall be without prejudice to the rights of the Settling Parties, all of whom shall be restored to their respective positions existing the day before the Settlement Agreement Execution Date, if the Settlement is terminated in accordance with the Settlement Agreement.

13.     **Use of Order**: This Order shall not be construed or used as an admission, concession, or declaration by or against the Defendants of any fault, wrongdoing, breach, or liability or a waiver of any claims or defenses, including but not limited to those as to the propriety of any amended pleadings or the propriety and scope of class certification.  This Order shall not be construed or used as an admission, concession, or declaration by or against any named plaintiff, Class Representatives, or the Settlement Class that their claims lack merit, or that the relief requested in the lawsuit is inappropriate, improper or unavailable.  This Order shall not be construed or used as a waiver by any party of any arguments, defenses, or claims he, she, or it may have.

IT IS ORDERED on this ___ day of _____, 2022.

8

_____
HON. JEFFREY U. BEAVERSTOCK
UNITED STATES DISTRICT JUDGE

Rampey v. West Corp. 401k Settlement Agreement

Exhibit 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| Courtless Rampey and Bridget Cunningham, individually and as representatives of a Class of Participants and Beneficiaries on Behalf of the West Corporation 401(k) Retirement Plan, | Case No. 1:19-cv-00220-JB-B |
|        Plaintiffs, | |
|    v. | |
| West Corporation and Retirement Committee of West Corporation 401(k) Retirement Plan, | |
|      Defendants. | |

<u>**NOTICE OF CLASS ACTION SETTLEMENT AND FAIRNESS HEARING**</u>

# If you have participated in the West Corporation Employee 401(k) Retirement Plan, or have been a beneficiary of the Plan, a proposed class action settlement of a lawsuit may affect your rights.

*A court authorized this notice. It is not junk mail, an advertisement, or a solicitation from a lawyer.*

**Your legal rights may be affected if you are a member of the following class:**

All persons who participated in the West Corporation's 401(k) Retirement Plan ("Plan") at any time between May 7, 2013 through [Date of Preliminary Order] ("Class Period"), including any beneficiary of a deceased person who participated in the Plan at any time during the Class Period, and/or Alternate Payee, in the case of a person subject to a Qualified Domestic Relations Order who participated in the Plan at any time during the Class Period, except for past and present members of the Plan Committee.

**PLEASE READ THIS SETTLEMENT NOTICE CAREFULLY**

- The Court has given its preliminary approval to a proposed settlement (the "Settlement") of a class action lawsuit brought by certain Plan participants, alleging that West Corporation and the Retirement Committee of West Corporation Employee 401(k) Retirement Plan ("Defendants") violated the Employee Retirement Income Security Act of 1974 ("ERISA") based on Defendants' management, operation, and administration of the Plan. Defendants deny any and all claims and allegations of wrongdoing, and nothing in the Settlement is an admission or concession on Defendants' part of any fault or liability whatsoever.

- The Settlement will provide, among other things, for an $875,000 gross Qualified Settlement Fund that will be allocated to eligible Class Members after payment of any Court-approved deductions for Attorneys' Fees and Costs, Administrative Expenses, and Class Representative Compensation. Class Members with one or more accounts with a positive balance in the Plan at the time the settlement monies are to be distributed to Class Members (referred to herein as "Current Participants") will automatically receive allocations directly to their 401(k) accounts so long as they maintain a positive balance through the time Settlement monies are distributed. As explained further under Question 4 below, Class Members who do not have an account with a positive balance in the Plan at the time the settlement monies are to be distributed to Class Members (referred to herein as "Former Participants") will receive payments (by check) if the Settlement Administrator determines that they are due $10 (ten dollars) or more. You may be subject to state and/or federal taxes on your settlement payments, including income taxes and payroll taxes, as well as other regular deductions. You are responsible for all taxes that may be due on your settlement payments and you should consult with your own accountants or other tax professionals to determine what, if any, taxes may be owed.

- The terms and conditions of the Settlement are set forth in the Settlement Agreement dated [DATE]. Capitalized terms used but not defined in this Settlement Notice have the meanings assigned to them in the Settlement Agreement. The Settlement Agreement is available at www.RampeyLitigation.com. Certain other documents related to the case also will be posted on that website. You should visit that website if you would like more information about the Settlement or the lawsuit, including important case documents. All papers filed in this lawsuit are also available via the Public Access to Court Electronic Records System (PACER), at http://www.pacer.gov, and may also be reviewed in person, as allowed by the Court, during regular business hours at the Office of the Clerk of the United States District Court for the Southern District of Alabama, 155 Saint Joseph Street, Mobile, Alabama, 36602.

- Your rights and the choices available to you — and the applicable deadlines to act — are explained in this Settlement Notice. Please note that neither Defendants nor any employees or representatives of Defendants may advise you as to what the best choice is for you or how you should proceed.

- The Court still has to decide whether to give its final approval to the Settlement. Payments under the Settlement will be made only if the Court approves the Settlement and that final approval is upheld in the event of any appeal.

- A Fairness Hearing will take place on [DATE], at [TIME] before the Honorable Jeffrey U. Beaverstock at the United States District Courthouse, 155 Saint Joseph Street, Mobile, Alabama, 36602 in Courtroom 4A, to determine whether to grant final approval of the Settlement and approve the requested Attorneys' Fees and Costs, Administrative Expenses, and Class Representative's Compensation. The date and time of the Fairness Hearing are subject to change by Court Order, but any changes will be posted at www.RampeyLitigation.com. If you intend to speak at the Fairness Hearing, you must mail a notice of intent to appear to Class Counsel, Defendants' Counsel, and the Clerk of Court, 155 Saint Joseph Street, Mobile, Alabama, 36602, at least **30 days** before the Fairness Hearing.

- Any objections to the Settlement, or to the requested Attorneys' Fees and Costs, Administrative Expenses, or Class Representative's Compensation, along with any supporting documents, must be mailed to Class Counsel and Defendants' Counsel, as identified under Question 11 of this Settlement Notice. Objections must also be sent to the Clerk of Court at the following address: 155 Saint Joseph Street, Mobile, Alabama, 36602. Any objection must be received at least **30 days** before the Fairness Hearing.

| YOUR LEGAL RIGHTS AND OPTIONS UNDER THE SETTLEMENT | |
|---|---|
| **YOU CAN OBJECT [30 Days before Fairness Hearing]** | If you wish to object to any part of the Settlement, or to the request Attorneys' Fees and Costs, Administrative Expenses, or Class Representatives' Compensation, you must mail and objection with any supporting documents to Class Counsel and Defendants' Counsel (as identified under Question 11 below, as well as to the Clerk of the Court. |
| **YOU CAN ATTEND A HEARING ON [DATE]** | You may also attend the Fairness Hearing and speak at the Fairness Hearing on [DATE]. You may attend the hearing without filing a notice of your intention to appear, but you will not be permitted to make an objection if you do not comply with the requirements for making objections. If you intend to speak at the Fairness Hearing, you must mail a notice of intent to appear to Class Counsel, Defendants' Counsel, and the Clerk of Court, at least **30 days** before the Fairness Hearing. |

- Your rights and options under the Settlement – **and the deadlines to exercise them** – are explained below.

- The Court presiding over this case still has to decide whether to approve the Settlement. If it does, and after any appeals are resolved, payments will be distributed to those who qualify.

## The Class Action

The case is called *Rampey v. West Corporation*, Case No. 1:19-cv-00220-JB-B (S.D. Ala.) (the "Class Action" or "lawsuit"). It has been pending since May 6, 2019. The Court supervising the case is the United States District Court for the Southern District of Alabama. The Plaintiffs (the individuals who brought this lawsuit) are called the Class Representatives, and the entities they have sued are called Defendants. The Class Representatives, Courtless Rampey and Bridget Cunningham, are former Plan participants. The Defendants are West Corporation and Retirement Committee of West Corporation Employee 401(k) Retirement Plan. The Class Representatives' claims are described below, and additional information about those claims is available at www.RampeyLitigation.com.

**Statement of Attorneys' Fees and Costs, Administrative Expenses, and
Class  Representatives' Compensation Sought in the Class Action**

Class Counsel has devoted many hours to investigating the facts, prosecuting the lawsuit, reviewing documents obtained from Defendants and third parties, and negotiating the Settlement. They also have advanced all costs necessary to pursue the case, and have not been paid for any of their time while this case has been pending.

Class Counsel will apply to the Court for payment of Attorneys' Fees for their work in the case. The amount of fees that Class Counsel will request will not exceed 33% of the Qualified Settlement Fund ($290,000.00 (two hundred ninety thousand dollars)). In addition, Class Counsel will also seek to recover their costs and the administrative expenses associated with the settlement, up to $50,000 (fifty thousand dollars). Any Attorneys' Fees and Costs and Administrative Expenses awarded by the Court will be paid from the Qualified Settlement Fund.

Class Counsel also will ask the Court to approve payments, not to exceed $5,000 (five thousand dollars), for the Class Representatives who took on the risk of litigation and committed to spend the time necessary to bring the case to conclusion. Any Class Representatives Compensation awarded by the Court also will be paid from the Qualified Settlement Fund.

A full and formal application for Attorneys' Fees and Costs, Administrative Expenses, and Class Representatives' Compensation will be filed with the Court on or before [DATE]. This application will be made available at www.RampeyLitigation.com. You may also obtain a copy of this application through the Public Access to Court Electronic Records System (PACER) at http://www.pacer.gov.

**1.      Why Did I Receive This Settlement Notice?**

The Court caused this Settlement Notice to be sent to you because our records indicate that you may be a Class Member. If you fall within the definition of the Class, you have a right to know about the Settlement and about the options available to you before the Court decides whether to give its final approval to the Settlement. If the Court approves the Settlement, and after any objections and appeals are resolved, the Net Settlement Amount will be allocated among Class Members according to a Court-approved Plan of Allocation.

**2.    What Is The Class Action About?**

In the Class Action, the Class Representatives claims that Defendants breached their fiduciary duties to the Plan and Plan participants by failing to properly manage and administer the Plan, including by monitoring and controlling the expenses paid by the Plan. The Class Representatives further claim that Plan participants suffered losses as a result of these alleged breaches of fiduciary duty.

Defendants deny all allegations of wrongdoing and deny all liability for the allegations and claims made in the Lawsuit. Defendants contend that the Plan has been managed, operated and administered at all relevant times in compliance with applicable law and that they have always acted prudently and in the best interests of participants and beneficiaries.

### 3.    Why Is There a Settlement?

The Court has not reached a final decision as to the Class Representatives' claims. Instead, the Class Representatives and Defendants have agreed to the Settlement. The Settlement is the product of extensive negotiations between the Class Representatives, Defendants, and their counsel. The parties to the Settlement have taken into account the uncertainty and risks of litigation and have concluded that it is desirable to settle on the terms and conditions set forth in the Settlement Agreement. The Class Representatives and Class Counsel believe that the Settlement is best for all Class Members. Nothing in the Settlement Agreement is an admission or concession on Defendants' part of any fault or liability whatsoever. The Settlement has been entered into to avoid the uncertainty, expense, and burden of additional litigation.

### 4.    What Does The Settlement Provide?

Under the Settlement, Defendants will pay a total of $875,000 (eight hundred and seventy-five thousand dollars) into a Qualified Settlement Fund to resolve the claims of the Class. The Net Settlement Amount (after deduction of any Court approved Attorneys' Fees and Costs, Administrative Expenses, and Class Representatives' Compensation) will be allocated to Class Members according to a Plan of Allocation to be approved by the Court (as explained further under Question 5 below). Allocations to Current Participants who are entitled to a distribution under the Plan of Allocation will be made into their existing accounts in the Plans. Former Participants who are entitled to a distribution of $10 (ten dollars) or more will receive their payment as a check. If the Settlement Administrator determines that a Former Participant (other than the Class Representatives) is not entitled to a distribution of at least $10 (ten dollars), that Former Participant shall receive no payment. Any funds that are not distributed because of this minimum threshold will be reallocated to other Class Members under the Plan of Allocation.

All Class Members, and their Beneficiaries/Alternate Payees, will fully release the Released Parties from Released Claims. The Released Parties include, but are not limited to,
(1) Defendants; (2) Defendants' parent companies, subsidiaries, and affiliates; (3) persons who served on the Committee; (4) shareholders, directors, officers, employees, attorneys, partners, predecessors, successors, and any person or agent acting on their behalf; (5) the Plan, and any and all administrators, fiduciaries, parties in interest, service providers, and trustees of the Plan; and (6) their insurers and reinsurers. Generally, the release means that Class Members will not have the right to sue the Released Parties for conduct during the Class Period arising out of or relating to the allegations in the lawsuit or the Plan. The entire release language is set forth in the Settlement Agreement, which is available at www.RampeyLitigation.com.

### 5.    How Much Will My Distribution Be?

The amount, if any, that will be allocated to you will be based upon records maintained by the Plan's recordkeeper. Calculations regarding the individual distributions will be performed by the Settlement Administrator, whose determinations will be final and binding, pursuant to the Court approved Plan of Allocation.

To receive a distribution from the Net Settlement Amount, you must either be a (1) "Current Participant," (2) a "Former Participant," or (3) a Beneficiary or Alternate Payee of a person identified in (1) or (2).

The Net Settlement Amount will be divided pro rata among Class Members based on each eligible Class Member's quarterly Balance invested in the Plan beginning with June 30, 2013 and ending with [insert last day of calendar quarter before entry of Preliminary Order]. For purposes of making this determination, the Balance shall be calculated based on the quarter-ending account balance for each Former Participant and Current Participant for each quarter during the Class Period.

If you are an Alternate Payee pursuant to a Qualified Domestic Relations Order, your portion of the Settlement will be distributed pursuant to the terms of that order.

The Net Settlement Amount will also depend on the amount of any Attorneys' Fees and Costs, Administrative Expenses, and Class Representatives' Compensation that are awarded by the Court, as these will be paid out of the Gross Settlement Amount of $875,000 (eight hundred and seventy-five thousand dollars). Class Counsel will file a motion for an award of Attorneys' Fees and Costs, Administrative Expenses, and Class Representatives' Compensation at least 30 days prior to the objection deadline. This motion will be considered at the Fairness Hearing. Class Counsel will limit their application for Attorneys' Fees to not more than thirty-three percent (33%) of the Gross Settlement Amount. Class Counsel also will seek to recover all actual and anticipated litigation costs and administrative expenses associated with the Settlement, up to $50,000 (fifty thousand dollars). In addition, Class Counsel will seek compensation for the Class Representatives of no more than $5,000 (five thousand dollars). The Court will determine the amount of Attorneys' Fees and Costs, Administrative Expenses, and Class Representatives' Compensation that will be awarded, if any. All papers filed in this action, including Class Counsel's motion for Attorneys' Fees and Costs, Administrative Expenses, and Class Representatives' Compensation, will be available for review via the Public Access to Court Electronic Records System (PACER), available online at http://www.pacer.gov.

## 6.    How Can I Receive My Distribution?

**Payments will be distributed automatically to your 401(k) account if you are a Current Participant, and by check if you are a Former Participant entitled to $10 (ten dollars) or more. You do not need to take any action to receive an automatic distribution or check payment.**

## 7.    When Will I Receive My Distribution?

The timing of the distribution of the Net Settlement Amount depends on several matters, including the Court's final approval of the Settlement and any approval becoming final and no longer subject to any appeals in any court. An appeal of the final approval order may take several years. If the Settlement is approved by the Court, and there are no appeals, the Settlement distribution likely will occur within three months of the Court's Final Approval Order.

**There will be no payments under the Settlement if the Settlement Agreement is terminated.**

## 8.    Can I Get Out of the Settlement?

No. The Class has been certified for settlement purposes under Federal Rule of Civil Procedure 23(b)(1). Therefore, as a Class Member, you are bound by the Settlement (if it receives final Court approval) and any judgments or orders that are entered in the Class Action. If you wish to object to any part of the Settlement, you may write to counsel about why you object to the Settlement, as discussed below.

## 9.    Do I Have a Lawyer in the Case?

The Court has appointed the following law firms as Class Counsel in the Class Action:

Mark J. Tamblyn
WEXLER BOLEY & ELGERSMA LLP
333 University Avenue, Suite 200
Sacramento, California 95825
Telephone: (916) 565-7692
mjt@wbe-llp.com

Arthur Stock
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
800 South Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
astock@milberg.com

Charles Crueger
CRUEGER DICKINSON LLC
4532 North Oakland Avenue
Whitefish Bay, Wisconsin 53211
Telephone: (414) 210-3868
cjc@cruegerdickinson.com

Jordan Lewis
JORDAN LEWIS, P.A.
4473 N.E. 11th Avenue
Fort Lauderdale, Florida 33334
Telephone: (954) 616-8995
jordan@jml-lawfirm.com

Charles J. Potts
BRISKMAN & BINION, P.C.
P.O. Box 43
Mobile, Alabama 36601
Telephone: (251) 433-7600
cpotts@briskman-binion.com

If you want to be represented by your own lawyer, you may hire one at your own expense.

## 10.   How Will The Lawyers Be Paid?

Class Counsel will file a motion for an award of Attorneys' Fees and Costs, Administrative Expenses, and Class Representative's Compensation at least 30 days prior to the objection deadline. This motion will be made available at_www.RampeyLitigation.com and be considered at the Fairness Hearing. Class Counsel will limit their application for Attorneys' Fees to not more than one-third of the Gross Settlement Amount. Class Counsel also will seek to recover all actual and anticipated litigation costs and Administrative Expenses associated with the Settlement. In addition, Class Counsel will seek compensation for the Class Representative of no more than $5,000 (five

thousand dollars). The Court will determine the amount of fees, costs, administrative expenses, and Class Representative's compensation that will be awarded, if any. All papers filed in this action, including Class Counsel's motion for Attorneys' Fees and Costs, Administrative Expenses, and Class Representative's Compensation, will be available via the Public Access to Court Electronic Records System (PACER), available online at http://www.pacer.gov.

## 11.  How Do I Tell The Court If I Don't Like The Settlement?

If you are a Class Member, you can object to the Settlement by mailing a written objection and any supporting documents to Class Counsel and to Defendants' Counsel at the addresses below. Class Counsel will respond to your objection in their motion for final approval of the Settlement. You must also mail a copy of all objection documents to the Clerk of Court, at the following address: 155 Saint Joseph Street, Mobile, Alabama, 36602.

Your written objection must be mailed no later than [DATE] to be considered.

| CLASS COUNSEL | DEFENDANTS' COUNSEL |
|---|---|
| Mark J. Tamblyn<br>WEXLER BOLEY & ELGERSMA LLP<br>333 University Avenue, Suite 200<br>Sacramento, California 95825<br>Telephone: (916) 565-7692<br>mjt@wbe-llp.com | Michael J. Prame<br>Samuel I. Levin<br>GROOM LAW GROUP, CHARTERED<br>1701 Pennsylvania Ave., N.W.<br>Washington, D.C., 20006<br>Telephone: (202) 857-0620<br>mprame@groom.com<br>slevin@groom.com |

## 12. When And Where Will The Court Decide Whether To Approve The Settlement?

The Court will hold a Fairness Hearing at [TIME] on [DATE] at the United States Courthouse, 155 Saint Joseph Street, Mobile, Alabama, 36602, in Courtroom 4A. At the Fairness Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court also will consider the motion for Attorneys' Fees and Costs, Administrative Expenses, and Class Representatives' Compensation. If there are objections, the Court will consider them then. The date and time of the Fairness Hearing are subject to change by Court Order, but any changes will be posted at www.RampeyLitigation.com.

## 13.  Do I Have To Attend The Fairness Hearing?

No, but you are welcome to come at your own expense. You may also make an appearance through an attorney. If you send an objection, you do not have to come to the Court to talk about it. As long as you filed your written objection on time, the Court will consider it.

**14.  May I Speak At The Fairness Hearing?**

Yes. Any person wishing to speak at the Fairness Hearing shall file and serve a notice of intent to appear within the time limitation set forth above for objecting. You must also comply with the requirements for making an objection (set forth above) if you wish to object.

**15. What Happens If I Do Nothing At All?**

If you do nothing at all, and all conditions of the Settlement are met, you will receive your share of the Settlement as deposit into your account if you are a Current Participant, or as a check if you are a Former Participant entitled to $10 (ten dollars) or more. You will be bound by the Settlement of the Class Action as described above in this Settlement Notice if the Settlement is finally approved, whether or not you not receive any money.

**16.  How Do I Get More Information?**

If you have questions regarding the Settlement, you can visit www.RampeyLitigation.com, call [phone number], or write to the Settlement Administrator at [mailing address]. All papers filed in this lawsuit are also available via the Public Access to Court Electronic Records System (PACER), at http://www.pacer.gov, and may be reviewed in person, as allowed by the Court, during regular business hours at the Office of the Clerk of the United States District Court for the Southern District of Alabama, 155 Saint Joseph Street, Mobile, Alabama, 36602.

Rampey v. West Corp. 401k Settlement Agreement

Exhibit 3

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| Courtless Rampey and Bridget Cunningham, individually and as representatives of a Class of Participants and Beneficiaries on Behalf of the West Corporation 401(k) Retirement Plan;<br><br>   Plaintiffs,<br><br> v.<br><br>West Corporation and Retirement Committee of West Corporation 401(k) Retirement Plan.<br><br>   Defendants. | Case No. 1:19-CV-00220-JB-B |

## [PROPOSED] ORDER GRANTING FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT

Wherefore, this___ day of____, 2022 upon consideration of Plaintiffs' Motion for Final Approval of the Class Action Settlement Agreement dated _____ (herein the "Settlement Agreement" or "Settlement") in the above matter, the Court hereby orders:

1. For purposes of this Final Approval Order and Judgment, except as otherwise defined herein, all capitalized terms used herein shall have the same meaning as ascribed to them in the Settlement Agreement.

2. The Court has subject matter jurisdiction over the action and retains jurisdiction for purposes of enforcing and interpreting the Settlement Agreement.

3. The following Settlement Class is certified under Rule 23(b)(1) of the Federal Rules of Civil Procedure for purposes of the Settlement:

> All persons who participated in the West Corporation Employee 401(k) Retirement Plan at any time between May 7, 2013 through [Date of Preliminary Order] ("Class Period"). including any Beneficiary of a deceased person who participated in the Plan at any time during the Class Period, and/or Alternate Payee, in the case of a person subject to a Qualified Domestic Relations Order who participated in the Plan at any time during the Class Period, except for past and present members of the Retirement Plan Committee of the West Corporation Employee 401(k) Retirement Plan.

The Court finds that this Settlement Class meets all of the requirements of Rule 23(a) and 23(b)(1).

4.      Pursuant to Rules 23(e)(1)(A) and (C), the Court hereby approves and confirms the Settlement and the terms thereof as being fair, reasonable, and adequate to the Plan and the Class Members.

5.      The Court hereby approves the Settlement and orders that the Settling Parties take all necessary steps to effectuate the terms of the Settlement Agreement.

6.      In accordance with the Court's Orders, and as reflected in the information from the Settlement Administrator, Settlement Notices were timely distributed by first-class mail to all Class Members who could be identified with reasonable effort.  The Settlement Administrator searched for updated address information for those returned as undeliverable, and re-sent notices to those Class Members.  In addition, pursuant to the Class Action Fairness Act, 29 U.S.C. § 1711, *et seq.*, notice was provided to the Attorneys General for each of the states in which a Class Member resides and the Attorney General of the United States.

7.      The form and methods of notifying the Class Members of the terms and conditions of the proposed Settlement Agreement met the requirements of Rules 23(c)(2) and (e), and due

2

process, and constituted appropriate notice under the circumstances. Due and sufficient notice of the Fairness Hearing and the rights of all Class Members have been provided to all people, powers and entities entitled thereto, consistent with Rule 23 and due process.

8.      The Court finds that the Settlement is fair, reasonable, and adequate, based on the following findings of fact, conclusions of law, and determinations of mixed fact/law questions:

A.      The Settlement was negotiated at arm's length only after Class Counsel had received pertinent information and documents from Defendants;

B.      The Settling Parties were well positioned to evaluate the value of the Class Action;

C.      If the Settlement had not been achieved, both Plaintiffs and Defendants faced the expense, risk, and uncertainty of extended litigation;

D.      The amount of the Settlement ($875,000 (eight-hundred seventy-five thousand dollars)) is fair, reasonable, and adequate. The Settlement amount is within the range of reasonable settlements that would have been appropriate in this case, based on the nature of the claims, the potential recovery, the risks of litigation, and settlements that have been approved in other similar cases;

E.      The Class Representatives have actively and independently participated in the Class Action;

F.      The Class Representatives and Class Counsel have concluded that the Settlement Agreement is fair, reasonable and adequate and in the best interests of the Settlement Class;

G.      Class Members had the opportunity to be heard on all issues regarding the Settlement and release of claims by submitting objections to the Settlement Agreement to the Court; and

H.      There were____ objections to the Settlement.____ of those objections were timely. The Court has considered all of them and has overruled them with prejudice.

I.      The Settlement was reviewed by an independent fiduciary, Fiduciary Counselors, Inc., which has approved the Settlement. The Motion for Final Approval of the Settlement Agreement is hereby GRANTED, the Settlement of the Class Action is APPROVED as fair, reasonable and adequate to the Plan and the Settlement Class.

9.      The Lawsuit and all Released Claims asserted therein, whether asserted by the Class Representatives on their own behalf or on behalf of the Class Members, or derivatively on behalf of the Plan, are dismissed with prejudice, without costs to any of the Settling Parties other than as provided for in the Settlement Agreement.

10.      The Class Representatives and each Class Member Members (and their respective heirs, beneficiaries, executors, administrators, estates, successors, assigns, agents, and attorneys) shall be (1) conclusively deemed to have, and by operation of this Order shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged the Released Settling Parties from all Released Claims, and (2) barred and enjoined from suing the Released Settling Parties in any action or proceeding alleging any of the Released Claims, even if any Class Member may thereafter discover facts in addition to or different from those which the Class Member or Class

4

Counsel now know or believe to be true with respect to the Lawsuit and the Released Claims, whether or not such Class Members have filed an objection to the Settlement.

11.    The Plan shall be (1) conclusively deemed to have, and by operation of this Order shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged the Released Settling Parties from all Released Claims, and (2) barred and enjoined from suing the Released Settling Parties in any action or proceeding alleging any of the Released Claims, even if the Plan or any Class Member on behalf of the Plan may thereafter discover facts in addition to or different from those which the Plan or any Class Member now knows or believes to be true with respect to the Lawsuit and the Released Claims.

12.    The Class Representatives and each Class Member shall be deemed to have released the Released Settling Parties, the Plan, Class Counsel and Defendants' Counsel from any claims, liabilities, and attorneys' fees and expenses arising from the allocation of the Gross Settlement Amount or Net Settlement Amount and for all tax liability and associated penalties and interest as well as related attorneys' fees and expenses.

13.    The Court finds that all applicable Class Action Fairness Act requirements have been satisfied.

14.    The Settlement Administrator shall have final authority to determine the share of the Net Settlement Amount to be allocated to each Current Participant and each authorized Former Participant pursuant to the Plan of Allocation approved by the Court.

l5.      Upon the Settlement Effective Date under the Settlement Agreement, all Settling Parties, the Settlement Class, and the Plan shall be bound by the Settlement Agreement and by this Final Approval Order.

16.      Within twenty-one (21) calendar days following the issuance of all settlement payments to Class Members as provided by the Plan of Allocation approved by the Court, the Settlement Administrator shall prepare and provide to Class Counsel and Defense Counsel a list of each person who received a settlement payment or contribution from the Qualified Settlement Fund and the amount of such payment or contribution. Unclaimed funds remaining after the completion of Settlement Administration, if any, shall be transferred to the Plan's trust and thereafter used by the Plan to pay Plan administrative expenses.

IT IS ORDERED on this ___ day of _____, 2022.


                                          _____
                                          HON. JEFFREY U. BEAVERSTOCK
                                          UNITED STATES DISTRICT JUDGE

Rampey v. West Corp. 401k Settlement Agreement

Exhibit 4

# GROOM LAW GROUP

Michael J. Prame
(202) 861-6633
mprame@groom.com

May __, 2022

## VIA UNITED STATES MAIL

To:    Federal and State Officials Under 28 U.S.C. § 1715
       (See Distribution List Attached)

Re:    CAFA Notification of the Proposed Settlement in *Rampey v. West Corp., et al.*,
       Case No. 1:19-cv-00220 (S.D. Ala. filed May 6, 2019)

This notification is being sent to you on behalf of the defendant in the above-captioned matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b), to inform you of a proposed class action settlement.

**Court:** United States District Court for the Southern District of Alabama

**Case Caption:** *Rampey v. West Corp., et al.*, Case No. 1:19-cv-00220 (S.D. Ala. filed May 6, 2019)

**Defendants:** West Corporation and Retirement Committee of West Corporation Employee 401(k) Retirement Plan (collectively, "Defendants")

**Documents Enclosed:**

The following documents include those required by 28 U.S.C. § 1715(b)(1), (2), (3), (4), and (8), and are copied on the enclosed CD in PDF format:

- Complaint, filed on May 6, 2019 (Dkt. No. 1);

- Amended Complaint, filed on August 16, 2019 (Dkt. No. 36);

- Class Action Settlement Agreement, filed on XX (Dkt. No. xx);

- Exhibit 1 to Class Action Settlement Agreement: Proposed Class Action Notice, filed on xx (Dkt. No. xx);

- Exhibit 2 to Settlement Agreement: Proposed Final Judgment and Order of Dismissal with Prejudice, filed on xx (Dkt. No. xx).

- Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Proposed Notice of Settlement, filed on xx (Dkt. No. xx);

GROOM LAW GROUP

May __, 2022
Page 2

**Additional Information:**

As required by 28 U.S.C. § 1715(b)(2), we inform you that the Court has scheduled a Fairness Hearing for xx, at xx am.

As required by 28 U.S.C. § 1715(b)(3)(ii), we inform you that Settlement Class members do not have a right to request exclusion from the class action pursuant to the terms of the Settlement Agreement.

As required by 28 U.S.C. § 1715(b)(5), we inform you that Class Counsel and Defendants' Counsel have made no settlement or other agreement contemporaneously with the Class Action Settlement Agreement.

As required by 28 U.S.C. § 1715(b)(6), we inform you that no final judgment or notice of dismissal has been entered.

As required by 28 U.S.C. § 1715(b)(7)(B), we inform you that, based on information currently available to Defendants, we estimate that the following number of Settlement Class members reside in each indicated state: XXX. It is not feasible at this time to estimate the proportionate share of the claims of such members to the entire settlement. However, please be advised that, upon final approval by the Court, the settlement proceeds will be distributed among the Settlement Class Members according to the methodology and formulas set forth in the Plan of Allocation (defined in Article 6 of the Class Action Settlement Agreement). In general, under the Plan of Allocation, the settlement proceeds will be allocated based on the Class Member's the account balance at the end of each quarter during the Class Period.

If you have questions about this notice, the litigation, or the enclosed materials, please contact:

Michael J. Prame
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue, NW, Ste. 1200
Washington, D.C. 20006
Telephone: (202) 857-0620
Email: mprame@groom.com
*Counsel for Defendants*

Sincerely,

Michael J. Prame

**GROOM** LAW GROUP

May __, 2022
Page 3

| DISTRIBUTION LIST | |
|---|---|
| Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001 | Office of the Attorney General<br>501 Washington Avenue<br>Montgomery, AL 36130-0152 |
| Attorney General's Office<br>323 Center Street, Suite 200<br>Little Rock, AR 72201-2610 | Office of the Attorney General<br>2005 N. Central Ave<br>Phoenix, AZ 85004-2926 |
| Office of the California Attorney General<br>1300 I Street, Suite 1740<br>Sacramento, CA 95814 | Office of the Attorney General<br>Ralph L. Carr Colorado Judicial Center<br>1300 Broadway, 10th Floor<br>Denver, CO 80203 |
| Office of the Attorney General<br>55 Elm Street<br>Hartford, CT 06106 | Office of the Attorney General<br>The Capitol PL-01<br>Tallahassee, FL 32399-1050 |
| Office of the Attorney General<br>40 Capital Square, SW<br>Atlanta, GA 30334-1300 | Office of the Attorney General<br>Hoover State Office Building<br>1305 E. Walnut Street<br>Des Moines IA 50319 |
| Illinois Attorney General<br>James R. Thompson Center<br>100 W. Randolph Street<br>Chicago, IL 60601 | Indiana Attorney General's Office<br>Indiana Government Center South – 5th Floor<br>302 West Washington Street<br>Indianapolis, IN 46204 |
| Office of the Attorney General<br>120 SW 10th Avenue, 2nd Floor<br>Topeka, KS 66612 | Office of the Attorney General<br>Capitol Building, Suite 118<br>700 Capitol Avenue<br>Frankfort, KY 40601 |

GROOM LAW GROUP

May __, 2022
Page 4

| | |
|---|---|
| Office of the Attorney General<br>1885 N. Third Street<br>Baton Rouge, LA 70804-4095 | Office of Massachusetts Attorney General<br>ATTN: CAFA Coordinator/<br>General Counsel's Office<br>One Ashburton Place<br>Boston, MA 02108 |
| Office of the Attorney General<br>200 St. Paul Place<br>Baltimore, MD 21202-2202 | Maine Attorney General's Office<br>State House Station 6<br>Augusta, ME 04333 |
| Michigan Department of Attorney General<br>G. Mennen Williams Building,<br>525 W. Ottawa Street<br>Lansing, MI 48909 | Office of Minnesota Attorney General<br>75 Rev Dr. Martin Luther King Jr Blvd, #102<br>St. Paul, MN 55155 |
| Missouri Attorney General's Office<br>Supreme Court Building<br>207 West High Street<br>Jefferson City, MO 65102 | Mississippi Attorney General's Office<br>Walter Sillers Building<br>550 High Street, Suite 1200<br>Jackson, MS 39201 |
| Attorney General's Office<br>Department of Justice<br>114 W Edenton Street<br>Raleigh, NC 27603 | Nebraska Attorney General's Office<br>2115 State Capitol<br>Lincoln, NE 68509 |
| New Hampshire Attorney General's Office<br>33 Capitol Street<br>Concord, NH 03301 | Office of the Attorney General<br>Richard J. Hughes Justice Complex<br>25 Market Street<br>Trenton, NJ 08625-0080 |
| Office of the New Mexico Attorney General<br>Villagra Building<br>408 Galisteo Street<br>Santa Fe, NM 87501 | Office of the Attorney General<br>Department of Law – The Capitol, 2nd Floor<br>Albany, NY 12224 |
| Ohio Attorney General<br>State Office Tower, 30 E. Broad Street<br>Columbus, OH 43266-0410 | Oklahoma Attorney General<br>313 NE 21st Street<br>Oklahoma City, OK 73105 |

GROOM LAW GROUP

Page 5

| | |
|---|---|
| Oregon Attorney General<br>Oregon Department of Justice<br>Justice Building, 1162 Court Street, NE<br>Salem, OR 97301 | Pennsylvania Office of the Attorney General<br>16th Floor, Strawberry Square<br>Harrisburg, PA 17120 |
| Office of the Attorney General<br>150 South Main Street<br>Providence, RI 02903 | South Carolina Attorney General<br>Rembert C. Dennis Office Building<br>1000 Assembly Street, Room 519<br>Columbia, SC 29211-1549 |
| South Dakota Attorney General's Office<br>1302 East Highway 14, Suite 1<br>Pierre, SD 57501-8501 | Office of the Attorney General and Reporter<br>425 5th Avenue North<br>Nashville, TN 37243 |
| Office of the Attorney General<br>300 W. 15th Street<br>Austin, TX 78701 | Utah Attorney General's Office<br>State Capitol, Rm. 236<br>Salt Lake City, UT 84114-0810 |
| Office of the Attorney General<br>202 North Ninth Street<br>Richmond, VA 23219 | Washington State Office<br>of the Attorney General<br>1125 Washington Street SE<br>Olympia, WA 98504-0100 |
| Office of the Attorney General<br>Wisconsin Department of Justice<br>State Capitol, Room 114 East<br>Madison, WI 53707-7857 | Office of the Attorney General<br>State Capitol, 1900 Kanawha Blvd.<br>E. Charleston, WV 25305 |
| Wyoming Attorney General's Office<br>Kendrick Building<br>2320 Capitol Avenue<br>Cheyenne, WY  82002 | Office of the Comptroller of the Currency<br>Director, Litigation Division<br>250 E Street, SW,<br>Washington, DC 20219 |
| James C. Mayhew<br>National Bank Examiner<br>Office of the Comptroller of the Currency<br>National Trust Banks Field Office<br>340 Madison Avenue, 9th Floor<br>New York, NY 10173-00002 | Nanna Goodfellow<br>National Bank Examiner<br>Office of the Comptroller of the Currency<br>National Trust Banks Field Office<br>340 Madison Avenue, 9th Floor<br>New York, NY 10173-00002 |

# EXHIBIT B



**Headquarters**
600 A.B. Data Drive
Milwaukee, WI 53217
P: 866-217-4470
F: 414-961-3099

**New York**
One Battery Park Plaza
32nd Floor
New York, NY 10004
P: 646-290-9137

**Washington DC**
915 15th St., NW, Ste. 300
Washington, DC 20005
P: 202-618-2900
F: 202-462-2085

**Florida**
5080 PGA Boulevard, Ste. 209
Palm Beach Gardens, FL 33418
P: 561-336-1801
F: 561-252-7720

**Israel**
19 Weissburg Street
Tel Aviv 69358
Israel
P: +972 (3) 720-8782

# CAPABILITIES

## About A.B. Data

Founded in 1981, **A.B. Data has earned a reputation** for expertly managing the complexities of class action administration in consumer, antitrust, securities, Securities and Exchange Commission (SEC) enforcement actions, and ERISA, Attorneys General, employment, civil rights, insurance, environmental, wage and hour, and other class action cases. **A.B. Data's work in all aspects of class action administration** has been perfected by decades of experience in hundreds of class action cases involving billions of dollars in total settlements. Dedicated professionals deliver **A.B. Data's all-inclusive services,** working in partnership with its clients to administer their class action cases effectively, efficiently, and affordably, regardless of size or scope.

**A.B. Data offers unmatched resources and capacity** and is capable of expertly administering any class action notice, settlement, and/or fund administration. Whether notifying millions of class members in the United States or throughout the world, processing millions of claims, distributing payments digitally via A.B. Data's Digital PayPortal℠, or printing and distributing millions of checks, **A.B. Data matches its talent and technology** to the specific needs of its clients, delivering unparalleled service on time and on budget without ever compromising quality.

## Location, Ownership Structure

**A.B. Data is an independently owned,** 39-year-old, Milwaukee, Wisconsin-based company that prides itself on its vast expertise and industry-leading innovations. We like to remind our clients and partners that we're not just a class action administration company, but a group of experienced, dedicated professionals who believe that relationships are just as important as the accurate and timely management of class action administrations. In other words, we are people who do business with people.

## Services

**Every A.B. Data client is deserving of the best job we can put forward.** A.B. Data makes class action administration easy for our clients with clarity, convenience, and efficiency. Our priority is to navigate the intricacies of our clients' matters and deliver successful results by using our solid expertise, advanced technology, and top-quality products and services. We pay attention to the details and get it right the first time.

We aim to provide our clients the full experience of a truly collaborative working relationship. It is why we believe much of our success originates from our philosophy of "people doing business with people."

**ab**
DATA

## Services

### All Digital — From Notice to Distribution

**A.B. Data is uniquely positioned to design, implement, and maintain notice and settlement administration programs** using an innovative, "all-digital" approach that replaces the more traditional and less efficient methods of administration, such as newspaper ads, mailed notices, and paper checks. Many of our recent proposed notice plans and claim programs utilize the latest technologies such as microtargeted digital ads for notice, streamlined online claims, and distributing settlement funds electronically using a digital paywall. These methods provide significant cost savings, are consistent with the amendments to Rule 23 that are now in effect, and importantly provide much-needed alignment of class action notice and administration with current consumer behaviors.

### Pre-Settlement Consultation

**The pre-settlement consultation is a collaborative session** designed to help A.B. Data clients prepare a stronger case. Our support teams simplify the task of sorting through a maze of documents during investigation and discovery, streamlining the process and preserving fund assets. From there, we assist with fully interactive media packages for court presentations and settlement negotiations. A.B. Data works closely with our clients, offering expert testimony on documents, processing, class and notice manageability, and proposed plans of allocation.

### Media Services

**A.B. Data continues to earn our reputation** as the early innovator in integrating advanced micro-targeting techniques, including contextual targeting, behavioral targeting, and predictive modeling. Coupled with inventive digital media strategies to drive claims, case-specific banner ad development, class member research, and comScore analysis services, our multi-tiered media programs are designed to cost-effectively deliver notice to potential class members and increase claims rates.

### Notice Administration

**In A.B. Data, clients have a comprehensive resource** with a depth of experience in direct notice. Our compliance and understanding of Rule 23 of the Federal Rules of Civil Procedure are crucial in meeting the "plain language" legal requirements for any campaign. From our sophisticated digital media capabilities and extensive global experience with class member research, our experts create notice documents that are easily understandable and cost-efficient to produce. We consult with our clients to deliver notice documents from multi-page, mailed, or emailed notice packets to concise postcards that establish the most influential and cost-effective means of communicating with potential claimants.

ab
DATA

## Claims Processing

**A.B. Data continues to bring game-changing technologies** to improve the speed and precision in claims processing. Our robust system for online claims submissions allows us to meticulously verify data and documentation, preserve and authenticate claims, and calculate and verify settlement amounts. In addition, our data network infrastructure includes on-site data storage, backup, contingency plans, and security for electronic and hard copy claim filings. It is all part of a total commitment to be the most innovative and comprehensive resource in the industry. At A.B. Data, we take pride in having the in-house capacity to process millions of pages, as well as the organizational integrity to treat every claim as if it were the only one.

## Contact Center

**A.B. Data's Contact Center is comprised of a full staff** that is trained on and equipped with online and telecommunication systems to monitor and connect with class members. Associates routinely monitor class member communication for all class action administrations, including antitrust, consumer, and securities.

Utilizing monitoring software, associates watch multiple social media channels simultaneously, allowing for instantaneous routing of inquiries and interaction with claimants. Detailed and concise analytical reports outlining Contact Center activities are always provided.

Our Contact Center and case websites are capable of handling millions of class member engagements, as recently displayed in a campaign which garnered over 1.2 million website visits in two months and had more than 72,500 Facebook engagements. Facebook comments and threads are monitored and claimants are guided to the website for more information. Google AdWords and display advertising have also brought hundreds of thousands of visitors to various case websites.

A.B. Data's Contact Center also has Spanish language associates in-house and we can accommodate any language, given proper lead time. Traditional call center facilities are also available, if needed.

## Case Websites

**We offer a state-of-the-art technology platform** that supports every step of our class action administration process. Our expert marketing professionals design customized case-specific websites that provide potential class members easy access to case information, critical documents, important deadlines, as well as the capability to file claim forms and register for future mailings about the case. Claimants can use the website to elect to receive their settlement payments by mail or by one of several digital payment options, all accessible by mobile devices.

## Settlement Fund Distribution

**From complete escrow services to establishment of qualified settlement funds,** check printing and mailing, electronic cash or stock distribution and tax services, A.B. Data has always provided a full-service solution to Settlement Fund Distribution. Our IT team has decades of experience in developing and implementing fast, secure databases and claims administration systems that ensure class members receive the correct amount in their settlement disbursement. Today's digital capabilities allow even greater convenience for class members. In certain instances, claimants can now elect to instantaneously receive settlement payments through popular digital-payment options, such as PayPal, Amazon, and virtual debit cards.



# A.B. Data's Leadership

 **A.B. Data's administration team** is composed of the following key executives, who collectively have decades of experience settling and administering class actions:

**Bruce A. Arbit, Co-Managing Director** and one of the founders of the A.B. Data Group, serves as Chairman of the Board and oversees the day-to-day operations of the A.B. Data Group of companies, employing almost 400 people in the United States and Israel. Mr. Arbit is also Chairman of the Board of Integrated Mail Industries, Ltd. and has served as a member of the Board of Directors of University National Bank and State Financial Bank. He is the past Chairman of Asset Development Group, Inc., Home Source One, and American Deposit Management and is a member of the National Direct Marketing Association, the Direct Marketing Fundraising Association, and the American Association of Political Consultants. He was named 1996 Direct Marketer of the Year by the Wisconsin Direct Marketing Association.

A.B. Data's work in class action litigation support began with the Court selecting A.B. Data to oversee the restitution effort in the now-famous Swiss Banks Class Action Case, the International Commission on Holocaust Era Insurance Claims, and every other Holocaust Era Asset Restitution program, in which it was the company's job to identify, contact, and inform survivors of the Holocaust. A.B. Data delivered by reaching out to millions of people in 109 countries who spoke more than 30 languages. Since those days, Mr. Arbit has guided the class action division through phenomenal growth and success. Today, A.B. Data manages hundreds of administrations annually that distributes billions of dollars to class members.

**Thomas R. Glenn, President**, Mr. Glenn's management of A.B. Data's Class Action Administration Company includes designing and implementing notice plans and settlement administration programs for antitrust, securities, and Securities and Exchange Commission settlements and SEC disgorgement fund distributions, as well as consumer, employment, insurance, and civil rights class actions. Mr. Glenn previously served as Executive Vice President at Rust Consulting and has more than 30 years of executive leadership experience.

**Eric Miller, Senior Vice President**, as a key member of A.B. Data's Class Action Administration Leadership Team, oversees the Case Management Department and supervises the operations and procedures of all of A.B. Data's class action administration cases. Mr. Miller is recognized in the class action administration industry as an expert on securities, SEC, consumer, product recall, product liability, general antitrust, pharmaceutical antitrust, and futures contract settlements, to name a few settlement types. Prior to joining A.B. Data, Mr. Miller served as the Client Service Director for Rust Consulting, responsible there for its securities practice area. He has more than 20 years of operations, project management, quality assurance, and training experience in the class action administration industry. In addition, Mr. Miller manages A.B. Data's office in Palm Beach Gardens, Florida.

**Ravin Raj, Vice President-Operations**, has more than 15 years of experience in class action claims management, document management, and insurance claims remediation. Mr. Raj's responsibilities for A.B. Data's Class Action Administration Company include heading the shared operations center, which includes mailroom, contact center, claims processing, quality control, and information systems operations. His areas of expertise include business process development, strategic/tactical operations

planning and implementation, risk analysis, budgeting, business expansion, growth planning and implementation, cost reduction, and profit, change, and project management. In his previous position, as Assistant Vice President-Operations at RR Donnelley India Pvt. Ltd., in Chennai, India, he led a team of more than 400 employees with the capacity to process more than 4 million claims a year, servicing several leading claims administrators. Mr. Raj managed six of the top ten securities class action settlements, by settlement value, including several multibillion-dollar settlements. His background also includes work as a Project Lead for iMarque Solutions Pvt. Ltd., Chennai, India.

**Linda V. Young, Vice President, Media**, oversees the Media Department and is responsible for the direction, development, and implementation of media notice plans for A.B. Data's clients. Ms. Young is an expert in media planning using most forms of advertising including digital, print, and broadcast. She developed some of the first Court-approved Notice Plans using an all-digital approach for cases such as *In re Vizio Consumer Privacy Litigation*, *In re Qualcomm Antitrust Litigation*, and *In re Google Inc. Street View Electronic Communications Litigation*, among others. Her ability to create notice plans that efficiently extend reach and drive class member engagement and participation has made a significant impact across many types of administrations. Ms. Young has developed and implemented national and international print, digital-, and earned-media notice plans for some of the industry's leading pharmaceutical, insurance, and securities class action cases, including Libor-based Financial Instruments Antitrust Litigation, Cipro Antitrust Cases I and II, Euribor and Euroyen-based Derivatives cases, and many more. She has more than 20 years of general market and ethnic media advertising and media planning experience, having managed advertising for brands such as Georgia-Pacific, American Express, Denny's, and Coca-Cola USA.

**Eric Schachter, Vice President**, is a member of A.B. Data's Class Action Administration Leadership Team. He has over 15 years of experience in the legal settlement administration services industry. Mr. Schachter's responsibilities include ensuring successful implementation of claims administration services for A.B. Data's clients in accordance with settlement agreements, court orders, and service agreements. He also works closely with Project Managers to develop plans of administration to provide the highest level of effective and efficient delivery of work product. A frequent speaker on claims administration innovation and best practices at industry events nationwide, Mr. Schachter has a bachelor's degree in sociology from Syracuse University, earned his law degree at Hofstra University School of Law, and was previously an associate at Labaton Sucharow LLP in New York City.

**Paul Sauberer, Director of Quality Assurance**, is responsible for overseeing quality assurance and process management, working diligently to mitigate risk, ensure exceptional quality control, and develop seamless calculation programming. Mr. Sauberer brings more than 20 years of experience as a quality assurance specialist with a leading claims-processing company where he developed extensive knowledge in securities class action administration. He is recognized as the class action administration industry's leading expert on claims and settlement administrations of futures contracts class actions.

**Justin Parks, Vice President**, provides expertise in legal marketing strategies and brings extensive experience in client relations to A.B. Data's business development team. Previously, Mr. Parks served the legal industry as part of the marketing group at a major class action administration firm where he successfully managed and consulted on notice plans and other administrative aspects in hundreds of cases with an estimated value of several hundred million dollars in settlement funds distributed to class members, including some of the largest Employment settlements in history. Mr. Parks is uniquely experienced in Data Privacy matters, having consulted with clients on numerous matters stemming from data breaches as well as violations of the Illinois Biometric Information Privacy Act (BIPA), several of which resulted in the first ever Biometric Privacy related settlements in history. Mr. Parks' knowledge and understanding of the class action industry, as well as his client relationship skills, expand A.B. Data's capacity to achieve its business development and marketing goals effectively.

**Camron Assadi, Vice President, Digital Marketing**, has more than 20 years of experience in digital marketing leadership, which includes directing and overseeing all aspects of the company's digital notice plans and campaigns across multiple networks and platforms. Mr. Assadi is an expert in online advertising and social media campaigns including Facebook, Google Ads, LinkedIn, Twitter, Amazon, Pinterest, Verizon Media, and others. He holds certifications in Google Ads Display and Search, and is a Facebook Certified Digital Marketing Associate. His ability to create and optimize business opportunities, extend brand reach, and capture the interest and support of local and international audiences has proven him an invaluable leader of A.B. Data's effort to maximize and streamline class member notice and engagement. Mr. Assadi has managed the notice plans for cases that have garnered millions of unique visitors and social media interactions. He holds a BS in Psychology from the University of Utah.

**Adam Walter, PMP, Senior Project Manager**, has nearly fifteen years of experience managing the administration of securities class action settlements and SEC disgorgements totaling more than $4 billion. He has managed settlement programs in engagements involving some of the largest securities class action settlements and is a key contributor to the development of administration strategies that meet the evolving needs of our clients. His responsibilities include developing case administration strategies to ensure that all client and court requirements and objectives are met, overseeing daily operations of case administrations, ensuring execution of client deliverables, providing case-related legal and administration support to class counsel, overseeing notice dissemination programs, implementing complex claims-processing and allocation methodologies, establishing quality assurance and quality control procedures, and managing distribution of settlement funds. Mr. Walter holds a bachelor's degree in business administration from Florida Atlantic University, Boca Raton, Florida. He also has been an active member of the Project Management Institute since 2010 and is PMP®-certified.

**Steve Straub, Senior Project Manager**, joined A.B. Data in February 2012. As a Senior Project Manager, his responsibilities include developing case administration strategies, overseeing daily operations of case administrations, ensuring execution of client deliverables, providing case-related legal and administration support to case counsel, overseeing notice dissemination programs, implementing complex claims processing and allocation methodologies, establishing quality assurance and quality control procedures, and managing distribution of settlement funds. Mr. Straub's experience in administering class action settlements includes securities, consumer, and antitrust settlements, with a primary focus on antitrust cases. He holds a Juris Doctor degree from Seton Hall University School of Law, Newark, New Jersey.

**Patty Nogalski, Project Manager**, is a veteran in the equity and securities industry and now contributes her talents to A.B. Data as a Project Manager specializing in class action administrations for securities litigation. Ms. Nogalski brings to A.B. Data many new ideas, methods, and technologies to achieve project efficiency and organizational integration. For much of her twenty-year career, she served as Vice President Equity Trading for BMO Global Asset Management Corporation where she managed equity trading for mutual funds and institutional accounts. She works closely with Eric Miller and the project management team to deliver strategies that meet the unique needs of securities and commodities settlements. Ms. Nogalski attended the University of Wisconsin-Milwaukee where she earned her Bachelor of Arts in Communications, and has also obtained her Financial Industry Regulatory Authority (FINRA) Series 7, Series 63, and Series 65 licenses.

**Eric Schultz, MCSE, Information Technology Manager and Security Team Chairperson**, has been with A.B. Data for more than 19 years, and is currently responsible for overseeing all information technology areas for all A.B. Data divisions across the United States and abroad, including network infrastructure and architecture, IT operations, data security, disaster recovery, and all physical, logical, data, and information systems security reviews and audits required by our clients or otherwise. As a Microsoft Certified Systems Engineer (MCSE) with more than 25 years of experience in information technology systems and solutions, Mr. Schultz has developed specializations in network security, infrastructure, design/architecture, telephony, and high-availability network systems.

## Secure Environment

 **A.B. Data's facilities provide the highest level of security** and customization of security procedures, including:

- A Secure Sockets Layer server
- Video monitoring
- Limited physical access to production facilities
- Lockdown mode when checks are printed
- Background checks of key employees completed prior to hire
- Frequency of police patrol – every two hours, with response time of five or fewer minutes
- Disaster recovery plan available upon request

## Data Security

**A.B. Data is committed to protecting the confidentiality, integrity, and availability of personal identifying information** and other information it collects from our clients, investors, and class members and requires that its employees, subcontractors, consultants, service providers, and other persons and entities it retains to assist in distributions do the same. A.B. Data has developed an Information Security Policy, a suite of policies and procedures intended to cover all information security issues and bases for A.B. Data, and all of its divisions, departments, employees, vendors, and clients. A.B. Data has also recently taken the necessary, affirmative steps toward compliance with the EU's General Data Protection Regulation and the California Consumer Privacy Act.

A.B. Data has a number of high-profile clients, including the Securities and Exchange Commission (SEC), the United States Department of Justice, the Attorneys General of nearly all 50 states, other agencies of the United States government, and the Government of Israel, as well as direct banking and payment services companies with some of the most recognized brands in United States financial services and some of the largest credit card issuers in the world.

We are therefore frequently subjected to physical, logical, data, and information systems security reviews and audits. We have been compliant with our clients' security standards and have also been determined to be compliant with ISO/IEC 27001/2 and Payment Card Industry (PCI) data-security standards, the Gramm-Leach-Bliley Act (GLB) of 1999, the National Association of Insurance Commissioners (NAIC) Regulations, the Health Insurance Portability and Accountability Act (HIPAA) of 1996, and the Health Information Technology for Economic and Clinical Health Act (HITECH).

The Government of Israel has determined that A.B. Data is compliant with its rigorous security standards in connection with its work on Project HEART (Holocaust Era Asset Restitution Taskforce).

A.B. Data's fund distribution team has been audited by EisnerAmper LLP and was found compliant with class action industry standards and within 99% accuracy. EisnerAmper LLP is a full-service advisory and accounting firm and is ranked the 15th-largest accounting firm in the United States.

In addition, as part of PCI compliance requirements, A.B. Data has multiple network scans and audits from third-party companies, such as SecurityMetrics and 403 Labs, and is determined to be compliant with each of them.

# Fraud Prevention and Detection



**A.B. Data is at the forefront of class action fraud prevention.**

A.B. Data maintains and utilizes comprehensive proprietary databases and procedures to detect fraud and prevent payment of allegedly fraudulent claims.

We review and analyze various filing patterns across all existing cases and claims. Potential fraudulent filers are reported to our clients as well as to the appropriate governmental agencies where applicable.

# Representative Class Action Engagements

**A.B. Data and/or its team members have successfully administered** hundreds of class actions, including many major cases. Listed below are just some of the most representative or recent engagements.

<div style="background:#CC2027;color:white;padding:4px;font-weight:bold;display:inline-block;">Consumer & Antitrust Cases</div>

- *Phil Shin, et al. v. Plantronics, Inc.*
- *In re: Qualcomm Antitrust Litigation*
- *In re Resistors Antitrust Litigation*
- *The Hospital Authority of Metropolitan Government of Nashville and Davidson County, Tennessee v. Momenta Pharmaceuticals, Inc. and Sandoz Inc.* ("Lovenox Antitrust Matter")
- *William Kivett, et al. v. Flagstar Bank, FSB, and DOES 1-100, inclusive*
- *Adelphia, Inc. v. Heritage-Crystal Clean, Inc.*
- *LLE One, LLC, et al. v. Facebook, Inc.*
- *Bach Enterprises, Inc., et al. v. Advanced Disposal Services South, Inc., et al.*
- *JWG Inc., et al. v. Advanced Disposal Services Jacksonville, L.L.C., et al.*
- *State of Washington v. Motel 6 Operating L.P. and G6 Hospitality LLC*
- *In re GSE Bonds Antitrust Litigation*
- *Wave Lengths Hair Salons of Florida, Inc., et al. v. CBL & Associates Properties, Inc., et al.*
- *In re Loestrin 24 FE Antitrust Litigation*
- *Office of the Attorney General, Department of Legal Affairs, State of Florida v. Pultegroup, Inc. and Pulte Home Company, LLC*
- *In re Cigna-American Specialties Health Administration Fee Litigation*
- *In re: Intuniv Antitrust Litigation*
- *High Street, et al. v. Cigna Corporation, et al.*
- *Gordon Fair, et al. v. The Archdiocese of San Francisco, San Mateo, and Marin County*

- *Bizzarro, et al. v. Ocean County Department of Corrections, et al.*
- *Meeker, et al. v. Bullseye Glass Co.*
- *MSPA Claims 1, LLC v. Ocean Harbor Casualty Insurance Company*
- *Tennille v. Western Union Company - Arizona*
- *Garner, et al. v. Atherotech Holdings, Inc.* and *Garner, et al. v. Behrman Brothers IV, LLC, et al.*
- *Robinson, et al. v. Escallate, LLC*
- *Josefina Valle and Wilfredo Valle, et al. v. Popular Community Bank f/k/a Banco Popular North America*
- *Vision Construction Ent., Inc. v. Waste Pro USA, Inc. and Waste Pro USA, Inc. and Waste Pro of Florida, Inc.*
- *Plumley v. Erickson Retirement Communities, et al.*
- *In re London Silver Fixing, Ltd. Antitrust Litigation*
- *In re EpiPen Marketing, Sales Practices and Antitrust Litigation*
- *Ploss v. Kraft Foods Group, Inc. and Mondelēz Global LLC*
- *In re Mexican Government Bonds Antitrust Litigation*
- *In re Ready-Mixed Concrete Antitrust Litigation*
- *In re: Marine Hose Antitrust Litigation*
- *Iowa Ready Mixed Concrete Antitrust Litigation*
- *In re Potash Antitrust Litigation (II)*
- *In re Evanston Northwestern Healthcare Corp. Antitrust Litigation*
- *In re Polyurethane Foam Antitrust Litigation*
- *In re LIBOR-Based Financial Instruments Antitrust Litigation*
- *In re Lorazepam and Clorazepate Antitrust Litigation*
- *In re Cardizem CD Antitrust Litigation*
- *Vista Healthplan, Inc., and Ramona Sakiestewa v. Bristol-Myers Squibb Co., and American BioScience, Inc.*
- *In re Lupron Marketing and Sales Practices Litigation*
- *In re Terazosin Hydrochloride Antitrust Litigation*
- *In re Warfarin Sodium Antitrust Litigation*
- *Rosemarie Ryan House, et al. v. GlaxoSmithKline PLC and SmithKline Beecham Corporation*
- *Carpenters and Joiners Welfare Fund, et al. v. SmithKline Beecham*
- *New Mexico United Food and Commercial Workers Union's and Employers' Health and Welfare Trust Fund, et al. v. Purdue Pharma L.P.*
- *In Re Pharmaceutical Industry Average Wholesale Price Litigation*
- *Alma Simonet, et al. v. SmithKline Beecham Corporation, d/b/a GlaxoSmithKline*
- *In re Relafen Antitrust Litigation*
- *In Re Remeron Direct Purchaser Antitrust Litigation*
- *In re TriCor Indirect Purchasers Antitrust Litigation*
- *Nichols, et al., v. SmithKline Beecham Corporation*
- *In re: DDAVP Indirect Purchaser Antitrust Litigation*

## Securities Cases

- *Laydon v. Mizuho Bank, Ltd., et al.*
- *Lomingkit, et al. v. Apollo Education Group, Inc., et al.*
- *In re Caraco Pharmaceutical Laboratories, Ltd. Shareholder Litigation*
- *Norfolk County Retirement System, et al. v. Community Health Systems, Inc., et al.*
- *Chester County Employees' Retirement Fund v. KCG Holdings, Inc., et al.*
- *Oklahoma Law Enforcement Retirement System, et al. v. Adeptus Health Inc., et al.*
- *Di Donato v. Insys Therapeutics, Inc., et al.*
- *Lundgren-Wiedinmyer, et al. v. LJM Partners, Ltd, et al.*

- *Martin, et al. v. Altisource Residential Corporation, et al.*
- *Stephen Appel, et al. v. Apollo Management, et al.*
- *In re Medley Capital Corporation Stockholder Litigation*
- *Forman, et al. v. Meridian BioScience, Inc., et al.*
- *Public Employees' Retirement System of Mississippi, et al. v. Endo International PLC, et al.*
- *In Re Flowers Foods, Inc. Securities Litigation*
- *Jiangchen, et al. v. Rentech, Inc., et al.*
- *In re Liberty Tax, Inc. Stockholder Litigation*
- *In re RH, Inc. Securities Litigation*
- *Lazan v. Quantum Corporation, et al.*
- *Nabhan v. Quantum Corporation, et al.*
- *Edmund Murphy III, et al. v. JBS S.A.*
- *Public Employees' Retirement System of Mississippi, et al. v. Sprouts Farmers Market, Inc., et al.*
- *In re Starz Stockholder Litigation*
- *Judith Godinez, et al. v. Alere Inc., et al.*
- *Rahman and Giovagnoli, et al. v. GlobalSCAPE, Inc., et al.*
- *Arthur Kaye, et al. v. ImmunoCellular Therapeutics, Ltd., et al.*
- *In re CPI Card Group Inc. Securities Litigation*
- *Daniel Aude, et al. v. Kobe Steel, Ltd., et al.*
- *In re Quality Systems, Inc. Securities Litigation*
- *Cooper, et al. v. Thoratec Corporation, et al.*
- *Washtenaw County Employees' Retirement System, et al. v. Walgreen Co., et al.*
- *Elkin v. Walter Investment Management Corp., et al.*
- *In Re CytRx Corporation Securities Litigation*
- *Ranjit Singh, et al. v. 21Vianet Group, Inc., et al.*
- *In re PTC Therapeutics, Inc. Securities Litigation*
- *Securities and Exchange Commission v. Mark A. Jones*
- *In re Sequans Communications S.A. Securities Litigation*
- *In re Henry Schein, Inc. Securities Litigation*
- *Ronge, et al. v. Camping World Holdings, Inc., et al.*
- *Oklahoma Firefighters Pension & Retirement System v. Lexmark International, Inc.*
- *Christakis Vrakas, et al. v. United States Steel Corporation, et al.*
- *Emerson et al. v. Mutual Fund Series Trust, et al.* ("Catalyst")
- *In re Fannie Mae 2008 Securities Litigation*
- *In re Anadarko Petroleum Corporation Class Action Litigation*
- *Ge Dandong, et al., v. Pinnacle Performance Limited, et al.*
- *In Re: Rough Rice Commodity Litigation*
- *Xuechen Yang v. Focus Media Holding Limited et al.*
- *In re Massey Energy Co. Securities Litigation*
- *In re Swisher Hygiene, Inc.*
- *The City of Providence vs. Aeropostale, Inc., et al.*
- *In re Metrologic Instruments, Inc. Shareholders Litigation*
- *Public Pension Fund Group v. KV Pharmaceutical Company et al.*
- *Pension Trust Fund for Operating Engineers, et al. v. Assisted Living Concepts, Inc., et al.*
- *In re Lehman Brothers Equity/Debt Securities Litigation*
- *In re: Platinum and Palladium Commodities Litigation* (Platinum/Palladium Physical Action)
- *In re: Platinum and Palladium Commodities Litigation* (Platinum/Palladium Futures Action)
- *In re General Electric Co. Securities Litigation*
- *In re CNX Gas Corporation Shareholders Litigation*
- *Oscar S. Wyatt, Jr. et al. v. El Paso Corporation, et al.*
- *In re Par Pharmaceutical Securities Litigation*

- *In re Par Pharmaceutical Companies, Inc. Shareholders Litigation*
- *In re Delphi Financial Group Shareholders Litigation*
- *In re SLM Corporation Securities Litigation*
- *In re Del Monte Foods Company Shareholder Litigation*
- *Leslie Niederklein v. PCS Edventures!.com, Inc. and Anthony A. Maher*
- *In re Beckman Coulter, Inc. Securities Litigation*
- *Michael Rubin v. MF Global, Ltd., et al.*
- *Allen Zametkin v. Fidelity Management & Research Company, et al.*
- *In re BP Prudhoe Bay Royalty Trust Securities Litigation*
- *Police and Fire Retirement System of the City of Detroit et al. v. SafeNet, Inc., et al.*
- *In re Limelight Networks, Inc. Securities Litigation*
- *In re Gilead Sciences Securities Litigation*
- *In re ACS Shareholder Litigation, Consolidated C.A. No. 4940-VCP*
- *Lance Provo v. China Organic Agriculture, Inc., et al.*
- *In re LDK Solar Securities Litigation*

## Labor & Employment Cases

- *Eisenman v. The Ayco Company L.P.*
- *Matheson v. TD Bank, N.A.*
- *Simon v. R.W. Express LLC, d/b/a Go Airlink NYC*
- *Perez v. Mexican Hospitality Operator LLC, d/b/a Cosme*
- *Shanahan v. KeyBank, N.A.*
- *Loftin v. SunTrust Bank*
- *Alvarez v. GEO Secure Services, LLC*
- *Weisgarber v. North American Dental Group, LLC*
- *Talisa Borders, et al. v. Wal-mart Stores, Inc.*
- *Reale v. McClain Sonics Inc., et al.*
- *Larita Finisterre and Songhai Woodard, et al. v. Global Contact Services, LLC*
- *Adebisi Bello v. The Parc at Joliet*
- *Garcia, et al. v. Vertical Screen, Inc.*
- *Brook Lemma and Matthieu Hubert, et al. v. 103W77 Partners LLC, et al. ("Dovetail Settlement")*
- *American Federation of Government Employees, Local 1145 v. Federal Bureau of Prisons, U.S. Penitentiary, Atlanta, Georgia*
- *Lisa Ferguson, Octavia Brown, et al. v. Matthew G. Whitaker, Acting AG, DOJ Bureau of Prisons ("USP Victorville")*
- *American Federation of Government Employees, Local 2001 v. Federal Bureau of Prisons, Federal Correctional Institution, Fort Dix, New Jersey*
- *American Federation of Government Employees, Local 506 v. U.S. Department of Justice, Federal Bureau of Prisons, U.S. Penitentiary Coleman II, Coleman, Florida*
- *Vargas v. Sterling Engineering*
- *Rosenbohm v. Verizon*
- *Alex Morgan, et al. v. United States Soccer Federation, Inc.*
- *Iskander Rasulev v. Good Care Agency, Inc.*
- *Kyndl Buzas, et al., v. Phillips 66 Company and DOES 1 through 10*
- *American Federation of Government Employees, Local 408 v. U.S. Dept. of Justice, Federal Bureau of Prisons, Federal Correctional Complex, Butner, NC*
- *In re 2014 Avon Products, Inc. ERISA Litigation*
- *In re Eastman Kodak ERISA Litigation*
- *Taronica White, et al. v. Attorney General Loretta Lynch, Department of Justice*
- *Lisa Ferguson, et al. v. Acting Attorney General Matthew Whitaker, Department of Justice*

- *Melissa Compere v. Nusret Miami, LLC, et al.*
- *Abelar v. American Residential Services, L.L.C., Central District of California*
- *Flores, et al. v. Eagle Diner Corp., et al., Eastern District of Pennsylvania*
- *Michael Furman v. Godiva Chocolatier, Inc., 15th Judicial Circuit, Palm Beach County, Florida*
- *Finisterre et. al v. Global Contact Services, LLC, New York State Supreme Court, Kings County*
- *McGuire v. Intelident Solutions, LLC, et al., Middle District of Florida, Tampa Division*
- *Duran De Rodriguez, et al. v. Five Star Home Health Care Agency, Inc. et al., Eastern District of New York*

## Data Breach/BIPA Cases

- *The State of Indiana v. Equifax Data Breach Settlement*
- *In re: Vizio, Inc. Consumer Privacy Litigation*
- *In re: Google, Inc. Street View Electronic Communications Litigation*
- *Devin Briggs and Bobby Watson, et al. v. Rhinoag, Inc.* ("Briggs Biometric Settlement")
- *Trost v. Pretium Packaging L.L.C.*

## Telephone Consumer Protection Act (TCPA) Cases

- *Lowe and Kaiser, et al. v. CVS Pharmacy, Inc., et al.*
- *Johansen v. HomeAdvisor, Inc., et al.*
- *Charvat, et al. v. National Holdings Corporation*
- *Hopkins, et al. v. Modernize, Inc.*
- *Diana Mey vs. Frontier Communications Corporation*
- *Matthew Donaca v. Dish Network, L.L.C.*
- *Matthew Benzion and Theodore Glaser v. Vivint, Inc.*
- *John Lofton v. Verizon Wireless (VAW) LLC, et al.*
- *Lori Shamblin v. Obama for America et al.*
- *Ellman v. Security Networks*

## For More Information

For more detailed information regarding A.B. Data's experience, services, or personnel, please see our website at **www.abdataclassaction.com**

# EXHIBIT C

**BRISKMAN & BINION, PC**

**205 Church Street**

**Mobile, Alabama 36602**

**(T) 251-433-7600**

Briskman & Binion, PC, was founded in Mobile, Alabama, by Donald Briskman and Mack Binion as a general criminal and civil litigation practice firm. Highly regarded in Mobile and the State of Alabama, Messrs. Briskman and Binion have over 100 combined years of practice in state and federal courts throughout Alabama and the central Gulf Coast area.

A former President of the Mobile Bar Association (2002), Donald Briskman specializes in the practice of criminal defense and domestic relations litigation, and is a member in good standing with the Alabama State Bar. Mack Binion has represented the Industrial Development Board of the City of Mobile for over 30 years, has established an exemplary reputation as a tenacious commercial and transactional litigator, and is a member in good standing with the Alabama State Bar.

Firm partner, Charles J. Potts, also a former President of the Mobile Bar Association (2021), member of the Mobile County Judicial Nominating Committee, and long-term Chair of the MBA Grievance Committee, has practiced in the area of complex civil litigation from both the plaintiff and defense sides for over 35 years. Mr. Potts is a member in good standing with the Alabama State Bar and the Mississippi Bar Association.

Partner Josh Briskman, son of Donald Briskman, has practiced law in Alabama for over 20 years, specializing in criminal defense, domestic relations and civil litigation representing personal injury and wrongful death victims, and is a member in good standing with the Alabama State Bar.

# EXHIBIT D



# FIRM EXPERIENCE

Crueger Dickinson is a firm that focuses on class action and mass tort litigation. The firm is leading some of the largest litigation in the United States against large corporations who have contaminated drinking water, short-changed pension holders, misclassified their work forces, designed and sold defective consumer products and misrepresented the safety of addictive products such as prescription opioids, e-cigarettes and vaping products. In the last decade, the firm's partners have served in significant leadership roles in a wide variety of class action and mass tort litigation in state and federal courts around the United States. Some notable examples highlighting that experience are as follows:

1.        *In Re: National Prescription Opiate Litigation* 17-md-2804 (N.D. Ohio 2017) (MDL Plaintiffs' Executive Committee)

In 2017, the firm was named to steer the largest piece of litigation in United States history when it was appointed to sit on the sixteen-member Plaintiffs' Executive Committee for this consolidated multi-district litigation. As a member of that leadership committee, the firm leads lawsuits brought by thousands of county and city government entities against the pharmaceutical manufacturers and distributors of prescription opioids over the nationwide public health epidemic caused by those dangerous drugs. The firm individually represents over one-hundred county government entities in eighteen states around the United States in that litigation.

2.        *Jammal, et al. v. American Family, et al.. Case. No. 13-CV-437* (N.D. Ohio 2013) (Co-Lead Class Counsel and Trial Counsel)

Between 2013 and today, the firm and its partners have served as co-lead class counsel, lead trial counsel and co-lead appellate counsel for a class of over 7000 pension holders asserting ERISA claims. The firm represented the class from filing, through certification and to trial, obtaining a unanimous verdict and a subsequent judicial ruling on behalf of a certified class of thousands of pension holders where potentially over a billion dollars is at stake.

3.        *In Re: Aqueous Film-Forming Foams Products Liability Litigation*, 18-mn-2873 (D. S. Car. 2018) (MDL Plaintiffs' Executive Committee)

In 2019, the firm was elected to serve on the Plaintiffs' Executive Committee tasked with leading the nationwide multi-district litigation against the manufacturers of AFFF fire-fighting foam which is alleged to have contaminated groundwater in many locations around the United States and causing injuries to residents.

4.        *Roberts v. Electrolux Home Products, Inc.* (C.D. Cal. 2010) (Co-Lead Class Counsel)

Co-lead counsel in multi-state class action involving safety defects clothes dryers. The firm represented a class of consumers who purchased the millions of dryers sold in the United States, obtaining class certification and a nationwide settlement on behalf of the class.

5.        *Williams v. Subaru of North America* (C.D. Cal. 2012) (Co-Lead Class Counsel)

Co-lead counsel in multistate class action involving vehicle safety defects. Case was favorably resolved in favor of the class.

6.        *Varga v. General Electric Company, et al.,* Case No. 18-cv-1449 (N.D.N.Y. 2018)(Co-Lead Class Counsel)

Co-Lead counsel representing a putative class of participants in GE's 401K plan alleging breaches of fiduciary duty violating ERISA.

7.        *Goff et al. v. Nationwide Mutual Insurance Company et al.,* 18-cv-340 (S.D. Ohio 2017) (Co-Lead Class Counsel)

Co-Lead counsel representing a putative class of thousands of insurance agents alleging employee misclassification and violations of California law as was as civil RICO claims.



8.     *Parry et al. v. Farmers Insurance Exchange, et al.,* Case No. BC683856 (Sup. Ct. Ca. 2017) (Co-Lead Class Counsel)

Co-Lead counsel representing a putative class of thousands of insurance agents alleging employee misclassification and violations of California law.

9.     *Koenig, et al. v. Vizio, Inc.,* Case No. BC702266 (Sup. Ct. Ca. 2018) (Co-Lead Class Counsel)

Co-Lead counsel representing a putative class of thousands of California consumers regarding false advertising and violations of California consumer protection laws.

10.     *Rikkers v. Menard, Inc.,* Case No. 17-cv-1208 (E.D. Wis. 2017) (Co-Lead Class Counsel)

Co-Lead counsel representing a putative class of thousands of consumers regarding false advertising and violations of consumer protection laws.

11.     *Smith v. Rockwell Automation, Inc.* et al., 19-cv-505 (E.D. Wis. 2019)

Class counsel representing a putative class of thousands of plan participants in the Defendantsâ€™ employee retirement plan for violations of ERISA and failure to pay benefits due under the terms of that plan.

12.     *Reichardt v. Electrolux Home Products, Inc.,* Case. No. 17-cv-219 (E.D. Wis. 2017)

Class counsel representing a putative class of consumers who bought allegedly defective ovens manufactured by Electrolux that result in fires and contain serious safety defects.

13.     *Lohr et al. v. Nissan North America, Inc. et al.,* 16-cv-1023 (W.D. Wash. 2016)

Co-lead counsel in class action involving vehicle safety defects.

14.     *Silva, et al. v. Aviva PLC, et al.* (N.D. Cal.) (Co-Lead Class Counsel)

Co-lead counsel in class action representing putative class of annuity holders alleging RICO fraud claims.

15.     *Cynthia Larson v. Wisconsin Physicians Service Insurance Co.* (W.D. Wis.)(Co-Lead Class Counsel)

Co-lead counsel in insurance copay class action.

16.     *Ludwick v. Harbinger Group, Inc., et al.* (W.D. Missouri)(Co-Lead Class Counsel)

Co-lead counsel in class action representing putative class of annuity holders alleging RICO fraud claims against defendants.



# CHARLES CRUEGER



 cjc@cruegerdickinson.com

414 210 3900

Charles Crueger is an owner and founding partner of Crueger Dickinson LLC, has nearly twenty years of trial and appellate experience in both commercial and intellectual property litigation. His commercial litigation experience spans from ERISA litigation to complex insurance issues, commercial disputes, director and officer lawsuits, and federal tax refund litigation. Indeed, Mr. Crueger was lead trial counsel who obtained a favorable jury verdict on behalf of a class of pension holders in an ERISA action where liabilities exceed $1 Billion. His intellectual property practice focuses on patent litigation, where he has represented plaintiffs and defendants in numerous matters both at trial and on appeal. He has tried cases to verdict in bench and jury trials and represented clients in both state and federal courts throughout the country.

**NOTABLE PROFESSIONAL EXPERIENCE**

- Jammal, et. al., v. American Family Insurance Group, et. al., No. 1:13-CV-437 (N.D. of Ohio) (representing plaintiffs in ERISA class action alleging that defendants denied them retirement and other benefits by misclassifying them as independent contractors).
- Ludwick v. Harbinger Group, Inc., et. al., No. 15-00011 (W.D. of Mo.) (representing plaintiff in pending RICO class action alleging that defendants defrauded them in the sale of annuities).
- Roberts et. al. v. Electrolux Home Products, Inc., No. 8:12-cv-01644 (C.D. of Ca.) (represented plaintiff in class action over dryer fires; the case resulted in a beneficial settlement for the class).

- Feldmann Engineering & Manufacturing Co., Inc.. v. Ardisam, Inc., No. 3:14-CV-00727 (W.D. Wis.) (represented plaintiff in patent infringement action that settled before trial).
- Ormco Corp. v. Align Tech., Inc., 498 F.3d 1307 (Fed. Cir.) (obtained reversal of adverse judgment and represented plaintiff on remand that resulted in a favorable jury verdict and settlement in excess of $90M; also invalidated patent claims asserted by defendant).
- Briggs & Stratton Corp. v. Kohler Co., (W.D. Wis.) (represented plaintiff through a jury trial in successful patent infringement action involving small engine technology).

- Kestrel Coal Pty. v. Joy Global, 362 F.3d 401 (7th Cir.) (obtained rare reversal of a lower court's order allowing discovery in the United States for use in lawsuit pending in Australia).
- Beloit Liquidating Trust v. Grade, 2004 WI 39, 270 Wis. 2d 356 (part of litigation team that obtained favorable result in the leading director and officer liability case in Wisconsin).
- Globe Life and Accident Ins. Co. v. United States, 52 Fed. Cl. 132 (successfully defended $8 million tax refund claim following a two-week trial).
- American Express v. United States, 47 Fed. Cl. 127 (successfully defended $200 million tax refund claim involving accounting methods for credit card fees).



## CHARLES CRUEGER, CONTINUED

### SELECTED PUBLICATIONS

- "The Long Arm of Personal Jurisdiction in IP Litigation", IP Law360 (October 26, 2010)
- "A Commentary on the Economic Loss of Doctrine Under the Rule of Cease Electric and Cascade Stone", 89 Marq. L. Rev. 137 (2005)

### EDUCATION

- University of Wisconsin Law School (J.D., cum laude, 1997; Order of the Coif; Wisconsin Law Review)
- University of Wisconsin-Madison (B.A., with distinction, 1993)

### HONORS AND RECOGNITIONS

- Recognized in Super Lawyers Magazine as a "Super Lawyer" 2015 - 2017
- Recognized in "Best Lawyers in America"
- Recognized in Super Lawyers Magazine as a "Rising Star" 2006 - 2007

### STATE BAR ADMISSIONS

Wisconsin

### FEDERAL COURT ADMISSIONS

Eastern District of Wisconsin
Western District of Wisconsin
Northern District of Illinois
Court of Federal Claims
U.S. Court of Appeals for the Third, Sixth, Seventh, and Federal Circuits
U.S. Tax Court
U.S. Supreme Court



# ERIN DICKINSON



✉ ekd@cruegerdickinson.com

☎ 414 210 3767

Erin Dickinson is an owner and founding partner of Crueger Dickinson LLC. She practices large, high stakes litigation in state and federal courts throughout the country. Ms. Dickinson has a broad range of litigation experience including nation-wide class actions, ERISA, insurance, contract, business torts, professional negligence, products liability, intellectual property and civil RICO cases. Indeed, Ms. Dickinson was lead trial counsel who obtained a favorable jury verdict on behalf of a class of pension holders in an ERISA action where liabilities exceed $1 Billion. She has represented clients from individuals to fortune 500 companies and has tried multiple complex cases to jury verdict. Ms. Dickinson left a large law firm partnership to litigate large high stakes cases from a different platform.

**NOTABLE PROFESSIONAL EXPERIENCE**

- Lead counsel in a variety of nationwide class action cases in a variety of areas including ERISA, products liability, financial fraud and civil RICO issues.
- Successfully represented majority shareholders in a federal court jury trial involving business torts and Lanham Act claims where Defendants' exposure exceeded $20M. Case resulted in unanimous defense verdict in favor of Ms. Dickinson's client and a finding of zero liability.
- Litigation counsel for a patent holder in a patent infringement lawsuit involving orthodontic software. Case resulted in a favorable jury verdict and subsequent settlement of litigated claims in excess of $90M.

- Lead counsel who achieved a nationwide class action settlements on a variety of cases where millions of allegedly defective products were at issue including cases involving automobiles, house hold appliance and other consumer products.
- Trial counsel for hospital systems in Texas, Missouri and Kansas in numerous professional negligence, tort and wrongful death cases

**EDUCATION**

- University of Texas School of Law (J.D. 2000)
- University of Wisconsin-Madison (B.A., with honors, 1996)

**STATE BAR ADMISSIONS**

Wisconsin
Missouri
Texas

**FEDERAL COURT ADMISSIONS**

Eastern District of Wisconsin
Western District of Wisconsin
Northern District of Illinois
Western District of Texas
Central District of California
Western District of Missouri
Northern District of Ohio
Seventh Circuit Court of Appeals
Sixth Circuit Court of Appeals

**HONORS AND RECOGNITIONS**

- Recognized by Super Lawyers Magazine as a "Super Lawyer" 2016-2017
- Recognized as one the 2016 "Best Lawyers in America"
- Recognized by Super Lawyers Magazine as a "Rising Star," 2012-2015
- Recipient of the 2014 Women in the Law award given by the Wisconsin Law Journal



# KRISTA BAISCH



Krista Baisch is a trial attorney and partner at Crueger Dickinson LLC. Ms. Baisch practices complex litigation in state and federal courts around the country. She has represented clients in contract disputes, shareholder disputes, patent litigation, commercial torts, civil rights, medical malpractice, product liability, construction litigation, personal injury, and general business litigation. She has represented more than a dozen of Wisconsin's Counties in a broad range of matters. Ms. Baisch also has extensive experience in the Seventh Circuit Court of Appeals, Wisconsin Court of Appeals, and the Wisconsin Supreme Court.

✉ kkb@cruegerdickinson.com

☎ 414 210 4367

## NOTABLE PROFESSIONAL EXPERIENCE

- Successfully represented managing general agent in an arbitration trial involving complex issues of business valuation and breach of employment covenants.  Trial resulted in a total defense verdict for Ms. Baisch's client.
- Successfully tried multi-million dollar arbitration trial to resolve a complex contract dispute between several large U.S. corporations.  Case resulted in total defense verdict, recovery on counter claims and recovery of attorneys' fees for Ms. Baisch's client following three years of litigation and a twelve day trial.
- Obtained dismissal of breach of contract, unjust enrichment and promissory estoppel claims for client.  G2 Equities v. Reco Cement Products LLC (N.D. Ill. 2015)

- Lead counsel for software developer in breach of licensing agreement dispute resulting in a favorable resolution for client.
- Obtained dismissal of patent infringement lawsuit.  Sonic Foundry, Inc. v. Astute Technology, LLC (W.D. Wis. 2013)
- Obtained dismissal of fourth and fifth amendment claims and affirmance by Seventh Circuit Court of Appeals.  Pegues v. Springob (E.D. Wis. 2012); (7th Cir. 2013)

## EDUCATION

- University of Wisconsin Law School (J.D., cum laude, 2005)
- University of North Carolina at Chapel Hill (B.A., 2002)

## STATE BAR ADMISSIONS

Wisconsin

## FEDERAL COURT ADMISSIONS

Eastern District of Wisconsin
Western District of Wisconsin
Northern District of Illinois
Seventh Circuit Court of Appeals

## HONORS AND RECOGNITIONS

- Recognized as a "Rising Star" by Wisconsin Super Lawyers® (2012 – 2017)



# BENJAMIN KAPLAN



Benjamin Kaplan is a trial attorney and partner at Crueger Dickinson LLC. Mr. Kaplan focuses on consumer protection, business tort, and class action litigation, providing careful analysis of complex issues and practical advice for resolving disputes and concerns. Mr. Kaplan has jury trial experience in both state and federal courts as well as appellate experience in multiple federal appellate circuits.

✉ bak@cruegerdickinson.com

☎ 414 810 3382

## NOTABLE PROFESSIONAL EXPERIENCE

- Successfully obtained summary judgment for a manufacturer in a trademark infringment dispute, and affirmed by the Federal Circuit on appeal.
- Successfully represented an appliance manufacturer against false advertising allegations in a $40 million class action.
- Successfully represented a cooperative accused of mis-representations, obtaining a dismissal of all claims at jury verdict.
- Succesfully represented a small business owner in a dipute over the purchase of faulty equipment at trial.
- Represented an inmate prosecuting a Section 1983 claim, through federal jury trial.
- Brought in as appellate counsel at the Second Circuit, and successfully obtained a judgement reduction from over $5 million to under $2 million.
- Successfully represented a municipality in incorporation litigation, including a successful verdict at trial that was affirmed by the Wisconsin Court of Appeals.
- During law school, Mr. Kaplan worked in the chambers of the Honorable Diana Murphy of the Court of Appeals for the Eighth Circuit and for the Hennepin County Public Defender's Office.
- Ben has written numerous articls and client alerts regarding class action jurisprudence

## EDUCATION

- University of Minnesota Law School, Juris Doctor (J.D.), magna cum lauda; Business Law concentration, Editor, Journal of Law and Inequality
- University of Notre Dame, Bachelor of Arts (B.A.), cum laude; Political Science
- University of Notre Dame Australia

## STATE BAR ADMISSIONS

- Wisconsin

## FEDERAL COURT ADMISSIONS

- United States Court of Appeals, Seventh Circuit
- United States District Court, Eastern District of Wisconsin
- United States District Court, Western District of Wisconsin

## HONORS AND RECOGNITIONS

- Up and Coming Lawyer, Wisconsin Law Journal, 2017
- "Rising Stars," Wisconsin Super Lawyers, 2015-2017
- Dean's Distinguished Scholar, Minnesota Law School

# EXHIBIT E

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

Courtless Rampey and Bridget Cunningham,
individually and as representatives of a class
of participants and beneficiaries on behalf of          **No. 1:19-cv-00220-JB-B**
the West Corporation Employee 401(k)
Retirement Plan,
,

      Plaintiffs,

   v.

West Corporation and Retirement Committee of
West Corporation Employee 401(k) Retirement Plan,

      Defendants.
_____

### DECLARATION OF JORDAN LEWIS

1.      I am Jordan Lewis. I am the owner and director of Jordan Lewis, P.A., a law firm located at 4473 N.E. 11th Avenue, Fort Lauderdale, Florida 33334. I am one of the lawyers retained by the plaintiff in this action.

2.      I make this Declaration based upon my personal knowledge and under authority of 28 U.S.C. § 1746.

3.      I am personally rated as one of "America's Top 100 High Stakes Litigators" and "AV Preeminent" by Martindale-Hubbell.

4.      This declaration is submitted in support of plaintiff's motion for class certification. Specifically, this declaration addresses "adequacy" as it relates to my ability to represent the proposed class. Accordingly, this declaration summarizes my professional experience managing complex commercial cases.

5.      Since roughly 1994, my practice has primarily focused on representing plaintiffs in complex commercial disputes. During this period, I

worked for and was a partner at Siegel Brill, located in Minneapolis, Minnesota, and Kelley Uustal, located in Fort Lauderdale, Florida. In 2016 I opened my own law firm. In that period, I primarily practiced in the areas described below.

## *ERISA Health Care Class Action Litigation*

6.     I represented plaintiffs in about 20 ERISA-based health insurance cases against Blue Cross and other insurers in Massachusetts, Wisconsin, Iowa, Minnesota, Oklahoma and Rhode Island. Most of these cases settled. Tens of millions of dollars were distributed in settlements.

7.     Among these cases, I was court-appointed either lead or co-lead counsel are *Smith v. United HealthCare Services, Inc.*, 2002 WL 192565, *4 (D. Minn. Feb. 5, 2002)("The credentials of Plaintiffs' counsel indicate that they are fully competent and willing to pursue this action with zeal."); *Clarke v. Ford Motor Co.*, 220 F.R.D. 568, 579 (E.D. Wis. 2004)("Additionally, class counsel has submitted an affidavit indicating that it has a great deal of experience in handling class actions of this general type. Based on the evidence, I conclude that class counsel is competent to conduct the present action."); *Caranci v. Blue Cross & Blue Shield of Rhode Island*, 194 F.R.D. 27, 42 (D.R.I. 2000) ("Furthermore, when the subclasses were further refined in the Second Amended Complaint, the Ehrenberg plaintiffs were properly named as representatives only of Percentage Copayment subclass. Refinement of subclasses is to be expected in complex litigation of this type, and this Court concludes that plaintiffs' counsel acted reasonably in investigating the suitability of the class representatives."). The *Caranci* case settled on very favorable terms after the class was certified. I was appointed class counsel in *Corsini v. United HealthCare Services*, No. 96-0608-T (D.R.I.) from the bench.

8.     The ERISA class cases in which I acted as lead counsel that were either tried to successful verdict or resolved after favorable summary judgment decisions include *Smith v. United HealthCare Services, Inc.,* 2003 WL 22048761 (D. Minn. Aug. 28, 2003); *Corsini v. United HealthCare Services, Inc.,* 145 F. Supp.2d 184 (D.R.I. 2001); and *Rivera v. Network Health Plan of Wisconsin, Inc.*, 2005 WL 735926 (E.D. Wis. March 24, 2005).

## *ERISA Parity Act Litigation*

9.     In 2016, I began representing families whose health insurance companies denied their coverage requests for the treatment of mental health and substance abuse. I have brought these cases primarily under the federal Mental

Health Parity and Addiction Equity Act. When I began this practice, I was one of only a handful of plaintiffs' lawyers in the country who were bringing cases under this theory; that remains true today. I was – or am - lead, or co-lead, counsel in the following Parity Act cases: *H.H. v. Aetna Ins. Co.*, Case No. 18-cv-80773 (S.D. Fla.)(settled); *A.G. v. Community Ins. Co.*, Case No. 1:18-cv-300 (S.D. Ohio)(ongoing); *K.H.B. v. UnitedHealthcare Ins. Co.*, Case No. 2.18-cv-000795 (D. Utah)(settled); *Emch v. Community Ins. Co.*, Case No. 1:17-cv-00856 (S.D. Ohio)(ongoing); *Vorpahl v. Harvard Pilgrim Health Ins. Co.*, Case No. 17-cv-10844-DJC (D. Mass.)(settled); *Welp v. Cigna Life & Health Assur.*, Case No. 17-cv-80237 (S.D. Fla.)(settled); *A.Z. v. Regence Blueshield*, Case No. C17-1292 TSZ (W.D. Wash.)(settled); *Cotten v. Blue Cross & Blue Shield of Massachusetts HMO Blue, Inc.*, Case No. 16-12176 (D. Mass.)(settled); *Gallagher v. Empire Health Choice Assur. Co.*, Case No. 16-cv-09105 (S.D.N.Y)(settled); *A. H. v. Microsoft Corp. Welfare Plan*, Case No. 15-cv-03334 (W.D. Wash.)(settled); *L.P. v. BCBSM*, Case No. 18-cv-1241 (D. Minn.)(ongoing).

10.     I was co-lead counsel in *Emch v. Community Insurance Company, d/b/a Community Blue Cross and Blue Shield*, No. 1:17-cv-856 (S.D. Ohio), which involved an ERISA class of insureds whose plans, they alleged, violated the Ohio Parity Law. The case settled favorably after the district court denied defendant's motion to dismiss, holding that plaintiffs stated a *prima facie* claim.

### *ERISA 401(k) Excessive Fee Class Litigation*

11.     During the last two years, I have become involved in class action cases involving mismanagement of 401(k) ERISA pension plans. I am co-lead counsel in the following cases, all of which are ongoing: *Kurtz v. The Vail Corp.*, Case No. 20-cv-00500 (D. Colo.); *Glasscock v. Serco, Inc.*, Case No. 20-cv-00092 (E.D. Va.); *Enos v. adidas America, Inc.*, Case No. 3-19-cv-01073-YY (D. Oregon); *Torres v. Greystar Management Services, LP*, Case No. 19-cv-00510 (W.D. Tex.); *Forman v. TriHealth, Inc.*, Case No. 19-cv-00613 (S.D. Ohio) and *Rampey v. West Corporation*, Case No. 19-cv-00220 (S.D. Ala).

### *Product Liability Mass Cases*

12.     While at Kelley Uustal (between 2012 and 2016), I developed and managed three types of product liability cases. The first involved table saws; I developed a theory premised on the development of an advanced table saw with an electronic eye whose blade disappeared into the saw's housing at such speed

that it is almost impossible to cause injury, even when the blade is misused. All of the cases that I brought under this theory settled. I also developed product liability cases involving the failure of a type of hip implant. Those cases were ongoing when I left Kelley Uustal. Finally, I developed cases involving injuries caused to patients whose hernias were repaired by mesh. Those cases were also ongoing when I left Kelley Uustal.

### *Health Insurance State Law Coverage Cases*

**13.** I represented the plaintiff in a case titled *Jane Smith v. Coventry Health Care of Florida, Inc.,* venued in Broward County, Florida. The case involved a challenge to the application of the health insurer's "criminal activities exclusion," which purported to exclude coverage whenever its insured was involved in "criminal activities," even when the insured was not charged for those activities. After multiple dispositive motions, the case settled on very favorable terms.

**14.** I am co-lead counsel in *E.L.W. v. United HealthCare Insurance Co.,* No. 2-20-cv-2027 (S.D. Ohio), which involves claims brought under Ohio law seeking coverage of mental health and substance abuse treatment. The case is ongoing.

**15.** I am co-lead counsel in *Smith v. Golden Rule Insurance Co.*, No. 1-20-cv-02066 (S.D. Ind.), which involves a class action brought under state law that challenges the health insurer's calibration of "medical necessity" in determining coverage for urine testing and intensive outpatient treatment, both used in the treatment of substance abuse.

**16.** I am lead counsel in *K.L. v. HMO Colorado, Inc.*, 2020CV33344 (District Court, City and County of Denver Colorado), which is brought under Colorado law seeking insurance coverage for a minor's treatment at a Utah mental health provider.

### *FDCPA Class Cases*

**17.** I was co-lead counsel in *Muzuco v. Re$ubmitIt, LLC*, which settled at more than 100-cents-on-the-dollar for the class (certification decision at *Muzuco v. Re$ubmitIt, LLC,* 2013 WL 4566305 (S.D. Fla. Aug. 28, 2013).

**18.** I was lead counsel in a class case titled *Diakos v. HSS Systems, Inc.*, No. 14-61784 (S.D. Fla.), which settled on very favorable terms for the class. The

case challenged the practice of creditors filing liens against accident tort victims in Florida counties in which such filing was not permitted.

**19.**    I was appointed co-lead counsel in *Liles v. American Corrective Counseling Services, Inc.*, 231 F.R.D. 565 (S.D. Iowa 2005).

### *Consumer Class Cases*

**20.**    I was lead counsel in *Sanchez-Knutson v. Ford Motor Co.*, No. 14-cv-61344 (S.D. Fla.), a case brought under Florida's consumer protection statute. In that capacity, I represented a class of about 35,000 Florida purchasers and lessees of Ford Explorers. That class expanded to about a million Explorer owners/lessees when the case settled on a nationwide basis three days before class trial was to commence.

**21.**    I was appointed by Judge Frank to be on the advisory committee managing a nationwide consolidated class action titled *Bhatia, D.D.S. v. 3M Company*, No. 0-16-cv-01304 (D. Minn.) That case, involving defective dental implants, settled for about $35 million.

**22.**    I was co-lead counsel in a class action brought by Indiana purchasers of an allegedly defective sub-flooring heating system. That case settled for $10 million.

**23.**    I am lead counsel in *Le v. Asset Campus USA, LLC*, No. 4-20-cv-00447 (N.D. Fla.), which challenges the imposition of lease payments on college students after their schools were closed due to the Covid pandemic.

### *FLSA Collective Overtime Litigation*

**24.**    I was lead counsel in *Cooper v. SEPTA*, an FLSA overtime case involving about 1,000 bus and trolley drivers who opted into the litigation. I briefed the opposition to SEPTA's dispositive motion based on its claim of sovereign immunity, which the trial court, at 474 F. Supp.2d 720 (E.D. Pa. 2007), and later the Third Circuit, at 548 F.3d 296 (3rd Cir. 2008), rejected. The case later settled at about 100-cents-on-the-dollar.

**25.**    I was appointed co-lead counsel in *Morrison v. Ocean State Jobbers, Inc.*, 2010 WL 1991553 (D. Conn. May 17, 2010). The case subsequently settled.

5

**26.**    I was lead counsel in *Perry v. Randstad General Partner (US) LLC*. That case settled on favorable terms after I prevailed upon the 6th Circuit Court of Appeals to reverse the trial court's grant of summary judgment in favor of the defendant.

### *Age Discrimination Opt-In Cases*

**27.**    I was lead counsel in *Ribble v. Kimberly-Clark Corporation,* No. 1:09-cv-643 (E.D. Wis.). That case involved about 56 plaintiffs who sued their former employer based on a claim of age discrimination. The case settled in late 2012.

**28.**    I was co-lead counsel in *Pagliolo v. Guidant Corporation*, involving about 100 plaintiffs, which settled shortly after the trial court's summary judgment decision. 483 F. Supp.2d 847 (D. Minn. 2007).

### *Employee Status Class Litigation*

**29.**    I was appointed by Judge Miller in South Bend, Indiana, as one of six lawyers directed to manage and prosecute the claims of about 25,000 FedEx Home and Ground drivers who were challenging FedEx's classification of these drivers as independent contractors. These claims involved drivers from about 40 states and were consolidated before Judge Miller as a MDL. I was appointed class counsel in Wisconsin, North Carolina, South Carolina, Maryland, New Hampshire, Oregon and Rhode Island. After leaving Siegel Brill in 2012, I lost my status on the advisory committee. The New Hampshire case, however, was remanded by Judge Miller and I was lead counsel in its prosecution and eventual settlement.

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Jordan Lewis*

6

# EXHIBIT F



# Who We Are

Established by members of Milberg Phillips Grossman LLP, Sanders Phillips Grossman LLC, Greg Coleman Law PC, and Whitfield Bryson LLP, the firm represents plaintiffs in the areas of antitrust, securities, financial fraud, consumer protection, automobile emissions claims, defective drugs and devices, environmental litigation, financial and insurance litigation, and cyber law and security.

For over 50 years, Milberg and its affiliates have been protecting victims' rights and have recovered over $50 billion for our clients. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride ourselves on providing stellar client service. We have repeatedly been recognized as leaders in the plaintiffs' bar and appointed to leadership roles in prominent national mass torts and class actions.

*Milberg challenges corporate wrongdoing through class action, mass tort, consumer, and shareholder rights services, both domestically and globally.*

Milberg's previous litigation efforts helped to create a new era of corporate accountability that put big companies on notice. The strategic combination of four leading plaintiffs' firms offers clients expanded capabilities, greater geographical coverage, enhanced financial breadth, and increased operational capacity. It also enables the firm to serve diverse and global clients who are seeking to enforce their rights against well-financed corporations—wherever they operate.

**www.milberg.com**

# Practice Areas

### Antitrust & Competition Law

Today, on a global scale, consolidated corporate entities exercise dominating market power, but proper enforcement of antitrust law ensures a fair, competitive marketplace. Milberg prosecutes complex antitrust class actions against large, well-funded corporate defendants in healthcare, technology, agriculture, and manufacturing. Our leading practitioners successfully represent plaintiffs affected by price-fixing, monopolization, monopoly leveraging tying arrangements, exclusive dealing, and refusals to deal. The firm continues aggressively vindicating rights of plaintiffs victimized by antitrust violations, holding companies accountable for anticompetitive behavior.

### Complex Litigation

With 50 years of vetted success, Milberg handles complex, high-stakes cases at any stage of the litigation process. Our attorneys have experience litigating complex cases for business and plaintiffs outside of class action context, business torts, contract disputes, anti-SLAPP motions, corporations, LLCs, partnerships, real estate, and intellectual property. The repeated success of our attorneys against well-funded adversaries with top-tier counsel has established Milberg as the go-to firm for complex litigation.

### Consumer Products

Milberg's consumer litigation group focuses on protecting victims of deceptive marketing and advertising of goods and services, or those who have bought defective products. Our attorneys are experienced in handling a wide array of consumer protection lawsuits, including breach of contract, failure to warn, false or deceptive advertising of goods and services, faulty, dangerous, or defective products, warranty claims, unfair trade practices, and notable product cases. Milberg has achieved real-world recoveries for clients, often requiring corporations to change the way they do business. Our team of attorneys has extensive experience representing plaintiffs against well-resourced and sophisticated defendants.

### Consumer Services

Consumers have rights, and companies providing consumer services have a legal obligation to abide by contractual agreements made with customers. Companies must also follow state and federal laws that prohibit predatory, deceptive, and unscrupulous business practices. Milberg's Consumer Services litigation group protects consumers whose rights have been violated by improperly charged fees, predatory and discriminatory lending, illegal credit reporting practices, and invasion of privacy. We also enforce consumer rights by upholding The Fair Credit Reporting Act and Telephone Consumer Protection Act.

**Class Action Lawsuits**

Milberg pioneered federal class action litigation is recognized as a leader in defending the rights of victims of corporate and large-scale wrongdoings. We have the manpower, resources, technology, and experience necessary to provide effective representation in nationwide class action lawsuits. Our attorneys have led class actions resulting in settlements up to billions of dollars across a variety of practice areas, including defective consumer products, pharmaceutical drugs, insurance, securities, antitrust, environmental and toxic torts, consumer protection, and breach of contract.

**Dangerous Drugs & Devices**

For some patients, medication and medical devices improve their lives. For others, the drugs and equipment have questionable benefits, at best, and serious, unintended side effects at worst. Taking on drug and device makers requires a law firm that can stand up to the world's largest, most powerful companies. Our defective drug lawyers have held leadership roles in many national drug and device litigations, recovering billions of dollars in compensation.

**Data Breach, Cyber Security & Biometric Data Lawsuits**

Technology changes faster than laws regulate it. Staying ahead of legal technical issues requires a law firm that can see the full picture of innovation and apply past lessons to navigate fast-moving developments, putting consumers ahead of corporate interests. Our data breach and privacy lawyers work at the cutting edge of technology and law, creating meaningful checks and balances against technology and the companies that wield it. Cyber security threats continue evolving and posing new consumer risks. Milberg will be there every step of the way to protect consumer privacy and hold big companies accountable.

**Environmental and Toxic Torts Litigation**

Litigation is key in fighting to preserve healthy ecosystems and hold environmental lawbreakers accountable. But in today's globalized world, pollutants—and polluters—are not always local. Corporations have expanded their reach and ability to cause harm. Our environmental litigation practice focuses on representing clients in mass torts, class actions, multi-district litigation, regulatory enforcement, citizen suits, and other complex environmental and toxic tort matters. The companies involved in harmful environmental practices are large, wealthy, and globally influential, but as an internationally recognized plaintiffs' firm, Milberg has the strength and resources to present clients seeking to enforce their environmental rights against well-financed corporations—wherever they operation.

**Finance & Insurance Litigation**

Big banks and public insurance firms are obligated by their corporate charters to put shareholders' interests ahead of client interests. However, that doesn't mean they can deceive clients to profit at their expense. Milberg's attorneys handle hundreds of insurance-related disputes, including first party bad faith insurance cases, business interruption cases, and hurricane insurance cases. As one of the nation's stop class action law firms, we are well-positioned to pursue insurance bad faith cases on a statewide or nationwide basis.

**Public Client Representation**

The ability of governments to serve and protect their residents is often threatened by the combination of lower revenues and rising costs. Budget shortfalls are increasing in part because private companies externalize costs, but while corporate profits grow, public interest pays the price. Effectuating meaningful change through litigation, Milberg partners with state and local governments to address the harms facing its residents. Internationally, Milberg's Public Client Practice has achieved success against global powerhouse corporations, including drug, tobacco, mining, and oil and gas companies.

**Securities Litigation**

Over 50 years ago, Milberg pioneered litigation claims involving investment products, securities, and the banking industry by using class action lawsuits. Our litigation set the standard for case theories, organization, discovery, methods of settlement, and amounts recovered for clients. Milberg continues to aggressively pursue these cases on behalf of institutional and individual investors harmed by financial wrongdoing. Inventors of securities class actions, Milberg has decades of experience holding companies accountable both in the United States and globally.

**Whistleblower & Qui Tam**

Blowing the whistle on illegal or unethical conducted is a form of legally protected speech. Milberg's whistleblower attorneys have led actions that returned hundreds of millions of dollars in ill-gotten gains, resulting in significant awards of our clients.Our legacy of standing up to corporate power extends to advocating for greater transparency. In addition to representing whistleblowers, we fight back against corporate-backed laws seeking to deter them from making disclosures.

*"Scoring **impressive victories** against companies guilty of outrageous behavior."*

– Forbes

*" A **powerhouse** that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers"*

– New York Times

# Recent Leadership Roles

In re **Google Play** Consumer Antitrust Litigation, 20-CV-05761 (N.D. Cal.)

In re: **Elmiron** (Pentosan Polysulfate Sodium) Products Liability Litigation MDL No. 2973

In re: **Johnson & Johnson** Talcum Powder Products Marketing, Sales Practices & Products Liability Litigation

In re: **Blackbaud** Data Privacy MDL No. 2972

In re: **Paragard** IUD Products Liability Litigation MDL No. 2974

> *"Feared by corporate America."*
> - Forbes

# Notable Recoveries

**$3.2 Billion** Settlement – In re Tyco International Ltd., Securities Litigation, MDL 1335 (D.N.H.)

**$4 Billion** Settlement – In re Prudential Insurance Co. Sales Practice Litigation, No. 95-4704 (D.N.J.)

**$1.14 Billion** Settlement – In re Nortel Networks Corp. Securities Litigation, No. 01-1855 (S.D.N.Y.)

**$1 Billion-plus** Trial Verdict – Vivendi Universal, S.A. Securities Litigation

**$1 Billion** Settlement – NASDAQ Market-Makers Antitrust Litigation

**$1 Billion** Settlement – W.R. Grace & Co

**$1 Billion-plus** Settlement – Merck & Co., Inc. Securities Litigation

**$775 Million** Settlement – Washington Public Power Supply System Securities Litigation

# Locations

**CHICAGO**
221 W. Monroe Street Suite, Suite 2100
Chicago, Illinois 60606

**NEW JERSEY**
1 Bridge Plaza North, Suite 275
Fort Lee, New Jersey 07024

**NEW YORK**
100 Garden City Plaza
Garden City, NY 11530

**NORTH CAROLINA**
900 W. Morgan Street
Raleigh, North Carolina 27603

**PUERTO RICO**
1311 Avenida Juan Ponce de León
San Juan, Puerto Rico 00907

**SEATTLE**
1420 Fifth Ave, Suite 2200
Seattle, Washington 98101

**SOUTH CAROLINA**
825 Lowcountry Blvd, Suite 101
Mount Pleasant, South Carolina 29464

**TENNESSEE**
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929

518 Monroe Street
Nashville, Tennessee 37208

**WASHINGTON D.C.**
5335 Wisconsin Avenue NW , Suite 440
Washington, D.C., 20015





**www.milberg.com**

**Attorneys who have worked on this case**

**Greg Coleman**
**Senior Partner**

Greg Coleman is a Senior Partner of Milberg Coleman Bryson Phillips Grossman LLP and based in Knoxville, Tennessee. He has over 30 years of trial and appellate experience. Greg received his B.A. with highest honors and distinction from Jacksonville State University in 1986. He attended The University of Tennessee College of Law, graduating in 1989. In addition to distinguishing himself academically, Mr. Coleman was a member of the National Trial Moot Court Team, was the recipient of the American Jurisprudence Award for National Trial Team and was listed in Who's Who Among Rising Young Americans. In addition, the College of Law bestowed upon Greg the honor of inclusion into the National Order of Barristers for outstanding oral advocacy and trial skills.

Mr. Coleman's practice focuses on class actions, products liability, medical practice, personal injury, complex multi-district litigation, litigation, toxic torts, premises liability, ERISA, ERISA class actions, drug and medical device litigation, and workers' compensation.
Leadership Roles

He is co-lead counsel in a defective products case against Electrolux where he and co-counsel successfully obtained a settlement on behalf of a class of more than one million members regarding defectively manufactured dryers. The settlement resulted in an expected utilization settlement value of over $35 Million. Greg was lead trial counsel in an ERISA class action against AK Steel Corporation where he successfully obtained a $178.6 million settlement on behalf of a class of over 3,000 retirees of AK Steels Butler Works Plant in Pennsylvania in 2011.

Mr. Coleman was also lead trial counsel in an ERISA class action case against AK Steel Corporation where he successfully obtained a $15.8 million settlement on behalf of a class of over 250 retirees of AK Steels Zanesville Works Plant in Ohio in 2012. He was lead counsel in a week-long trucking accident trial where he obtained the largest negligence verdict in the state of Tennessee for 2009. *Jenkins v. Keeble*, Davidson County. He has been co-lead counsel in a class action case involving Jewelry Television. He was also co-lead counsel in a Fair Labor Standards Act case against Westgate Resorts styled *Davis v. Planet Hollywood Las Vegas* in U.S.D.C., District of Nevada*, which has now been settled. Additionally, Greg was co-lead counsel in a Fair Labor Standards Act case against Westgate Resorts styled *Watson v. Westgate Resorts, Inc.* in U.S.D.C., Eastern District of Tennessee, which has been settled. Greg Coleman has been and is currently involved in complex product liability and drug product liability litigation and has tried more than one hundred (100) jury trials and countless other bench trials during his career. He has tried jury trials in states other than Tennessee and has been admitted *pro hac vice* in complex matters around the country, including a six-week long jury trial in Sacramento, California, for which he was lead counsel.

**Arthur Stock**
**Partner**

**Arthur Stock** has over 30 years of litigation experience.  Throughout his career, he has represented plaintiffs in commercial, financial, securities, and consumer class actions, and has his practice has concentrated in cases concerning investment loses.  His recent settlements include *Glascock v. Serco, Inc.,* (E.D. Va. 2021), and *Rampey v. West Corporation* (S.D Ala. 2022, final approval pending), class actions brought on behalf of ERISA Pension Plan participants, where he secured significant monetary relief for current and former employees for alleged breaches of fiduciary duty by pension fund managers.

Before joining Milberg, Mr. Mr. Stock was a principal litigator in numerous class actions, including: *Merrill Lynch Inc. Securities Litigation* which resulted in a $475 million settlement on behalf of investors in Merrill Lynch securities; *Safety-Kleen Corp. Securities Litigation*, which ended with  class action settlements of $45 million for investors in a bankrupt business, including a substantial contribution from a major accounting firm; *Lee v. Enterprise Leasing Co*., in which class members recovered 80% of claimed damages from allegedly illegal charges regarding Nevada airport car rentals; and *Somogyi v. Freedom Mortgage*, an action in which class members recovered $9.5 million from a business that allegedly placed telemarketing calls to consumers without their consent.

Mr. Stock is a graduate of Yale University (B.A. with distinction in economics), and the Duke University School of Law, (J.D. with high honors), where he served as Articles Editor of the *Duke Law Journal*.  Before entering private practice, Mr. Stock served as a Law Clerk to the Honorable Jackson L. Kiser, United States District Court of the Western District of Virginia. He is admitted to practice law in New Jersey, North Carolina, Pennsylvania, and Tennessee; the Seventh and Ninth Circuit Courts of Appeal; and the United States Tax Court.

**Ryan P. McMillan** is a native of East Tennessee and grew up in Oak Ridge. There he was active in the Boy Scouts and competitive rowing. He attended the University of Mary Washington in Fredericksburg, Virginia, where he received his Bachelor's Degree, cum laude, in History.  Ryan returned to Tennessee in 2006 and later went to law school at the University of Tennessee, where he focused primarily on  employment law. While in law school he clerked for the United States Department of Energy and London and Amburn, P.C. He also was a staff editor for the Tennessee Journal of Law and Policy and received the Patrick L. Hardin Award for Excellence in employment and Labor Law.  After law school, Ryan worked at Dale Buchanan and Associates for many years where he represented thousands of disabled clients.  In 2019, Ryan joined the Milberg Firm to continue his work in representing plaintiffs, primarily  in class action and complex litigation matters.

# EXHIBIT G

# FIRM RESUME

## WEXLER BOLEY & ELGERSMA LLP

55 W. Monroe St. Suite 3300 // Chicago, IL 60603

Phone 312.346.2222 // Fax 312.346.0022

www.wbe-llp.com  //  info@wbe-llp.com

**WBE** WEXLER BOLEY & ELGERSMA LLP

www.wbe-llp.com

# Table of Contents

The Firm.................................................................................2

Leadership Positions.............................................................4

Successes...............................................................................7

Practice Areas and Representative Cases............................9

    Antitrust............................................................................9

    Business and Commercial Litigation..............................12

    Consumer Protection.......................................................13

    Privacy and Information Security....................................13

    Government Representation............................................14

    Healthcare Litigation......................................................14

    Securities and Corporate Governance...........................15

    Whistleblower and False Claims.....................................16

Our Professionals..................................................................17

**WBE** WEXLER BOLEY & ELGERSMA LLP

# The Firm

## WHO WE ARE.

Wexler Boley & Elgersma LLP is nationally recognized as a leading firm in complex class action and multidistrict litigation, from investigation to trial and appeals, within the following legal areas:

> // Antitrust
>
> // Business and Commercial Litigation
>
> // Consumer Protection
>
> // Government Representation
>
> // Healthcare Litigation
>
> // Securities and Corporate Governance
>
> // Whistleblower and False Claims

## WE WORK FOR ALL.

At WBE, we rely on the justice system to hold the powerful accountable for conduct that harms others. We are dedicated to protecting the rights and interests of all and, in this pursuit, represent shareholders, consumers, pension plans, institutional investors, businesses, governments, and organizations from all over the world. We act with the utmost integrity in our determination to achieve the most meaningful relief for our clients.

## WE GET RESULTS.

WBE is frequently retained by clients to pursue high-stakes litigation – often against some of the largest corporations represented by the most renowned law firms in the country. We regularly are asked by co-counsel to work with them and their clients on cases of wide-ranging importance. Through this work, we have helped shape the law and continue to pave the way for future successes for those aggrieved by fraud, antitrust violations, unfair competition, and other types of unlawful conduct.

## OUR WORK IS RECOGNIZED.

WBE attorneys have been recognized by their peers as well as by legal organizations for their outstanding level of service and commitment to the firm's cases and clients. Partner Ken Wexler has an **AV Preeminent** rating from Martindale-Hubbell – the highest peer review rating. Ken has been named an **Illinois Super Lawyer** since 2008, and other attorneys have been named Rising Stars.

WBE was named a highly recommended Illinois litigation firm in the 2012 inaugural edition of **Benchmark Plaintiff,** with Ken Wexler named as a local litigation star. Ken Wexler has received the same honors every year since.

---

"Despite a small roster of attorneys, (Wexler Boley & Elgersma LLP) regularly goes toe-to-toe with some of the largest companies and corporations in the world."

Benchmark Plaintiff, 2012

---

"I admire very much the work that you have done in this case, and you have taught me something. I think I'm more knowledgeable and a better judge because I've had contact with you. And thank you very much."

Hon. G. Patrick Murphy, *Clancy-Gernon Funeral Homes, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 09 Civ. 1008 (S.D. Ill.)

---

"I wanted to express appreciation again to class counsel for taking this case. I believe these are the kind of cases Federal Courts should do and are appropriate for class resolution."

Hon. Patti B. Saris, *In re Pharmaceutical Industry Average Wholesale Price Litig.,* MDL No. 1456, No. 01-cv-12257-PBS (D. Mass.) (final settlement hearing, with defendant GlaxoSmithKline, July 19, 2007)

---

"[T]his multiplier is justified by the risk of non-recovery in this case and the need to reward counsel for their significant achievement on behalf of the End-Payor Class . . . End-Payor Plaintiffs' counsel are highly experienced in complex antitrust class action litigation . . . . they have obtained a significant settlement for the Class despite the complexity and difficulties of this case."

Hon. John R. Padova, *Nichols v. SmithKline Beecham Corp.,* No. 00 Civ. 6222, 2005 U.S. Dist. LEXIS 7061, at *71-72, 79 (E.D. Pa. Apr. 22, 2005)

---

**WBE** WEXLER BOLEY & ELGERSMA LLP

# Leadership Positions

Wexler Boley & Elgersma is frequently appointed as lead counsel and to plaintiff steering committees in complex, high-stakes litigation. Some of those appointments include:

| CASE | COURT | APPOINTMENT |
|------|-------|-------------|
| Hogan, et al. V. Amazon.com, Inc., No. 21 C 3169 | N. D. Ill | Interim Co-Lead Counsel |
| In Re: Midwestern Pet Foods Marketing, Sales Practices and Product Liability Litigation, No. 3:21-cv-00007 | S. D. Ind. | Interim Co-Lead Counsel |
| Ciofoletti, et al. v. Securian Financial Group, et al., No. 18-cv-03025-JNE-ECW | D. Minn. | Interim Co-Lead Counsel |
| In re Xyrem (Sodium Oxybate) Antitrust Litigation, No. 20-md-02966-LHK | N.D. Cal. | Plaintiffs' Steering Committee |
| In re: DPP Beef Litigation, No. 20-cv-01319-JRT-HB | D. Minn. | Plaintiffs' Steering Committee |
| Powell Prescription Center, et al. v. Surescripts, LLC, No. 1:19-cv-006627 | N.D. Ill | Interim Co-Lead Counsel |
| Precious Plate, Inc., et al. v. Olin Corporation, et al., No. 1:19-cv-00990 | W.D. NY | Interim Co-Lead Counsel |
| In re Broiler Chicken Antitrust Litigation No. 16-cv-8637 | N.D. Ill. | Liaison Class Counsel |
| United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund, et. al. v. Allergan, PLC No.: 15-cv-12731 | D.C. Mass. | Co-Lead Counsel |
| In re Nexium (Esomeprazole) Antitrust Litig., 12-md-02409 | D. Mass. | Co-Lead Counsel |
| In re Actos End-Payor Antitrust Litigation, Case No. 13-cv-09244 | S.D.N.Y. | Interim Co-Lead Counsel |

| CASE | COURT | APPOINTMENT |
|------|-------|-------------|
| Underwood v. I.F.F.A. Servs., No. 09-390-GPM; Clancy-Gernon Funeral Homes, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 09-1008-GPM; Pettett Funeral Home, Ltd. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 10-1000-GPM | S.D. Ill. | Lead Settlement Class Counsel |
| Celebrex Antitrust Litigation No: 14-cv-0395 | E.D. Va | Interim Co-Lead Class Counsel |
| In re Suboxone Antitrust Litigation, MDL 2445 | E.D. Pa. | Interim Co-Lead Class Counsel |
| In re Niaspan Antitrust Litigation, Case No. 13-md-02460 | E.D. Pa. | Interim Co-Lead Counsel |
| Levine v. American Psychological Association, Inc., Case No. 10-cv-01780 | D.D.C. | Co-Lead Class Counsel |
| Roberts v. Electrolux Home Products Inc., Case No. 12-cv-1644 | C.D. Cal | Co-Lead Class Counsel |
| In re Skelaxin (Metaxalone) Antitrust Litigation, MDL No. 2343 | E.D. Tenn. | Plaintiffs' Executive Committee |
| In re Effexor XR Antitrust Litigation, Case No. 11-cv-05661 | D.N.J. | Plaintiffs' Executive Committee |
| In re Flonase Antitrust Litigation, Case No. 08-cv-3301 | E.D. Pa. | Plaintiffs' Executive Committee |
| In re Prograf Antitrust Litigation, Case No. 11-cv-11870 | D. Mass. | Plaintiffs' Executive Committee |
| In re Lipitor Antitrust Litigation, MDL No. 2332 | D.N.J | Interim Co-Lead Class Counsel |
| Gomez v. PNC Bank, National Association No. 1:12-cv-1274 | N.D. Ill. | Lead Class Counsel |
| In re Wellbutrin XL Indirect Purchaser Antitrust Litigation, Case No. 2:08-CV-02433-MAM | E.D. Pa. | Co-Lead Class Counsel |

| CASE | COURT | APPOINTMENT |
|------|-------|-------------|
| Carter v. Allstate Ins. Co., Case No. 02-CH-16092 | Cir. Ct. Ill. – Cook County | Co-Lead Counsel |
| In re Webloyalty.com, Inc. Marketing and Sales Practices Litigation No.: MDL No. 1820 | D. Mass. | Co-Lead Counsel |
| Levie v. Sears Roebuck & Co. et al, No. 1:04-cv-7643 | N.D.Ill. | Liaison Class Counsel |
| In re Medtronic, Inc. Implantable Defibrillators Products Liability Litigation, MDL No. 1726 | D. Minn. | Plaintiffs' Steering Committee |
| In re Pet Foods Products Liability Litigation, MDL No. 1850 | D.N.J. | Co-Lead Counsel |
| New England Carpenters Health Benefits Fund v. First Databank, Case No. 1:05-CV-11148 | D. Mass. | Co-Lead Class Counsel |
| In re BP Products North America, MDL No. 1801 | N.D. Ill. | Co-Lead Class Counsel |
| In re Hypodermic Products Antitrust Litigation No.: MDL No. 1730 | D.N.J | Co-Lead Class Counsel |
| In re Pharmaceutical Industry Average Wholesale Price Litigation, MDL No. 1456 | D. Mass. | Co-Lead Counsel |
| Nichols v. SmithKline Beecham Corp., Case No. 2:00-CV-06222-JP | E.D. Pa. | Co-Lead Class Counsel |
| Virginia M. Damon Trust v. Mackinac Financial Corp., f/k/a North Country Financial Corp., Case No. 2:03-CV-0135 | W.D. Mich. | Co-Lead Counsel |
| Stephen A. Ellerbrake and John E. Casey v. Campbell-Hausfeld et al. No.: 01-L-540 | Cir. Ct. Ill. – St. Clair County | Co-Lead Counsel |

# Successes

Since its founding, the firm has participated in cases achieving millions of dollars in settlements and savings for its clients and consumers. In cases in which the firm has served as Co-Lead Counsel, it has recovered over a billion dollars for its clients. Listed below are some of the firm's representative settlements and verdicts.

## SIGNIFICANT RECOVERIES AND VERDICTS

| CASE | COURT | RECOVERY |
| --- | --- | --- |
| *Roberts v. Electrolux Home Products, Inc.*, Case No. 12-cv-01644 | C.D. Cal. | Settlement valued at more than $35.5M |
| *In re Hypodermic Products Antitrust Litigation*, MDL No. 1730 | D.N.J. | Settlement of $22M |
| *New England Carpenters Health Benefits Fund v. First Databank*, Case No. 05-cv-11148 | D. Mass | $350M settlement with McKesson; $2.7M with FDB and Medispan |
| *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456 | D. Mass. | Multiple settlements totaling more than $350M |
| *In re Guidant Defibrillators Products Liability Litigation*, MDL No. 1708 | D. Minn. | $195M |
| *Underwood v. I.F.F.A. Servs.*, No. 09-390-GPM; *Clancy-Gernon Funeral Homes, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 09-1008-GPM; *Pettett Funeral Home, Ltd. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 10-1000-GPM | S.D. Ill. | $41.15M |
| *In re Flonase Antitrust Litigation*, Case No. 08-cv-3301 | E.D. Pa. | $46M |
| *In re OSB Antitrust Litigation*, Case No. 06-cv-00826 | E.D. Pa. | $120M |
| *In re Pet Food Products Liability Litigation*, MDL No. 1850 | D.N.J. | $24M |
| *In re Webloyalty.com, Inc. Marketing and Sales Practices Litigation*, MDL No. 1820 | D. Mass. | Allowed customers to recover up to 100% of unauthorized charges |

| CASE | COURT | RECOVERY |
|---|---|---|
| *In re BP Prods. North America, Inc. Antitrust Litigation*, MDL No. 1801 | N.D. Ill. | $15.25M |
| *In re Medtronic Inc. Implantable Defibrillator Products Liability Litigation*, MDL No. 1726 | D. Minn. | $75M |
| *Wington v. CB Richard Ellis, Inc.*, Case No. 02-cv-6832 | N.D. Ill. | A favorable settlement that made available monetary relief for eligible claimants, as well as a charitable contribution to the Commercial Real Estate Women Network |
| *In re Pressure Sensitive Labelstock Antitrust Litigation*, MDL No. 1556 | E.D. Pa. | $46.5M |
| *In re Synthroid Marketing Litigation*, MDL No. 1182 | N.D. Ill. | $87.4M |
| *Vista Healthplan, Inc. v. Bristol-Myers Squibb Co.*, Case No. 01-cv-01295 | D.D.C. | $135M settlement |
| *Nichols v. Smithkline Beecham Corp.* ("Paxil"), Case No. 00-cv-6222 | E.D. Pa. | $65M |

# Practice Areas

Wexler Boley & Elgersma is a nationally recognized leader in complex class action and multidistrict litigation, with a commitment to excellence and achieving meaningful relief for its clients. The firm's diverse litigation practice spans the areas of antitrust, business and commercial litigation, consumer fraud litigation, government representation, healthcare litigation, securities and corporate governance, and whistleblower and false claims litigation.

## ANTITRUST

Unfortunately, individuals and businesses sometimes violate the rules of our market-based system, imposing artificially inflated prices on market participants. Conduct prohibited by state and federal antitrust laws can take the form of illegally-maintained monopolies, price fixing, the improper exchange of competitive information, patent abuses, and other forms of unfair competition.

WBE is a leader in private antitrust enforcement, litigating a wide variety of class action cases involving many prominent industries, including the pharmaceutical, entertainment, service rental, lumber, energy, and electronic products industries.

Representative cases in the firm's antitrust practice area include:

*POWELL PRESCRIPTION CENTER, ET. AL. V. SURESCRIPTS, LLC, ET. AL., NO. 1:19-CV-06627 (N.D. Ill.)*
WBE, along with co-counsel, filed this class action suit alleging that Surescripts uses its monopolistic market share to conduct anticompetitive practices in the e-prescription markets, such as entering into loyalty agreements with certain customers that allow the company to charge higher transaction fees than would be possible in a competitive market, as well as issuing threats against customers to ensure no other market competitors emerged. The lawsuit also names RelayHealth and Allscripts— competitors that Plaintiffs allege entered into non-compete and exclusive dealing an agreements with SureScripts in exchange for a portion of SureScripts' monopoly profits.

*PRECIOUS PLATE, INC., ET. AL. V. OLIN CORPORATION, ET. AL., NO. 1:19-cv-00990 (W.D. NY.)*
WBE and its co-counsel filed this class action suit alleging that the largest domestic suppliers of caustic soda engaged in a conspiracy to fix the price at which caustic soda was sold in the United States. After years of declining prices, plaintiffs allege that the defendants engaged in coordinated supply reductions and redirection of domestic caustic soda supply to export markets, which allowed them to raise the price of caustic soda by nearly 50% over three years. These price increases would not have been possible absent defendants' coordinated and anticompetitive conduct.

*IN RE BROILER CHICKEN ANTITRUST LITIGATION, 16-CV-8637 (N.D. ILL.)*

WBE, along with co-counsel, filed this class action alleging that the nation's largest chicken producers (such as Tyson and Pilgrims) agreed with each other to limit the supply of broiler chickens, in order to raise the prices on chicken and chicken products. The Court appointed WBE as Liaison Counsel on behalf of a class of restaurants (and institutions, such as prisons and nursing homes) that purchased the defendants' chicken from a wholesaler. The plaintiffs are seeking to recover damages suffered when they overpaid on purchases of the defendants' chicken. The defendants filed motions to dismiss the case, but in November of 2017 the Court denied those motions almost entirely, issuing a 92-page opinion. The parties are in the discovery phase of the case, which will last into 2019.

*UNITED FOOD AND COMMERCIAL WORKERS UNIONS AND EMPLOYERS MIDWEST HEALTH BENEFITS FUND, ET. AL. V. ALLERGAN, PLC NO.: 15-CV-12731 (D.C. MASS.)*

WBE filed this case against Allergan in June 2015 on behalf of a putative class of end-payors alleging that Plaintiffs and all Asacol end-payors were harmed by defendants' conduct in engaging in an unlawful "product hop." Patients had always paid for the brand name version of Asacol. In July 2013, a generic version was planned for release on the market, but because of the defendant's withdrawal of the drug from the market, a generic version does not exist and consumers are still paying higher prices for similar brand name versions. WBE was appointed co-lead counsel. The Hon. Judge Denise J. Casper of the United States District Court District of Massachusetts granted plaintiffs' motion for class certification and denied the defendants' motion for summary judgement. The First Circuit stayed the trial set to begin on January 22, 2018 pending the resolution of Defendants' appeal of the District Court's class certification decision.

*IN RE NEXIUM ANTITRUST LITIG., MDL NO. 2409 (D. MASS.)*

WBE, along with co-counsel, filed this antitrust class action, alleging that defendant AstraZeneca entered into non-competition agreements with a number of generic pharmaceutical manufacturers in order to delay marketing entry of generic versions of its blockbuster drug Nexium.  Starting in October 2014, WBE participated in a six-week jury trial in the action; it was the first trial of a "reverse payment" antitrust action since the Supreme Court's *Actavis* decision.  While the jury made several key findings in favor of the Plaintiffs, it ultimately returned a verdict in favor of defendants AstraZeneca and Ranbaxy.  Plaintiffs have since moved for a new trial, and end-payor plaintiffs (represented by WBE and others) have moved for injunctive relief.

*IN RE LIPITOR ANTITRUST LITIG., MDL. NO. 2332 (D.N.J.)*

WBE filed this class action against Pfizer Inc. and Ranbaxy Pharmaceuticals Inc., among others, seeking damages and equitable relief on behalf of end-payors of Lipitor and/or its generic bioequivalents for violations of antitrust and consumer protection laws. Plaintiffs allege that, among other things, defendants fraudulently procured a patent covering Lipitor and entered into an

anticompetitive settlement with Ranbaxy in order to keep generic versions of the blockbuster drug off of the market.

*NICHOLS V. SMITHKLINE BEECHAM CORP. ("PAXIL"), NO. 00-CV-6222 (E.D. PA.)*

WBE served as co-lead counsel in this case involving alleged efforts by GlaxoSmithKline, including "sham" patent litigation, to keep generic versions of Paxil off the market. This case is believed to be one of the first, if not the first, to allege misuse of patents to delay generic competition in a pharmaceutical market brought under Section 2 of the Sherman Act (rather than Section 1). The case settled for $65 million.

*IN RE EFFEXOR XR ANTITRUST LITIG., NO. 11-CV-5661 (D.N.J.)*

WBE was appointed to the Indirect Purchaser Class Executive Committee in this antitrust litigation against pharmaceutical manufacturer Wyeth, Inc. regarding its antidepressant Effexor XR. The complaint alleges that Wyeth fraudulently obtained a number of method-of-use patents for Effexor XR and engaged in sham litigation against sixteen potential generic competitors in an effort to protect the Effexor XR monopoly. Plaintiffs further allege that Wyeth entered into an anticompetitive settlement with the first generic ANDA filer, Teva Pharmaceutical Industries, Ltd., and its US subsidiary Teva Pharmaceuticals USA, Inc., which delayed the entry of generic Effexor XR competitors for more than two years.

For more information about the firm's Antitrust Litigation practice, please visit the firm's website, at http://www.wbe-llp.com/practice-areas/antitrust-litigation/.

# BUSINESS AND COMMERCIAL LITIGATION

Confronting well-heeled and well-represented adversaries, WBE attorneys represent businesses throughout the country in complex disputes ranging from breach of contract claims to business torts, including fraud, unfair competition, and breaches of fiduciary duty. The firm has represented small businesses on a contingency basis when those businesses were faced with litigating against larger adversaries that engaged in unfair and unlawful conduct.

Although WBE attorneys are always prepared to offer zealous advocacy for the firm's clients in state or federal courts, they also have employed creative approaches to successfully handle difficult cases through alternative dispute resolution such as mediation or arbitration. The firm's willingness to extend its services in cases that other firms are unwilling or unable to handle is just another testament to its commitment to positive change.

For more information about the firm's Business and Commercial Litigation practice, including summaries of representative cases, please visit the firm's website, at http://www.wbe-llp.com/practice-areas/business-commercial-litigation/.

# CONSUMER PROTECTION

WBE is a national leader in prosecuting consumer protection claims on behalf of both businesses and individuals in state and federal courts throughout the country. The firm has successfully prosecuted cases involving, but not limited to:

>      // unlawful environmental dumping
>      // improper Internet "lead generation" practices
>
>      // unfair billing practices of telecommunications companies
>
>      // mislabeling of dietary supplements
>
>      // the sale of defective drugs and household appliances
>
>      // unfair payment policies of health insurance companies
>
>      // false advertising by Internet service providers
>
>      // deceptive practices of social networking sites
>
>      // unlawful debt reduction scams

For more information about the firm's Consumer Protection practice, including summaries of representative cases, please visit the firm's website, at http://www.wbe-llp.com/practice-areas/consumer-protection/.

# PRIVACY AND INFORMATION SECURITY

In a digital age, there are few assets more valuable to companies than data on current or potential customers. Because of this, many companies place more importance on obtaining personal information than concern for consumer privacy. WBE is actively protecting the privacy rights of individuals by taking action against companies who disregard privacy laws and mishandle consumer data. Our efforts include matters involving:

// Electronic collection and disclosure of personal information to third parties without proper consent, in violation of federal and state privacy laws, including the California Consumer Privacy Act of 2018 (CCPA)

// Violations of the Illinois Biometric Information Privacy Act (BIPA), which is intended to safeguard personal biometric identifiers such as fingerprints, voice prints, and face, hand, and retina features

// Data breaches that result in personal information being exposed to nefarious parties

// Unsolicited text messages, excessive robocalls, and junk faxes; and

// Disregard for numerous privacy laws, including the Electronic Communications Privacy Act (ECPA), Children's Online Privacy Protection Act (COPPA), the Gramm-Leach-Biley Act that require financial institutions to provide consumer privacy notices explaining their information sharing practices, and similar federal and state privacy laws.

## GOVERNMENT REPRESENTATION

Our state, local, and federal governments are often victims of the same securities and healthcare frauds that are inflicted on businesses and individuals in the private sector. The government is an insurer through Medicare or Medicaid, and therefore overpays when brand name pharmaceutical manufacturers unlawfully suppress generic competition for their drugs. Similarly, government entities are investors with respect to their treasuries and pension plans. Thus, when false and misleading statements are issued by public companies, government entities are entitled to the same securities fraud damages that are available to private investors. Governments are also owed fiduciary duties in certain circumstances, and are often parties to multi-million-dollar contracts, the breach of which can result in significant damages.

WBE helps government entities recover the funds taken from them through the unlawful conduct of others. Ultimately, those funds belong to taxpayers, who are the intended beneficiaries of government services. WBE believes that government officials have not only the right, but also the obligation, to try to recover these assets for their constituents.

For more information about the firm's Government Representation practice, including summaries of representative cases, please visit the firm's website, at http://www.wbe-llp.com/practice-areas/government-representation/.

## HEALTHCARE LITIGATION

In the wake of ever-rising healthcare costs, WBE is at the forefront of legal action being taken nationwide to challenge wide-ranging fraudulent and unfair conduct in the healthcare industry. Our firm has prosecuted claims for:

> // reporting of fraudulent pharmaceutical prices

> // failures to recall defective health devices

> // an industry-wide conspiracy to increase the prices of over 400 brand name drugs

**WBE** WEXLER BOLEY & ELGERSMA LLP

// the filing of baseless lawsuits and administrative actions to delay generic drug entry

// challenging pharmaceutical manufacturers' marketing of prescription opioids

// a pharmacy's illegal substitution of more expensive versions of generic drugs

Bringing claims under RICO, the antitrust laws, state consumer protection statutes, and more, WBE has successfully prosecuted cases against some of the largest companies in the healthcare industry, including McKesson Corp., Becton Dickinson, AstraZeneca, GlaxoSmithKline, Abbott Laboratories, Bristol-Myers Squibb, Johnson & Johnson, and Bayer Corporation.

WBE's case against McKesson Corp. for manipulating the reimbursement benchmark for drug purchases resulted in one of the largest, if not the largest, RICO settlements ever.

For more information about the firm's Healthcare Litigation practice, including summaries of representative cases, please visit the firm's website, at http://www.wbe-llp.com/practice-areas/healthcare-litigation/.

## SECURITIES AND CORPORATE GOVERNANCE

Over the last few years, we have learned all too well that lack of regulation and oversight can lead to corrupt corporate leadership, lack of transparency regarding the risks of significant investments, and the repeated securitization of the same bad investments.

WBE has committed its resources to helping pension plans, governments, and others recover assets lost as a result of the weakness of mortgage-backed securities, auction rate securities, credit swaps, derivative swaps, and overextended securities lending programs. Through its membership in the National Association of State Treasurers, and its increased involvement in institutional finance and investment conferences, WBE has catapulted itself to the forefront of this area of litigation, seeking redress and the recovery of assets lost through gross negligence and breaches of fiduciary duties by those in whom institutional investors placed their trust and confidence.

Securities litigation can often result in changes to corporate governance and policies designed to prevent future misconduct. We believe the importance of this work cannot be overstated. The firm seeks to ensure that corporate officers and directors fulfill their responsibilities and provide full disclosure and transparency to those buying and selling securities, helping to ensure that our capital markets truly reflect the accurate information that should underlie every commercial transaction.

For more information about the firm's Securities and Corporate Governance practice, including summaries of representative cases, please visit the firm's website, at http://www.wbe-llp.com/practice-areas/securities-corp-governance/

## WHISTLEBLOWER AND FALSE CLAIMS LITIGATION

Under the Federal False Claims Act and state law counterparts, private citizens or "whistleblowers" may sue on behalf of the government for fraud committed against it.  This type of fraud costs taxpayers billions of dollars each year. If a case is successful, the government may be able to recover treble damages and civil penalties for each violation and the private citizen or "relator" can receive his or her attorneys' fees and costs, as well as a portion of the funds awarded by the court.

WBE is committed to seeing companies and individuals held responsible for fraud against the government and to representing private citizens willing to come forward and expose fraud.

For more information about the firm's Whistleblower and False Claims Litigation practice, including summaries of representative cases, please visit the firm's website, at http://www.wbe-llp.com/practice-areas/whistleblower-false-claims-litigation/.

# Our Professionals

Our legal team consists of professionals with a broad range of experiences and diverse backgrounds. Many of our lawyers serve as leaders in charitable institutions, teach at universities, and are members of national, state, and local bar associations. All of our professionals have earned the respect and admiration of our clients, judges, and co-counsel by the strength of their experience, diverse backgrounds, and overall commitment to excellence.

## OUR PARTNERS

The partners of Wexler Boley & Elgersma have been regularly selected as "Super Lawyers" and "Rising Stars" in Illinois. Named partner Kenneth A. Wexler is rated AV® Preeminent™ by Martindale-Hubbell, the highest rating in legal ability and ethics a lawyer can obtain. In addition, he has been named Illinois Local Litigation Stars by Benchmark Plaintiff every year since 2012.

## OUR ASSOCIATES

Our associates hail from some of the top schools in the nation and have been recognized for outstanding academic achievement. As law students, WBE associates served on the editorial boards of law reviews and journals, received academic honors, acted as student leaders, and participated in a variety of clinical programs to receive real-world legal experience before entering practice. Combined, our associates garnered 17 top of the class CALI awards for the highest grades in their courses and graduated with GPAs that placed them near the top of their respective law school classes.

www.wbe-llp.com

## KENNETH A. WEXLER

## MANAGER AND FOUNDING PARTNER

Kenneth A. Wexler, the founder of the firm, is a 1980 graduate of the Georgetown University Law Center.  He received a Bachelor of Arts degree in 1977, *summa cum laude*, from Washington University in St. Louis, Missouri.

For over 30 years, Ken has devoted himself to helping those whose rights have been denied, or who have been victims of the unscrupulous or fraudulent actions of others, typically more powerful persons or entities.  Founder of Wexler Boley & Elgersma, Ken was also a founding partner of the firms formerly known as Miller Faucher Cafferty & Wexler LLP and Wexler Wallace LLP, respectively. He began his career and was a partner in the Chicago law firm now known as Much Shelist, PC.

Ken has been in leadership positions in cases with far-ranging subject matters, including brand name manufacturer suppression of competition from generic drugs, fraudulent and deceptive product overcharges, discrimination and harassment, corporate waste and mismanagement, cost recovery for defective medical devices, false advertising, and government fraud. Ken's practice is devoted to complex class action and commercial litigation, which includes a substantial amount of health care litigation, claims brought under federal and state false claims statutes, and cases alleging violations of the securities and antitrust laws. At present, Ken is particularly focused on protecting issuers of municipal bonds, recovering losses for pension funds and other investors that were victimized by unlawful and improvident securities lending practices, and cost-recovery for victims of health care fraud, including Taft-Hartley Funds, self-insured employers, and government entities.

Ken is a member of the Chicago Bar Association, Illinois State Bar Association, Federal Bar Association, American Bar Association, Chicago Council of Lawyers, American Association for Justice, and the Illinois Trial Lawyers Association. He is admitted to the bar in Illinois and is licensed to practice before the Illinois Supreme Court, United States District Court for the Northern and Southern Districts of Illinois, the United States Court of Appeals for the First, Second, Third, Sixth, and Seventh Circuits, and the United States Court of Appeals for the District of Columbia. With so many of the firm's cases pending in jurisdictions

**WBE** WEXLER BOLEY & ELGERSMA LLP

across the country, Ken has also been admitted to practice *pro hac vice* in United States District Courts of California, Connecticut, the District of Columbia, Florida, Maine, Maryland, Massachusetts, Minnesota, Missouri, New Jersey, New Mexico, New York, Ohio, Pennsylvania, South Dakota, Tennessee, Virginia, and Wisconsin.

Along with bar activities, Ken is a fellow of The Roscoe Pound Institute and is a former member of the American Constitution Society for Law and Policy, the Center for International Legal Studies, the National Association of State Treasurers, and the Executive Committee of the Civil Rights for the Anti-Defamation League. Ken also volunteers with the Chicago coalition for the Homeless and is a lifetime member of the 100 Club of Chicago, which provides support for the families of first responders who died in the line of duty.

## JUSTIN N. BOLEY

### PARTNER

Justin N. Boley's principal area of practice is complex class action litigation in antitrust matters. Since joining the firm, he has been heavily involved with virtually all of the firm's pharmaceutical antitrust cases, including, among others: In re Nexium (Esomeprazole) Antitrust Litigation, In re Wellbutrin XL Antitrust Litigation; In re Prograf Antitrust Litigation, In re Lipitor Antitrust Litigation, In re Effexor Antitrust Litigation, In re Androgel Antitrust Litigation, and In re Skelaxin (Metaxalone) Antitrust Litigation. He has also worked on antitrust cases involving price-fixing in international commodities markets and manipulation of benchmark interest rates, and he has taken the lead on investigations into the cartelization of the credit derivatives market and price-fixing among online travel sites and hotels.

Justin came to the firm after attending school abroad and obtaining a Master's Degree in International Relations. During law school, Justin's focus on corporate law, finance, and complex litigation earned him numerous top-of-the-class academic honors; he was awarded CALI Awards in Antitrust, Contracts, Legal Analysis, Research, and Writing III, Commercial Arbitration, Natural Resource Law, and Legal Profession (Ethics). Justin was a member of the Public Interest Law Committee at DePaul College of Law for three years. He also worked as a member of the New Media Team in President Obama's Presidential campaign headquarters in Chicago, where he helped facilitate the online organizing efforts of grassroots groups nationwide.

Justin is admitted to the bar of the State of Illinois, Western District of Wisconsin, United State Court of Appeals, Seventh Circuit, and the United States District Court for the Northern District of Illinois.

**WBE** WEXLER BOLEY & ELGERSMA LLP

## KARA A. ELGERSMA

## PARTNER

Kara A. Elgersma is a 2000 graduate of Georgetown University Law Center, with Bachelor of Arts Degrees in English and History obtained from the University of Kansas in 1997.

Kara came to Wexler Boley & Elgersma from K&L Gates LLP, where she was a partner. At K&L Gates, Kara was a member of the Antitrust and Trade Regulation Department, focusing on antitrust litigation, franchising and dealership disputes, class actions and other complex commercial litigation, as well as advising clients on a variety of regulatory matters, including antitrust, FCC, and energy regulatory policies.

Kara's experience includes all aspects of complex commercial litigation.  In addition, she is well-versed in arbitration, including pre-hearing case development and management, as well as the conduct of full hearings.

For six months in 2004, Kara was "on loan" to Kraft Foods Global, Inc., Northfield, Illinois, where she directly assisted the Chief Litigation Counsel for the company and handled a wide variety of litigation matters, including small and large product liability claims, general commercial litigation, civil investigative demands, business subpoenas, labor and employment litigation, and bankruptcy matters.

She is admitted to the bars of the Supreme Court of Illinois and Wisconsin, the District of Columbia Court of Appeals, the United States District Courts for the Northern District of Illinois, the District of Columbia, the District of Colorado and the Western District of Wisconsin, the United States Courts of Appeals for the Third, Fourth, Sixth, Seventh, and Tenth Circuits, and the Supreme Court of the United States.

Kara is a member of the American Bar Association, the Illinois State Bar Association, and the District of Columbia Bar Association.  She was a Board Member of the Competition Law360 Advisory Board for 2009 to 2010, and she was involved as a Board Member for Girls On The Run of Northern Virginia, as well as a volunteer with Chicago Volunteer Legal Services.

## BETHANY R. TURKE

### PARTNER

Bethany R. Turke joined Wexler Boley & Elgersma after practicing in the New York and Chicago offices of Latham & Watkins LLP.  Bethany's practice at Latham involved a wide range of civil and criminal litigation matters, including securities litigation, contract disputes, government investigations, and employment matters.  She was also very active in Latham's *pro bono* practice, working tirelessly on behalf of clients facing various immigration, employment, and housing discrimination issues.  Before joining Latham & Watkins, Bethany served as a law clerk to the Honorable Cheryl L. Pollak of the United States District Court for the Eastern District of New York.  She received her J.D. from Harvard Law School in 2006.

Bethany is actively involved on cases in a number of WBE's practice specialties, including the firm's antitrust, healthcare, and consumer protection practice areas.

## MARK J. TAMBLYN

### PARTNER

For over two decades, Mark J. Tamblyn has dedicated his career to handling complex litigation, on both the plaintiff and defense sides, securing meaningful relief by resolving real problems by settlement or verdict.

Mark began his legal career prosecuting consumer and antitrust class action cases. He expanded his breadth through defense of large companies concerning alleged wage and hour violations and alleged discriminatory practices in one of the largest labor and employment law firms in the country.

Mark developed early a national reputation for an aggressive yet sensible consensus-building approach toward the handling of complex litigation on behalf of his clients. He has organized and supervised to  successful conclusion scores of class actions. He has been asked to lecture on the class action practice and the evolving legal developments affecting that practice. For public service, Mark has also served as a Deputy Attorney General in the California Department of Justice, Office of the Attorney General, representing large California state agencies and government officials primarily in complex, multi-party actions. There, he

**WBE** WEXLER BOLEY & ELGERSMA LLP

was honored to be the only California Deputy Attorney General (of approximately 1,000 attorneys) to be chosen to participate in a national AG electronic discovery workshop comprising one representative for each state.

Mark was named a partner in 2006 and practiced in that capacity while operating the firm's California office until entering public service in 2012. Most recently, Mark's career came full circle by rejoining Wexler Boley & Elgersma in January 2019, where he continues to thrive.

## MELINDA J. MORALES

### OF COUNSEL

Throughout her career, Melinda ("Mindy") Morales has represented clients across a broad range of complex litigation on both sides of the courtroom. Mindy has over twenty years of experience in state and federal court advocating for both plaintiffs and defendants at the trial and appellate levels. This gives Mindy a unique perspective that allows her to anticipate her opposing counsel's methods and provides insight into their approach.

Mindy's early career was devoted to working exclusively on class action litigation in the areas of consumer fraud, antitrust, and securities. Over the years she has gained extensive experience handling disputes involving consumer protection laws, employment laws, insurance coverage issues, and commercial contract and partnership issues. In the class action arena, her accomplishments include acting as a core member of the trial and appellate team that obtained a $1 billion verdict on behalf of plaintiffs in a landmark consumer fraud case, co-authoring multiple winning appellate briefs, and arguing on behalf of plaintiffs to address the extraterritorial reach of the Illinois Consumer Fraud Act.

Mindy's desire to get back to helping regular people and businesses whose rights have been trampled, led her to Wexler Boley & Elgersma, where she serves as Of Counsel for the firm. When she's not advocating for her clients, Mindy enjoys spending time with her family, skiing, hiking, travelling, and volunteering at local charities.

**WBE** WEXLER BOLEY & ELGERSMA LLP

## TYLER J. STORY
### ASSOCIATE

Beginning in law school, Tyler J. Story has focused his attention towards antitrust litigation. While a student at Pennsylvania State University, he held two antitrust research assistant positions: one in which he explored issues of indirect purchaser standing in state antitrust suits, the other in which he focused specifically on the application of antitrust law and economics in the pharmaceutical industry

Since joining Wexler Boley & Elgersma, Tyler has been actively involved in various aspects of litigation concerning brand name manufacturer suppression of competition from generic drugs.

## ZORAN (ZOKI) TASIĆ
### ASSOCIATE

Zoki joined Wexler Boley & Elgersma in February 2021 to work on complex class-action litigation in the areas of antitrust, consumer protection, and healthcare. His work at the firm builds on his previous experiences as a plaintiff-side class-action attorney and as a trial attorney for the Antitrust Division of the U.S. Department of Justice.

Before joining the firm, Zoki worked in private practice as a plaintiff-side class-action attorney. During that time, he developed cases from scratch, oversaw all aspects of discovery, wrote class-certification briefs in multiple cases, and played an instrumental role in the drafting of the first consumer class-action complaint in what became the *In re: Zantac (Ranitidine) Products Liability Litigation* MDL. Zoki also had leading roles in a billion-dollar RICO case involving pharmaceutical pricing and a novel antitrust case concerning bid rigging in the market for search-engine advertising.

www.wbe-llp.com

**EAGHAN DAVIS**

**ASSOCIATE**

Eaghan joined Wexler Boley & Elgersma in April 2022 to work on the firm's False Claims Act, Class-Action, Antitrust, and Employment matters.

Prior to joining the firm, Eaghan served as an Assistant Attorney General in the Criminal Division of the Office of the Illinois Attorney General from 2020 to 2022, where he was responsible for briefing and arguing cases before Illinois' trial courts, the Illinois Court of Appeals, the Illinois Supreme Court, and Illinois' federal district courts.

Eaghan served as a law clerk to Michigan Supreme Court Justice Richard Bernstein from 2019 to 2020, where he was exposed to some of the state's most pressing issues, and in his role, assisted the Justice in writing opinions in the "Flint Water" cases, which held that citizens could sue the State of Michigan for their injuries from ingesting tap water laced with lead, PFAS, and other harmful chemicals and bacteria.

While in law school, Eaghan interned for Michigan Supreme Court Chief Justice Bridget Mary McCormack, U.S. District Court for the Eastern District of Michigan Judge Victoria A. Roberts, and two plaintiffs' law firms that specialized in Class Action, Employment, and False Claims Act cases.  While interning at one of those law firms, Eaghan assisted whistleblower attorneys litigating a seminal False Claims Act case before the United States Supreme Court, Universal Health Services, Inc. v. United States ex rel. Escobar, 136 S. Ct. 1989 (2016), which set new pleading requirements for False Claims Act whistleblowers nationwide.

As a junior in high school, Eaghan was appointed by United States Representative Peter Hoekstra to the House Page Program, where he lived on capitol hill, attended school in the Library of Congress, and worked on the floor of the House of Representatives during the passage of the "Bailout Bill" in 2008.

# EXHIBIT H



April 2, 2021

**VIA E-MAIL**

GREG COLEMAN LAW
Greg F. Coleman
800 South Gay Street
Suite 1100
Knoxville, TN 37929
greg@gregcolemanlaw.com

    Re: <u>Claim for Benefits under the Intrado Corporation, f/k/a/ West Corporation,</u>
       <u>401(k) Retirement Plan ("Plan")</u>

Dear Mr. Coleman:

   This letter is in response to the claim for benefits ("Claim") dated October 6, 2020 for benefits under the Plan, the claim was made by Courtless Rampey and Bridget Cunningham, both individually and on behalf of a class of participants and beneficiaries in the Plan ("Claimants"). The Claim included an expert report prepared by Christopher B. Tobe. The Plan Administrator (as such term is defined in the Plan) is the Retirement Committee for the Intrado Corporation, f/k/a/ West Corporation, 401(k) Retirement Plan ("Committee"). The Committee has retained David C. Kaleda of Groom Law Group, Chartered to advise it on the resolution of the Claim. By letter from Mr. Kaleda dated December 29, 2020, the period of time for extending the Claim was extended by ninety days in accordance with 29 C.F.R. § 2560.503-1(f)(1). As extended, the deadline for processing the Claim is April 4, 2021.

   The Committee has allocated its authority to review the Claim to three Committee members who include Louis Brucculeri, Christopher Wikoff, and Joseph Mullin ("Claim Committee"). In addition to the Claim, the Claim Committee has reviewed a memorandum dated February 26, 2021 ("Memorandum") prepared by Intrado Corporation (the "Company") in its capacity as plan sponsor at the request of the Committee.[1] We also considered an expert report ("Report") prepared by Steven K. Gissiner on behalf of the Company and considered by the Company in preparation of the Memorandum. A copy of the Memorandum and the Report are attached to this letter.

**<u>Determination of the Claim</u>**

   Based upon the Claim, Memorandum, and Report, all three members of the Claim Committee voted to deny the Claim.

**<u>Plan Provisions on which the Determination is Based</u>**

---

[1] We note that the Memorandum refers to the purchase of West Corporation by "Apollo Global." To clarify, West Corporation was acquired by affiliates of certain funds managed by Apollo Global Management, LLC, which is now Apollo Global Management, Inc.

Section 14.1 of the Plan provides that a Participant or Beneficiary, as such terms are defined in the Plan, may file a written claim for benefits under the Plan with the Plan Administrator, which in this case is the Committee. Sections 14 1 and 14 2 further provide the procedures whereby the Committee must review such claims. Section 15 2 of the Plan provides that the Committee in its sole discretion shall interpret the Plan's provisions and decide all questions concerning the Plan. The Committee is also exclusively responsible for authorizing the payment of benefits. Section 15 4 of the Plan allows the Committee to allocate fiduciary responsibilities among its members.

**Reasons for Determination**

The Claim Committee has concluded that the breaches of fiduciary duty alleged by the Claimants did not in fact or in law occur and, as such, the Claimants have received or will receive all benefits to which they are entitled under the terms of the Plan. We below address, in turn, each of the alleged breaches of fiduciary duty.

*Claimants Allege that the Committee Breached its Fiduciary Duties by Failing to Supervise Wells Fargo and Allowing Wells Fargo and Bridgehaven to Act in the Face of Certain Conflicts of Interest*

The Memorandum makes clear that the Committee did not breach its fiduciary duties in this regard  Rather, the Memorandum establishes that a breach of fiduciary duty does not occur merely because the Committee used Wells Fargo and its affiliates to provide both recordkeeping and investment advisory services. Indeed, that is a common practice in the industry  Further, Bridgehaven does not act at the behest of Wells Fargo. In fact, based upon advice received from Bridgehaven, the Committee, with the assistance of Bridgehaven, conducted a request for proposal process in order to determine if the fees paid to Wells Fargo should be reduced. The Committee, which is independent of Wells Fargo and Bridgehaven, appropriately utilized Wells Fargo and Bridgehaven to help its members make informed decisions regarding what investment options the Committee should make available under the Plan, to monitor the Plan's investment performance, and to evaluate the fees paid, directly and indirectly, by the Plan for services necessary to administer and operate the Plan. When necessary, the Committee used other service providers like Fiduciary Benchmarks to assist with the evaluation of the fees paid by the Plan. The Committee selected such service providers in accordance with ERISA's fiduciary duties of prudence and loyalty. The Committee then independently made decisions based upon the information provided to its members by such service providers.

*Claimants Allege that the Committee Breached its Fiduciary Duties by Allowing the Plan to Pay Excessive Recordkeeping Fees*

The Plan, and thus the Claimants, did not pay excessive recordkeeping fees to Wells Fargo or any other service provider [2]  As stated in the Memorandum, the Committee regularly evaluated the fees paid by the Plan for investment management, recordkeeping, and other services necessary to operate and administer the Plan. Based on such evaluations, the Committee on several occasions negotiated lower fees for the Plan  The Memorandum and Report establish that the fees paid by the Plan were well within the ranges of the fees paid by Plans of similar size. The Claim Committee did not find any truth to Claimants' allegation that the Committee included many funds offered or advised by Wells Fargo and its affiliates. Claimants appear to have made this allegation to reinforce their position that Wells Fargo and Bridgehaven were conflicted and that the Plan paid excessive fees  However, in fact, the Committee

---

[2] The Claim Committee notes that in July of 2019, Wells Fargo & Company sold its Institutional Retirement & Trust business to Principal Financial Group ("Principal") at which point Principal began providing recordkeeping services to the Plan  This change of control was not reflected in the Memorandum

2

included very few such investment options in the Plan  Furthermore, we note that the inclusion of investment options proprietary to a plan's recordkeeper or its affiliates does not by itself result in a breach of ERISA's fiduciary duties

*Claimants Allege that the Committee Breached its Fiduciary Duties by Selecting Investment Options with Higher Fee Share Classes*

The Committee did not imprudently select investment options with higher fee share classes.  As discussed at length in the Memorandum, the Committee engaged in a regular, methodical process whereby it, with the assistance of Wells Fargo and Bridgehaven, carefully evaluated the performance of the investment options and, when prudent to do so, eliminated underperforming investment options. Further, the Committee did not indiscriminately select higher cost share classes for the Plan's investment options as alleged.  Rather, the Plan selected share classes that paid revenue sharing.  The Committee did so for the purpose of paying the investment management, recordkeeping, and other services necessary for the operation of the Plan  The Plan may pay for such expenses.  The Plan may do so directly, by paying for such expenses from Participant or Beneficiary accounts, or indirectly, from revenue sharing that is paid in connection with the certain share classes of the investment options.  The Committee chose to do the latter, which is permissible under ERISA  Further, the Committee selected the share classes with the intent of assuring that the amount of fees actually received by Wells Fargo did not exceed a reasonable amount when compared to all of the services it provided, i e , investment management, recordkeeping, and other services necessary to operate and administer the Plan  Indeed, the Committee established a mechanism whereby revenue sharing paid in connection with the Plan's investment options that exceeded the negotiated per-participant recordkeeping fees was used to pay for additional Plan services or was credited to Participant and Beneficiary accounts

*Claimants Allege that the Committee Breached its Fiduciary Duties by Selecting Investment Options that were not Collective Investment Trusts*

ERISA does not require that the Committee make collective investment trusts ("CITs") as investment options available under the Plan  As discussed in the Memorandum, not all plans include CITs  Further, as explained in the Report, there could be benefits to including mutual funds rather than CITs as investment options in the Plan.  As discussed above, the Committee has regularly engaged in a methodical, thoughtful process whereby it selected and monitored the investment options available under the Plan.  The Committee also regularly evaluated the fees paid by the Plan for investment management, recordkeeping, and other services.  The Committee, on at least one occasion prior to 2019, considered the inclusion of CITs in the Plan's investment line up, but determined it would be prudent and in the best interests of the Claimants to include mutual funds rather than CITs  Subsequently, as a result of the fiduciary process described in this letter, the Memorandum, and the Report, the Committee decided in 2019 to make available the Prudential CITs as the Plan's qualified default investment alternative

*Claimants Allege that the Committee Breached its Fiduciary Duties by Including Actively Managed Investment Funds Rather than Passively Managed Investment Funds*

ERISA does not require that the Committee include only passively managed investment options. The Memorandum points out that the statement in the Claim that inclusion of actively managed funds over passively managed funds is imprudent, or not in the interests of the Claimants, is simply not correct Further, as discussed in the Report, the majority of plans in fact include at least some actively managed funds and that actively managed funds can and do play an important role in a plan's investment portfolio. For example, actively managed funds can help plan participants and beneficiaries realize better investment returns during periods of poor market performance, while a passively managed fund's performance will only be down when the performance of equity or other markets is down.  Therefore, the

3

higher fees charged by the managers of these funds versus passively managed funds often are appropriate With the assistance of Wells Fargo and Bridgehaven, the Committee applied a regular, methodical process for selecting and monitoring the investment options made available under the Plan. As a result of that process, the Committee chose to make available both actively managed investment options and passively managed investment options. The Claim Committee noted that, pursuant to the Memorandum and Report, the actively managed funds consistently over time outperformed their benchmarks. In addition, as discussed, the Committee applied this process to assure that the fees directly and indirectly paid by the Plan for investment management, recordkeeping, and other services necessary to the operation and administration of the Plan were reasonable.

**<u>Non-Exhaustion of Benefits Claims Procedures</u>**

Before pursuing an action in federal or state court, the Claimants must exhaust the Plan's procedures for benefits claims as described in Section 14 2 of the Plan and the review of the denial of such claim as described in Section 14.3 of the Plan. Therefore, should the Claimants wish the Committee to review the Claim Committee's denial of the Claim, the Claimants should submit an appeal to the Committee (or its counsel, Mr Kaleda) as required by Section 14.3 of the Plan no later than sixty days from the date of this letter.

Sincerely,

On Behalf of the Claim Committee