UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| Courtless Rampey and Bridget Cunningham, individually and as representatives of a Class of Participants and Beneficiaries on Behalf of the West Corporation 401(k) Retirement Plan;<br><br>Plaintiffs,<br><br>v.<br><br>West Corporation and Retirement Committee of West Corporation 401(k) Retirement Plan;<br><br>Defendants. | CASE NO. 1:19-CV-00220-JB-B |

## MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

Named plaintiffs Courtless Rampey and Bridget Cunningham, by and through their undersigned counsel, move this Court under authority of Fed. R. Civ. P. 23(e) for an order that approves a class action settlement with defendants West Corporation and Retirement Committee of West Corporation 401(k) Retirement Plan. If approved, this settlement resolves an action that commenced more than three years ago, on May 6, 2019. And it makes good on a promise made by the lawyers for both parties to the Court on February 14, 2020, that the parties would seriously and substantively negotiate even though plaintiffs' individual action was required to complete defendants' internal appeal procedure before this action could be litigated in federal court.

The proposed settlement, negotiated with the assistance of an experienced and well-regarded national mediator, should be approved because:

1

- The settlement compares favorably with approved settlements in other comparable ERISA cases;

- Under the settlement, monies are automatically distributed to class members without requiring class members to complete a claim form, which tends to significantly reduce class participation; and

- Class members were personally notified of the settlement, and not one class member has objected to the terms.

The Court should approve the settlement and, separately, plaintiffs' request for the payment of fees and costs from the class recovery.

## INCORPORATED SUPPORTING MEMORANDUM

### I. INTRODUCTION

It is established that public policy favors reasonable class action settlements:

> [T]here exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex. Complex litigation ... can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.. . . Thus, [s]ettlement will alleviate the need for judicial exploration of these complex subjects, reduce litigation cost, and eliminate the significant risk that individual claimants might recover nothing.[1]

Further, "[s]ettlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice, for a just result is often no more than an arbitrary point between competing notions of reasonableness."[2] Accordingly, a class action settlement should be approved so long as it is "fair, reasonable, and adequate and not the result of collusion."[3]

---

[1] *Family Med. Pharm., LLC v. Trxade Grp., Inc.*, 2017 U.S. Dist. LEXIS 38637, *18 (S.D. Ala. March 17, 2017)(internal citations and quote marks omitted).
[2] *Perez v. Asurion Corp.*, 501 F. Supp.2d 1360, 1379 (S.D. Fla. 2007) (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988)).
[3] *Trxade*, 2017 U.S. Dist. LEXIS 38637, *24.

2

## II. BACKGROUND

On May 6, 2019, plaintiffs Rampey and Cunningham, participants in the West Corporation Employee 401(k) Retirement Plan, sued the Plan and West Corporation, alleging that the Plan was had mismanaged. The plaintiffs brought the claim on their own behalf and on behalf of qualifying plan participants. In summary, plaintiffs alleged that defendants' mismanagement caused the Plan to pay excessive investment management and administrative fees.

Defendants responded by filing a motion to dismiss; plaintiffs responded to that by filing an Amended Complaint, on August 16, 2019. Defendants filed a renewed motion to dismiss on August 30, 2019, asserting plaintiffs could not proceed until after they exhausted the Plan's internal appeal process. The motion was briefed and argued. After argument, the Court denied the motion but stayed further litigation until plaintiffs completed defendants' internal appeal process.[4] It was during the hearing for the motion that the parties indicated to the Court that they would attempt negotiation even during the internal appeal process.

The appeal was considered by the Plan Administrator, which is the West Corporation Employee 401(k) Retirement Committee. On February 27, 2020, plaintiffs submitted a 10-item document request to the Plan, which included such items as a) documents generated by the Retirement Plan Committee related to its monitoring of Plan investment and b) documents demonstrating the authority by which the Plan

---

[4] Order (Docket Entry #46).

Administrator is vested to resolve claims. The parties thereafter negotiated the breadth of these requests. On April 17, 2020 and on July 1, 2020, defendants provided documents to plaintiffs' counsel; the documents totaled 760 pages.

On October 6, 2020, plaintiffs filed an Administrative Complaint, with five exhibits, including an expert report.   The Administrative Complaint alleged five breaches of duty to Plan Members:  (1)  failure to supervise Wells Fargo N.A., ("Wells Fargo") which served as the Plan's trustee, its recordkeeper, and the sponsor of two of the largest mutual funds in the Plan, and, through affiliated companies advised the Plan in many areas; (2) excessive payments to Wells Fargo for recordkeeping and administrative services; (3) choosing higher-cost share classes of mutual when otherwise identical lower-cost share classes were available; (4) choosing higher-cost mutual fund share classes for the Plan rather than lower-cost, substantially identical collective investment trusts; and (5) choosing costly actively managed mutual funds rather than lower-cost index investments for the Plan.

On April 4, 2021, the Retirement Committee denied plaintiffs' claim. In connection with the denial, the Retirement Committee relied on an expert report. This expert report was based, largely, on West internal documents, most of which hadn't been produced to plaintiffs. At plaintiffs' request, the Retirement Committee produced an additional 2,114 pages of documents that hadn't been previously produced. Counsel's analysis of these documents permitted them to evaluate the risks and potential rewards of appealing the administrative rejection of their claims to this Court.

In August 2021, the parties agreed to stay the internal appeal to attempt to reach

4

a negotiated conclusion. The mediation took place, via teleconference, on December 9, 2021 before Robert Meyer of JAMS/ADR. The essential terms were negotiated during the mediation or shortly thereafter.

On June 28, 2022, plaintiffs moved the Court for an order certifying the proposed settlement class, preliminarily approving the settlement and authorizing class notice. The Court granted those motions on July 13, 2022.[5]

Plaintiffs retained A.B. Claims Data Ltd., of Milwaukee, Wisconsin, as claims administrator. A.B. Data, in turn, received an Excel file containing the names and mailing addresses from Counsel for the defendants. The class list contained a total of 14,276 class members.[6]

A.B. Data standardized and updated the mailing addresses contained in the Class List using the National Change of Address system maintained by the USPS, and updated the data where appropriate. A.B. Data established a mailing address, specifically, West ERISA Administrator, c/o A.B. Data, Ltd., P.O. Box 173099, Milwaukee, WI 53217, to receive Requests for Objections, and Short Form Notices returned as undeliverable.[7]

On August 11, 2022, A.B. Data mailed the Short Form Notice to the 14,276 class members via first-class mail. The Short Form Notice provided instructions in English to mail a Request for Objection to A.B. Data postmarked no later than October 10, 2022.[8]

---

[5] Order (Docket Entry #70).
[6] **Ripp Decl.**
[7] *Id.*
[8] *Id.*

5

Throughout the Notice period, all Notices returned by the USPS as undeliverable are submitted by A.B. Data to credit-bureau and/or other public-source databases to find an updated mailing address and have the Notice remailed. As of the date of this Declaration, 14 of the 14,276 Short Form Notices mailed to class members were returned by the USPS to A.B. Data as undeliverable as addressed with no valid alternative mailing address available.[9]

On August 9, 2022, A.B. Data established and continues to maintain a case-specific, toll-free telephone helpline, 1-877-354-3788, with an interactive voice response system and a voicemail box, to accommodate callers with questions about the Litigation. The automated attendant answers the calls and presents callers with a series of choices to respond to basic questions. Callers requiring further assistance have the option to be transferred to a voicemail box and a live Helpline representative will return their call. On August 10, 2022 A.B. Data established the Settlement website for this Litigation, www.RampeyLitigation.com. The Settlement website provides the Short Form Notice, and information regarding the Litigation and the proposed Settlement, including the objection deadline and the date and time of the Court's Settlement Hearing. As of the filing date of this brief, A.B. Data has received zero objections.[10]

### III. SUMMARY OF SETTLEMENT TERMS

The settlement covers the following persons:

> [A]ll persons who participated in the Plan during the Class Period, including any Beneficiary of a deceased person who participated in the Plan at any time during the Class

---

[9] *Id.*
[10] *Id.*

> Period, and/or Alternate Payee, in the case of a person subject to a Qualified Domestic Relations Order who participated in the Plan at any time during the Class Period, except for past and present members of the [401(k) Retirement] Committee.[11]

The Court certified this class on July 13, 2022.[12]

Under the settlement, defendants will fund a "Gross Settlement Amount" of $875,000. After deducting for administrative expenses and attorneys' fees and costs, the remainder will be disbursed to class members pro rata, based on the amount each class member held in their personal account over the total amount held by all Plan participants.[13]

There will be no claims process; class members' accounts will be automatically credited with their share of the settlement.[14] Former participants with a recovery of $10 or more will be mailed checks; former participants (other than class representatives) with a recovery of less than $10 will not receive any compensation.[15]

The settlement releases the defendants from claims arising out of plaintiffs' claims; it does not release claims concerning individual denial of Plan benefits, and wage, discrimination, wrongful termination and other employment-related claims unrelated to Plan administration.[16]

The settlement is non-reversionary; if any funds remain after distribution, they will be transferred to the Plan to defray administrative expenses, which will reduce

---

[11] Stock Dec. (Docket Entry #68) at ¶ 2.33.
[12] Docket Entry #70.
[13] Stock Dec. (Docket Entry #68) at ¶ 6.2.
[14] *Id.*, ¶ 6.3.1.
[15] *Id.*, ¶¶ 6.2.5; 6.4.1.
[16] *Id.*, ¶ 2.28.

amounts charged against individual active accounts.[17]

## IV. THE SETTLEMENT WARRANTS FINAL APPROVAL

### A. Legal standard

In *Bennett v. Behring Corp.*,[18] the 11th Circuit articulated the following standard to determine whether a class action settlement is fair, adequate, and reasonable:

> (1) the likelihood of success at trial;
> (2) the range of possible recovery;
> (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable;
> (4) the complexity, expense and duration of litigation;
> (5) the substance and amount of opposition to the settlement; and
> (6) the stage of proceedings at which the settlement was achieved.[19]

In evaluating these considerations, "the court should not attempt to try the case on the merits but should rely on the judgment of experienced counsel and should be hesitant to substitute its own judgment for that of counsel."[20]

In addition to a consideration of the *Bennett* factors, courts within the 11th Circuit must also determine whether the settlement was the production of collusion.[21] All of these issues are discussed below.

### B. The settlement is the product of good-faith arms-length negotiation

"There is a presumption of good faith in the negotiation process. Where the

---

[17] *Id.*, ¶ 5.9.
[18] *Bennett v. Behring Corp.,* 737 F.2d 982 (11th Cir. 1984).
[19] *Id.* at 986.
[20] *Reynolds v. Ala. DOT,* 2017 U.S. Dist. LEXIS 89272, *12-13 (M.D. Ala. June 7, 2017)(citation omitted).
[21] *In re Blue Cross Blue Shield,* 2020 U.S. Dist. LEXIS 248401, *63 (N.D. Ala. Nov. 30, 2020)("Relatedly, one of the *Bennett* factors requires the court to rule out the possibility of fraud or collusion behind the settlement.").

parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion."[22]

The negotiations in this case were overseen by Robert Meyer, a skilled and experienced mediator. Meyer has submitted a declaration supporting final approval that attests to the procedural fairness of the mediation process.[23] This sworn testimony attesting to the arms-length and good-faith negotiation is unrebutted, and supports final approval.

## C. Plaintiffs' significant trial and appellate obstacles warrant final approval

The first *Bennett* element is to compare the likelihood of success at trial against the amount and form of relief contained in the settlement. "Plaintiffs' likelihood of success at trial is not only the first *Bennett* factor, it is also by far the most important factor in evaluating a class action settlement."[24] The Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial."[25]

This factor strongly favors settlement, as plaintiffs had a significant distance to travel before trial. Their first task would be to completely exhaust defendants' internal appeal process. Then they would have had to gain court approval to return to active

---

[22] *Camp v. City of Pelham*, 2014 U.S. Dist. LEXIS 60496, *12 (N.D. Ala. May 1, 2014).
[23] **Meyer Decl.**
[24] *Drazen v. Godaddy*, 2020 U.S. Dist. LEXIS 242448, *22 (S.D. Ala. Dec. 23, 2020)(citations and quote marks omitted).
[25] *Gevaerts v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 150354, *16 (S.D. Fla. Nov. 2015)(citations and quotations omitted).

litigation. Litigating the case would, in general, focus on the administrative record developed during the appeal process; nevertheless, there likely would have been discovery disputes requiring court intervention. Following a pretrial process, the Court would have tried this matter, probably on an "abuse of discretion" standard that would be weighted in favor of defendants. And while plaintiffs are confident in their case, proceeding to trial presents significant risks. In two recent class action trials involving defined contribution plans, defendants prevailed.[26] In another recent case involving recordkeeping expense within this circuit, defendants prevailed on summary judgment.[27]

Apart from liability, the amount of recovery would have been a significant challenge for plaintiffs. The Plan loss would have been a battle of experts, and plaintiffs could not be confident they would prevail:

> In the battle of experts, it is virtually impossible to predict with certainty which testimony will be credited. Plaintiffs, therefore, would face great difficulty in establishing any damages…. The mere fact that the proposed settlement []is a small fraction of the desired recovery []is not indicative of an inadequate compromise. A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery. The settlement in this case affords a material percentage recovery to the plaintiff class in light of all the risks of litigation.[28]

In sum, there are myriad of unresolved issues, both at the trial stage and on appeal, that satisfy this first *Bennett* factor.

---

[26] *Sacerdote v. New York Univ.*, 328 F. Supp.3d 273 (S.D.N.Y. 2018); *Wildman v. Am. Century Servs., LLC*, 362 F. Supp.3d 685 (W.D. Mo. 2019).
[27] *Pledger v. Reliance Trust Co.*, 2019 U.S. Dist. LEXIS 233995 (N.D. Ga. March 28, 2019).
[28] *Behrens*, 118 F.R.D. at 542-43 (internal quote marks and citations omitted).

**D.    The settlement is within the range of possible recovery**

"The second and third considerations of the *Bennett* test are easily combined. A court first determines the possible range of recovery by resolving various damages issues. The court then determines where in this range of possible recovery do fair, adequate, and reasonable settlements lie."[29]

The $875,000 settlement represents about 12%, or 32%, of the estimated excess expenses as calculated by plaintiff's expert.[30] This compares favorably with recoveries in similar ERISA class actions.[31] Plaintiffs' recovery here is square within reasonable limits.

**E.    The complexity, expense and duration of continued litigation**

The fourth *Bennett* factor "weighs in favor of settlement approval where the litigation, including the appellate process, involves numerous class members and significant time and expense."[32] This factor is further supported where "[t]he claims and defenses are complex; litigating them has been difficult and time consuming … [and] recovery by any means other than settlement would require additional years of

---

[29] *Drazen*, 2020 U.S. Dist. LEXIS 242448, *24.
[30] Docket Entry #68 at ¶ 12.
[31] *See, e.g., Sims v. BB&T Corp.*, 2019 U.S. Dist. LEXIS 75837, *19 (M.D.N.C. May 6, 2019)(approving settlement representing 19% of the total damages sought); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 U.S. Dist. LEXIS 127131, *15 (C.D. Cal. July 30, 2018)(approving settlement representing between 17% and 52% of maximum potential liability.); *Johnson v. Fujitsu Tech. & Business of Am., Inc.*, 2018 U.S. Dist. LEXIS 80219, *15-16 (N.D. Cal. May 11, 2018)(approving settlement representing 10% of plaintiffs' most aggressive damages calculation).
[32] *Morgan v. Public Storage*, 2016 U.S. Dist. LEXIS 54937, *18 (S.D. Fla. March 9, 2016).

litigation in this Court and the appellate courts."[33]

As for the number of class members, there are at least 14,276. This, too, favors settlement approval.

As with the other *Bennett* factors, this supports final approval.

### F. The class supports the settlement

"In assessing the fairness of a proposed compromise, the number of objectors is a factor to be considered but is not controlling. Thus, a low percentage of objections [may] point [] to the reasonableness of a proposed settlement and support [] its approval."[34]

"In determining whether a proposed settlement is fair, reasonable and adequate, the reaction of the class is an important factor…. [A] low percentage of objections points to the reasonableness of a proposed settlement and supports its approval."[35] This factor also supports approval where the objections "lack … substance."[36] Out of 14,276 class notices mailed, to date no objections have been filed. This, too, is a strong endorsement of the settlement. If any objections are filed by the October 9 deadline, plaintiffs will respond in a supplemental filing.

Additionally, courts look to the opinions of class counsel.[37] Class counsel strongly endorse the settlement because it confers substantial benefits on the class and is in the best interest of the class representatives and the class as a whole.[38]

---

[33] *Torres v. Bank of America*, 830 F. Supp.2d 1330, 1345 (S.D. Fla. 2011).
[34] *Drazen*, 2020 U.S. Dist. LEXIS 242448, *27 (citations and quote marks omitted).
[35] *Lipuma*, 406 F. Supp.2d 1298, at 1324.
[36] *Perez*, 501 F. Supp.2d 1360, at 1382.
[37] *Henderson v. Thomas,* 2013 U.S. Dist. LEXIS 140098, *21 (M.D. Ala. Sept. 30, 2013).
[38] **Stock Decl.**

**G.    The settlement was achieved after two years of "litigation" in the appeals process**

"The last *Bennett* factor is the stage of the proceedings at which [s]ettlement was achieved."[39] The reason: "A court evaluates the stage of the proceedings at the time of settlement to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation."[40] Here, the parties reached a signed term sheet at the conclusion of a two-year internal appeal process. At this stage, there were no secrets; the parties knew their own, and each other's, strengths and weaknesses. This factor strongly favors approval.

### V.    CONCLUSION

The settlement easily satisfies the applicable standard. The Court should approve the settlement.

Dated: Sept. 23, 2022.                              By: */s/ Jordan M. Lewis*
                                                    Jordan M. Lewis (admitted *pro hac vice*)
                                                    **Jordan Lewis, P.A.**
                                                    4473 N.E. 11th Avenue
                                                    Fort Lauderdale, FL 33334
                                                    jordan@jml-lawfirm.com

                                                    -and-

                                                    Charles J. Potts (POTTC0053)
                                                    **Briskman & Binion, P.C.**
                                                    P.O. Box 43
                                                    Mobile, Alabama 36601
                                                    Tel: (251) 433-7600

---

[39] *Oakes v. Blue Cross & Blue Shield of Florida, Inc.*, 2016 U.S. Dist. LEXIS 147252, *5 (S.D. Fla. Oct. 21, 2016).
[40] *Perez*, 501 F. Supp.2d at 1383.

13

Fax: (251) 433-4485
cpotts@briskman-binion.com

-and-

Arthur Stock (admitted *pro hac vice)*
Gregory F. Coleman (admitted *pro hac vice*)
**Milberg Coleman Bryson Phillips Grossman LLC**
800 S. Gay Street
Knoxville, TN 37939
Tel: (865) 247-0800
gcoleman@milberg.com
astock@milberg.com

-and-

Charles Crueger (admitted *pro hac vice*)
Benjamin Kaplan (admitted *pro hac vice*)
**Crueger Dickinson LLC**
4532 N. Oakland Avenue
Whitefish Bay, WI 53211
Tel: (414) 210-3868
cjc@cruegerdickinson.com
bak@cruegerdickinson.com

-and-

Kara Elgersma (admitted *pro hac vice*)
**Wexler Boley & Elgersma LLP**
311 S. Wacker Drive
Suite 5450
Chicago, IL 60606
Tel: (312) 346-2222
kae@wbe-llp.com

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 23, 2022 , I electronically filed this document with the Clerk of Court using the CM/ECF system, which will send notice of such filing to all counsel of record.

                               */s/ Jordan Lewis*
                               Jordan Lewis